FILED

M   2 7 2006

U.S. MAGISTRATE JUDGE
DISTRICT OF NEVADA

BY _____ DEP(

1 DANIEL G. BOGDEN
United States Attorney
2 PAUL L. PUGLIESE
Assistant United States Attorney
3 100 W. Liberty Street, Suite 600
Reno, Nevada 89501
4 Tel: (775) 784-5438

5 Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| IN THE MATTER OF THE SEARCH OF: | ) | No. 3:06-MJ-0023-VPC |
|---|---|---|
| The Residence Located at 12720 Buckthorne Lane, Reno, Nevada, and Storage Units 136, 140, 141, 142, and 143, Double R. Storage, 888 Maestro Drive, Reno, Nevada | ) ) ) ) ) ) ) ) ) | **GOVERNMENT'S RESPONSE TO MOTION TO UNSEAL SEARCH WARRANT AFFIDAVITS** |

14     COMES NOW, the United States of America, by and through DANIEL G. BOGDEN, United

15 States Attorney, and PAUL L. PUGLIESE, Assistant United States Attorney, and certifies that this

16 response is being filed in a timely manner.

17 **FACTUAL BACKGROUND**

18     On February 28, 2006, Special Agent Mike West, Federal Bureau of Investigation, presented

19 an application and affidavit for search warrant in the matter of the search of 12720 Buckthorn Lane,

20 Reno, Nevada. Special Agent West presented this application after conducting an investigation into

21 alleged violations of title 18, United States Code. In particular, Special Agent West included

22 language in the application that established probable cause to believe that property described in the

23 application constituted evidence of the commission of a criminal offense. On February 28, 2006,

24 after reviewing the application and affidavit for search warrant, this Court issued a search warrant of

25 the premises and directed that the search be conducted on or before March 9, 2006. On that same

26 day, this Court granted a Government motion to seal the affidavit in support of the search warrant.

27 On March 1, 2006, the search warrant was executed at the premises and a copy of the warrant and

28 receipt for items seized was left with Eric Pulver, counsel for Dennis Montgomery. On March 8,

2006, a return on the search warrant was executed with the requisite inventory of items seized provided to this Court.

On March 3, 2006, Special Agent West presented five separate applications and affidavits for search warrant in the matter of the search of storage units 136, 140, 141, 142, and 143, Double R Storage, 888 Maestro Drive, Reno, Nevada. Special Agent West presented this application after continued investigation into alleged violations of title 18, United States Code, established probable cause to believe that property described in the applications constituted evidence of the commission of a criminal offense. On March 3, 2006, after reviewing the applications and affidavits for search warrant, this Court issued five separate search warrants for each of the aforementioned storage units, and directed that the searches be conducted on or before March 13, 2006. On that same day, this Court granted a Government motion to seal the affidavits in support of the search warrants. On March 3, 2006, the search warrants were executed at the five separate storage units and a copy of each warrant and receipt for items seized was left inside the separate, locked storage units. On March 8, 2006, returns on the five search warrants were executed with the requisite inventories of items seized provided to this Court.

Counsel for the owners of the residence and lessees of the storage units, which were subject to the authorized searches, have filed a motion requesting this Court issue an order unsealing the affidavits relied on by the Court in deciding to issue the warrants. In the same motion, Counsel have requested an order returning all property seized pursuant to Rule 41(g), Federal Rules of Criminal Procedure. As Rule 41(g) requires an evidentiary hearing on any factual issue necessary to decide the motion, it is evident that the Government will have an opportunity to present evidence that contradicts information contained in signed and unsigned declarations submitted in support of the motions for unsealing and for the return of seized property. At that evidentiary hearing, the Government will present evidence to counter the following unfounded and misleading allegations contained in the opposition's motion:

1) On March 1, 2006, the FBI, *with sledgehammer in hand*, entered the Montgomery's residence, and threatened to smash open his safe if he did not open it;

2) The FBI *refused over five requests for Mr. Montgomery to speak to his lawyer,*

1 while they began the search, *and attempted to interrogate him despite repeated request (sic) to speak*
2 *with his lawyer;*

3 　　　3) The FBI *seized numerous photographic slides of Mr. Montgomery's daughter,* who
4 modeled for Playboy;

5 　　　4) The FBI *entered the residence with several sealed boxes;*

6 　　　5) Over the next four hours the FBI rummaged through the Montgomery's property,
7 removed their property; *and excluded Mr. Montgomery and his counsel from the home;*

8 　　　6) Despite no mention of prescription drugs in the search warrant, the FBI were also
9 apparently was (sic) *looking for prescription medications or illicit drugs in the Montgomery home.*
10 *The search team even apparently included a DEA agent;*

11 　　　7) *Agent West told Mr. Montgomery that he could not leave his car in the driveway*
12 *and instructed him to move it into the garage;*

13 　　　8) *The Storage Unit Search Warrant only identified Unit No. 143 as the storage unit*
14 *to be searched;*

15 　　　9) *The storage units were left in a shambles, boxes marked "attorney-client*
16 *privileged" were upended and rifled through, and several discs* containing Mr. Montgomery's own
17 copyrighted computer programs spanning twenty years in the computer industry and for which Mr.
18 Montgomery holds numerous copyrights were missing *and/or* damaged;

19 　　　10) *Mr. Montgomery was the only individual at eTreppid with the necessary security*
20 *clearance to view or receive classified material;*

21 　　　11) On March 3, 2005 (sic), *the government took quantities of cash from the*
22 *Montgomery's storage unit.*

23 　　　　　　　　　　　**POINTS & AUTHORITIES**

24 　　　The sealing of the search warrant affidavits in this matter is necessary to prevent the
25 compromise of an ongoing investigation. An order unsealing the affidavits would expose witnesses
26 who have provided evidence regarding potential criminal violations under title 18, United States
27 Code; identify investigative techniques being used in this matter prior to completion of the
28 investigation; interfere with the identification of other potential suspects; and interfere with recovery

3

of equipment that may contain evidence of criminal violations. Delay in unsealing the search warrant affidavit will allow the ongoing investigation to continue without compromise and will not result in any extreme hardship to the allegedly aggrieved parties.

This Court has the inherent power to seal search warrant affidavits to protect people who provide information and to keep confidential an ongoing investigation or investigations. *See, Times Mirror Co. v. United States*, 873 F.2d 1210, 1221 (9th Cir. 1989); *United States v. Mann*, 829 F.2d 849, 853 (9th Cir. 1987); *Offices of Lakeside Non-Ferrous Metals, Inc. v. United States*, 679 F.2d 778, 779 (9th Cir. 1982); and *Matter of Sealed Affidavit(s) to Search Warrants*, 600 F.2d 1256, 1257 (9th Cir. 1979).

In their motion to unseal, the opposition argues that the Montgomery's have a constitutional right to view the affidavits. In support of this argument, the motion references a common law general right to inspect and copy public records and documents and a qualified right of access to warrant papers, and a Fourth Amendment right to challenge the warrant for lack of probable cause. While both of these references are correct statements of the law, they provide no support for the proposition that there exists a constitutional right for a pre-indictment view of affidavits in support of search warrants.

In *United States v. Kott*, 380 F. Supp.2d 1122 (USDC, C.D. California, 2004), the District Court noted that, "With respect to the search warrant documents, in the Ninth Circuit, it has been determined that there is no presumed right of access to search warrant materials during the pre-indictment state of an ongoing criminal investigation." *Kott*, at 1124; *citing Times Mirror Company*, at 1219. In *Times Mirror*, the Ninth Circuit made several pronouncements regarding access to search warrant materials in determining that neither common law nor the First Amendment establish a qualified right of access to pre-indictment search warrant proceedings. "We know of no historical tradition of public access to warrant proceedings." *Times Mirror*, at 1213. The general availability of warrant proceedings after the warrant is served "does not undermine the government's claim that there is no history of unrestricted access to warrant materials. . . . As the Supreme Court observed in [*United States v. United States Dist. Court*, 407 U.S. 297, at 320-321 (1972),] 'the investigation of criminal activity has long involved imparting sensitive information to judicial officers who have

4

1  respected the confidentialities involved.' The process of disclosing information to a neutral
2  magistrate to obtain a search warrant, therefore, has always been considered an extension of the
3  criminal investigation itself." *Times Mirror*, at 1214. "In sum, we find no historical tradition of open
4  search warrant proceedings and materials. Historical experience, which counsels in favor of finding
5  a First Amendment right of access to the criminal trial . . . to voir dire . . . and to preliminary
6  hearings . . . furnishes no support for the claimed right of access to warrant proceedings in the instant
7  cases. On the contrary, the warrant proceedings and materials should not be accessible to the public,
8  at least while a pre-indictment investigation is still ongoing. . . ." *Id.*

9  In a Seventh Circuit case, *In the Matter of EYECARE PHYSICIANS OF AMERICA*, 100 F.3d
10  514 (7th Cir. 1996), the appellate court provided a detailed analysis of an aggrieved party's right of
11  access to sealed affidavits. The court considered an allegedly aggrieved party's assertion that the
12  Fourth Amendment recognizes a right of access to sealed warrant affidavits, and determined that
13  such an assertion "does not rest on the terms of the Fourth Amendment, for the text of that
14  Amendment does not address, even implicitly, the problem of lack of access to sealed search warrant
15  affidavits. The Warrant Clause of the Fourth Amendment circumscribes the *issuance* of warrants,
16  but does not address access to the affidavits employed to support them. . . . The 'decision as to
17  access [to judicial records and documents, including the duration of time they may be sealed] is one
18  best left to the sound discretion of the trial court." *Id.*, at 517, 518. The Court further explained that
19  arguments underlying the rule of secrecy associated with grand jury proceedings apply equally to the
20  disclosure of pre-indictment proceedings. *Id.*, at 518. In addition, the Court listed additional
21  consequences in disclosing sealed affidavits, inter alia, "there may be mistaken notions concerning
22  who might and might not be cooperating with the government or who may be subjects,
23  misunderstandings about the parameters of the government's investigation, the privacy of the
24  innocent and the implicated would be threatened, the cooperation of present and potential witnesses
25  could be compromised or influenced . . . . [and the potential that disclosure] would enable the
26  subjects of the investigation the opportunity to alter, remove, or withhold records. *Id.*, at 519.

27  In *United States v. Napier*, 436 F.3d 1133 (9th Cir. 2006), the Ninth Circuit considered a post-
28  indictment motion to unseal a search warrant affidavit and suppress evidence. The motion relied on

an argument that in order to satisfy the burden for challenging the validity of a search warrant affidavit, a defendant must have access to the contents of a sealed search warrant affidavit. The Court, however, found that although defendants have an important right to test the validity of search warrants, as provided in *Franks v. Delaware*, 438 U.S. 154 (1978), there was no unlimited right to access all information possibly needed to meet the preliminary showing requirement. *Napier*, at 1136. The Court went on to state that the defendant's interest must be balanced against other interests, such as the "government's interest in maintaining integrity of ongoing criminal investigations and ensuring the safety of [an] informant." *Id.* As such, the rule in this Circuit is clear that the Fourth Amendment does not provide an unlimited right of access to the contents of a sealed search warrant affidavit.

The argument in the opposition's motion that a balancing test must be performed by the Court is correct. A review of cases indicates, however, that there is a difference between the rights of individuals to access sealed search warrants pre-indictment and the rights of defendants to access these materials post-indictment. In addition, as evidenced by *Napier*, even a defendant facing criminal prosecution does not have an absolute right to access sealed warrant information, to include when such evidence *may* support an argument regarding the validity of a search warrant.

In the instant case, there is a clear danger of compromise of an ongoing investigation by unsealing the search affidavits. The Government's interests in maintaining the secrecy of the information contained in the affidavits include (1) the premature identification of possible witnesses, (2) the fact that the cooperation of such witnesses could be compromised or influenced, and (3) the possibility that potential subjects could alter, remove, or destroy information sought by the Government. In addition, (4) the affidavits in support of the search warrant in the instant case identify specific, sensitive information that, ultimately, distinguishes this case from all other cases dealing with the issue of unsealing affidavits. The nature of this information is clearly spelled out in the affidavits, and the consequences of premature disclosure of this information are also clearly recognized upon reading the affidavits. At this stage of the investigation, the Montgomery's do not have any interest that outweighs the Government's interest in maintaining the integrity and secrecy of the investigation. The primary argument favoring disclosure is the Montgomery's right to determine the lawfulness of

the search warrant and seizure of the property. In particular, the argument presumes that the search warrants were overbroad or lacked particularity. Yet, as with the Court's initial decision on whether there is sufficient evidence to establish probable cause, the concerns regarding breadth and substance are best left to the Court's determination. At present, the Court possesses all pertinent evidence to understand the Government's interests in maintaining the status quo and not unsealing the affidavits. The allegedly aggrieved parties do not have interests requiring that the affidavits be unsealed, and they should not be permitted to rely on mere conjecture in their efforts to obtain an order unsealing these affidavits.

## CONCLUSION

Upon conclusion of a fact-finding hearing, this Court will have sufficient evidence to establish that the Government's interest in maintaining the secrecy of information contained in the affidavits in support of search warrants outweighs the Montgomery's present interests in challenging the validity of the search warrant. At such time, the Government will request the Court issue an order denying the motion to unseal.

Dated: March 23, 2006

Respectfully submitted,
DANIEL G. BOGDEN
United States Attorney

*/s/ Paul L. Pugliese*

PAUL L. PUGLIESE
Assistant United States Attorney

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that she is an employee in the office of the United States Attorney for the District of Nevada and is a person of such age and discretion as to be competent to serve papers. That on March 23, 2006, she served a copy of the attached response by facsimile and mail to the person hereinafter named, at the place stated below, which is the last known address and facsimile number.

Philip H. Stillman, Esq.
224 Birmingham Drive, Suite 1A4
Cardiff, CA 92007
Fax: 888-235-4279
Counsel for Dennis and Brenda Montgomery and the Montgomery Family Trust

*Judy K. Farmer*
JUDY K. FARMER