**FILED**

AFR - 2006
U.S. MAGISTRATE JUDGE
DISTRICT OF NEVADA
BY_____DEPUT'

1  Ronald J. Logar, Esq., Nevada Bar No.: 0303
2  Eric A. Pulver, Esq., Nevada Bar No.: 7874
   **Law Office of Logar & Pulver, PC**
3  225 S. Arlington Ave., Ste A
   Reno, NV 89501
4  Phone: 775-786-5040
5  Fax: 775-786-7544

6  Michael J,. Flynn, Esq., Mass. State Bar No.: 172780
   Philip H. Stillman, Esq., California State Bar No.: 152861
7  **Flynn & Stillman**
8  224 Birmingham Drive, Suite 1A4
   Cardiff, CA 92007
9  Phone: 888-235-4279
   Fax: 888-235-4279
10 *Admitted Pro Hac Vice in related Federal Case No. 3:06-cv-0056-BES-VPC*

**SEALED DOCKET**

11                     UNITED STATES DISTRICT COURT

12                     FOR THE DISTRICT OF NEVADA

13

14  In the Matter of the Search of:                    )    CASE NO.: 3:06-MJ-0023-VPC
                                                        )
15  12720 BUCKTHORN LANE, RENO, NV                      )    REPLY MEMORANDUM IN SUPPORT OF
                                                        )    MOTIONS TO (1) UNSEAL SEARCH WARRANT
16                                                      )    AFFIDAVITS; (2) FOR THE RETURN OF
    and                                                 )    PROPERTY PURSUANT TO FED.R.CRIM.P.
17                                                      )    41(G);AND (3) FOR THE SEGREGATION AND
18  888 MASTRO DRIVE, RENO, NV, STORAGE                 )    SEALING OF ALL ATTORNEY-CLIENT AND
    UNIT NUMBERS 136, 140 , 141, 142, AND 143           )    TRADE SECRET MATERIALS SEIZED
19  _____                )

20

21

22

23

24

25

26

27

28



## TABLE OF CONTENTS

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I.   THE GOVERNMENT HAS FAILED TO MEET ITS BURDEN OF SHOWING
     "COMPELLING" REASONS FOR KEEPING THE SEARCH WARRANT AFFIDAVITS
     SEALED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

     A.   The Government Relies Solely On Media Cases Decided Under A Common
          Law Right Of Access To Judicial Records, Not A Fourth Amendment Right Of A
          Target To Access The Search Warrant Materials. . . . . . . . . . . . . . . . . . . . . 5

     B.   The Government Has Made No Showing Of Compelling Need For Secrecy. . 8

          1.   The "Compromise Ongoing Investigation" Argument. . . . . . . . . . . . 10

          2.   Premature Identification of Possible Witnesses Is No Excuse. . . . . . . 10

          3.   The Claim That Cooperation of Witnesses Could Be Compromised Or
               Influenced Has Been Routinely Rejected. . . . . . . . . . . . . . . . . . . 11

          4.   The Government's Generalized Fear that Information Sought By The
               Government Could Be Destroyed Is No Excuse. . . . . . . . . . . . . . . 12

          5.   The Sensitive Information Argument That The Government Claims
               "Distinguishes This Case From All Others" Is Meritless. . . . . . . . . . . 13

     C.   The Government Has Failed to Address Whether There Are Less Restrictive
          Means Than Total Secrecy Available. . . . . . . . . . . . . . . . . . . . . . . . . 14

     D.   The Government's Weakly Presented Argument That The Court Must Hold An
          Evidentiary Hearing Is Wrong. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

II.  THE GOVERNMENT'S RULE 41(G) ARGUMENT IS SIMILARLY FLAWED . . . . . . 15

     A.   This Court Has Equitable Jurisdiction Pursuant To The Ninth Circuit's Test. . 15

          1.   The Government Has Shown A Callous Disregard For The Montgomerys'
               Constitutional Rights. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

               (a)   The Search Warrant Is On Its Face Overbroad And
                     Unconstitutional. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

        (b)    The Search Warrant Affidavit Must Be Unsealed To Show Lack Of Probable Cause. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

   2.    The Montgomerys Obviously Have an Individual Interest In And Need For The Property They Want Returned. . . . . . . . . . . . . . . . . . . . . . . 18

   3.    The Montgomerys Would Be Irreparably Injured by Denying Return of the Property. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

   4.    The Montgomerys Have No Adequate Remedy At Law For The Redress Of Their Grievance. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

   5.    All Factors Favor This Court's Exercise Of Equitable Jurisdiction. . . . . 22

B.    The 41(g) Motion Should Be Granted On The Merits. . . . . . . . . . . . . . . . . . 22

C.    The Montgomerys Are Entitled To The Return Of Both The Laptop Computer And The Prescription Medications Seized. . . . . . . . . . . . . . . . . . . . . . . . . . 24

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

## TABLE OF AUTHORITIES

*Andresen v. Maryland*, 427 U.S. 463, 480, 49 L. Ed. 2d 627, 96 S. Ct. 2737 (1976) . . . . . . . . . . . 17

*Angel v. Seattle-First National Bank*, 653 F.2d 1293, 1299 (9th Cir. 1981) . . . . . . . . . . . . . . . . . . 9

*Boyd v. United States*, 116 U.S. 616, 635, 29 L. Ed. 746, 6 S. Ct. 524 (1886) . . . . . . . . . . . . . . . 4

*British Airways Bd. v. Boeing Co.*, 585 F.2d 946 (9th Cir. 1978), *cert. denied*, 440 U.S. 981, 99 S. Ct. 1790, 60 L. Ed. 2d 241 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 15

*Franks v. Delaware*, 438 U.S. 154, 155-56, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978) . . . . . . . . . . . 7

*Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 607, 73 L. Ed. 2d 248, 102 S. Ct. 2613 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Goehring v. Wright*, 858 F. Supp. 989, 993 (N.D.Cal. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Goodman v. United States*, 369 F.2d 166, 168 (9th Cir. 1966) . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Hunsucker v. Phinney*, 497 F.2d 29, 35, (5th Cir) *cert. denied*, 1975, 420 U.S. 927, 95 S. Ct. 1124, 43 L. Ed. 2d 397 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*In re EyeCare Physicians of America*, 100 F.3d 514 (7th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . 7

*In re Grand Jury Subpoenas*, 926 F.2d 847, 857 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . 17

*In re Impounded Case (Law Firm)*, 879 F.2d 1211 (3rd Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . 26

*In re Sealed Affidavit(s) to Search Warrants etc.*, 600 F.2d 1256 (9th Cir. 1979) . . . . . . . . . . . . . . . 5

*In re Search of 8420 Ocean Gateway Easton*, 353 F. Supp. 2d 577, 581 (D.Md. 2004) . 5, 7, 10, 11, 23

*In re Search Warrants Issued on Apr. 26, 2004*, 353 F. Supp.2d 584, 590 (D.Md 2004) . . 4, 5, 7, 8, 12, 14

*In re The Baltimore Sun Company v. Goetz*, 886 F.2d 60, 66 (4th Cir. 1989) . . . . . . . . . . . . . . 3, 10

*In the Matter of the Search of the Offices and Storage Areas Utilized by Stephen P. Amato*, 2005 U.S. Dist. Lexis 6870 (D. Me April 14, 2005)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 23

*Klitzman, Klitzman and Gallagher v. Krut*, 744 F.2d 955 (3rd Cir. 1984) . . . . . . . . . . . . . . . . . . . 26

*Linkletter v. Walker*, 381 U.S. 618, 637, 85 S. Ct. 1731, 1742, 14 L. Ed. 2d 601 (1965) . . . . . . . . 21

*Mora v. United States*, 955 F.2d 156, 157 (2nd Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 22

*Offices of Lakeside Non-Ferrous Metals, Inc. v. United States*, 679 F.2d 778 (9th Cir. 1983) . . . 5, 21

*Oregonian Pub. Co. v. United States Dist. Court*, 920 F.2d 1462, 1466 (9th Cir. 1990) . . . . . . . . 6

*Ramsden v. United States*, 2 F.3d 322, 325 (9th Cir 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 19

*S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co.*, 690 F.2d 1235, 1238 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Times Mirror Co. v. United States*, 873 F.2d 1210, 1212 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . 5

*United States v. Cardwell*, 680 F.2d 75 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*United States v. Kaczynski*, 154 F.3d 930, 932 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. Kama*, 396 F.3d 1236, 1238 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*United States v. Kott*, 380 F.Supp.2d 1122 (C.D.Cal. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Mann*, 829 F.2d 849 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. McGrew*, 122 F.3d 847, 849 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*United States v. Napier*, 436 F.3d 1133 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*United States v. Schlette*, 842 F.2d 1574, 1582 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. Spilotro*, 800 F.2d 959, 963 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*United States v. Stubbs*, 873 F.2d 210, 211 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*United States v. Zolin*, 491 U.S. 554, 105 L. Ed. 2d 469, 109 S. Ct. 2619 (1989) . . . . . . . . . . . . 26

*Up North Plastics, Inc.*, 940 F. Supp. 229, 233 (D. Minn. 1996) . . . . . . . . . . . . . . . . . . . 3, 9-13, 18

*Valley Broadcasting Co. v. United States Dist. Court*, 798 F.2d 1289, 1293 (9th Cir. 1986) . . . . . . . 6

1

2                                        **INTRODUCTION**

3          Dennis Montgomery, Brenda Montgomery and the Montgomery Family Trust (collectively,

4
   the "Montgomerys") submit the following Reply in support of their Motions to unseal the search
5
   warrant affidavits allegedly establishing probable cause for the issuance of the Buckthorn and Storage
6
   Unit Search warrants, for the return of property seized pursuant to the constitutionally infirm search
7
   warrants and to seal and segregate attorney-client privileged information from the seized materials.
8
   Although the Government has strangely chosen to split their response into three separate Opposition
9
10 memoranda, the Montgomerys believe that the Government's position can be succinctly summed up

11 as follows.  First, the Government contends that there is no qualified constitutional right of a search

12 target to view the search warrant affidavit establishing probable cause for the warrant.[1]  However, it

13 is clear that there is, and the Government did not even address *any* of the many cases directly on

14
   point on this issue.  Moreover, unlike some of the published opinions on this subject, where the
15
   news media is seeking access, *targets* have a heightened interest in getting access to the documents
16
17 supporting the Government's exercise of its power to forcibly enter their home.  The Montgomerys

18 are more than happy to **stipulate that the search warrant affidavits remain under seal, accessible**

19 **only to the Montgomerys and their counsel for the purposes of this proceeding only**.

20
           Second, the Government contends that there is no right of a target to seek the return of
21
   property seized pursuant to a search warrant until after the target is indicted, a position that is not
22

23

24          [1] Oddly, the Government focuses on alleged "disputes" with sworn testimony of the
   declarants supporting the Montgomerys' motions. Yet the Government misses the boat. There is no
25 factual dispute because the Government has not created any. Mere argument in a brief hardly makes
   a factual dispute and just like in a summary judgment motion, without a factual dispute created by
26 admissible evidence, there is no genuine issue of material fact. Moreover, although many of these
   facts that the Government apparently takes issue with go to the reasonableness of the manner of the
27 search, not the underlying and significant problem that there was no probable cause for the search
28 and the warrants are constitutionally invalid.

                                            -1-

only repudiated in case after case, but is contrary to logic. Surely there are cases where Rule 41(g) motions are overtly unmeritorious and perhaps even an attempt to disrupt an ongoing criminal investigation. However, that is far from the case here. Of significant note is the fact that in this case, as discussed in great detail in the Montgomerys' memorandum, the search warrants are facially overbroad and therefore unconstitutional. There is no need to wait for indictment to determine that the warrants are invalid and therefore all property seized pursuant thereto must be returned. In what can only be termed an express acknowledgment that the warrants *are* overbroad, the Government did not address this issue *at all*, and did not even *attempt* to distinguish the numerous Ninth Circuit cases directly on point which show that the general search warrant of the type used here are unconstitutional. In addition, there is no secret informant here. The Montgomerys and Warren Trepp are locked in litigation in this very court on issues on which the alleged "criminal" investigation is based. All witnesses that *could* provide information to the Government have testified in hearings and submitted declarations in the civil action. The Government's sources of information are not only *not* secret, but the information itself that has been provided to the Government is no secret either – even if false.

Third, although the Government acknowledges that it has no right to review attorney-client materials among the seized property, the Government contends that the Montgomerys cannot see the materials seized to identify the attorney-client materials. However, the Montgomerys are clearly entitled to identify the attorney-client communications among the numerous hard drives and documents seized, and have them returned. To expect the Montgomerys to identify communications residing on a hard drive in the possession of the Government and then rely on the *Government* to locate those privileged files and remove them without review is at best, naive, and at worst, a callous attempt by the Government to access materials to which it clearly has no right. What is worse, the

1   Government's theory for denying the Montgomerys supervised access to their own materials borders

2   on the nonsensical – that the materials might contain classified materials for which the Montgomerys

3
4   lack security clearance. Whatever classified material is among the materials seized by the

5   Government – and the Montgomerys believe that there is none – that material has already been

6   viewed and stored by the Montgomerys and therefore is already fully known to them. Thus, the

7   Government's position is just a ruse.

8       In short, the Government has offered the usual vague reasons for keeping a search warrant

9
10  affidavit sealed, unsupported by any admissible evidence whatsoever, that have been routinely

11  rejected by virtually every court that has considered the issue. "conclusory assertions are insufficient

12  to allow review; specificity is required." *In re The Baltimore Sun Company v. Goetz*, 886 F.2d 60, 66

13  (4th Cir. 1989). *Accord Up N. Plastics, Inc.*, 940 F. Supp. 229, 233 (D. Minn. 1996).("More than a

14  conclusory allegation of an ongoing investigation is required, however. The government must make

15
16  a specific factual showing of how its investigation will be compromised by the release of the affidavit

17  to the person whose property was seized."). The Government has not even explained why redaction

18  of critical parts of the affidavit is not possible. Even more surprising, the Government has not even

19  attempted to justify the overbreadth of the search warrants – which itself warrants granting the Rule

20  41(g) motion, and the Government has not disputed the Montgomerys' right to preserve the

21
22  confidentiality of their attorney-client communications. Of course, the Court need not even reach

23  the issue of unsealing the search warrant affidavits or the attorney-client privilege issue at this time, if

24  the Court finds –as it should – that as a matter of law that the search warrants are clearly overbroad

25  and therefore unconstitutional.

26                           **ARGUMENT**

27                               **I.**

28

## THE GOVERNMENT HAS FAILED TO MEET ITS BURDEN OF SHOWING "COMPELLING"

## REASONS FOR KEEPING THE SEARCH WARRANT AFFIDAVITS SEALED

The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S.C. Const. Amend. IV.  By its plain words, the Amendment insulates the public from "unreasonable" intrusions and sets forth the specific requirement that search warrants be supported by probable cause. Implicit in that language is the public's right to challenge both the reasonableness of the search and the degree to which the warrant was supported by probable cause. *In re Search Warrants Issued on Apr. 26, 2004*, 353 F. Supp.2d 584, 590 (D.Md 2004).  Without the right of access to the affidavit on which the search warrant was based, the search subject could never make such a challenge. *Id.*  As stated by the learned Justice Harlan, "constitutional provisions for the security of person and property should be liberally construed." *Boyd v. United States*, 116 U.S. 616, 635, 29 L. Ed. 746, 6 S. Ct. 524 (1886). "This is because "[a] close and literal construction deprives them of half their efficacy, and leads to gradual depreciation of the right, as if it existed more in sound than in substance." *In re Search Warrants Issued on Apr. 26, 2004*, 353 F. Supp.2d at 590. The Government has ignored the Fourth Amendment – doesn't even address it – and instead relies on common law rights of the general public to access court records, fails to present any evidence, and fails to even argue the issue of less restrictive alternatives to wholesale sealing of the affidavits. Accordingly, the Government has failed to meet its burden in keeping the affidavits sealed.

A.     The Government Relies Solely On Media Cases Decided Under A Common Law Right Of
        Access To Judicial Records, Not A Fourth Amendment Right Of A *Target* To Access The

-4-

Search Warrant Materials.

The Government's first mistake is in relying on cases dealing with the general public's common law right of access to judicial documents, rather than a search target's constitutional right under the Fourth Amendment for access to the search warrant materials to challenge the propriety of the search.[2]  In each of the Government's cases, such as *United States v. Kott*, 380 F.Supp.2d 1122 (C.D.Cal. 2004) and *Times Mirror Co. v. United States*, 873 F.2d 1210, 1212 (9th Cir. 1989), the Ninth Circuit addressed the right of the media and the public to access otherwise sealed materials under the common law right of the public to access court records.[3]  "The common law right of access to a search warrant affidavit by a newspaper pales in comparison to the rights of a property owner subject to a search and seizure by government agents." *In re Search Warrants Issued on Apr. 26, 2004*, 353 F. Supp.2d at 590.

As state by the Ninth Circuit, "There is a significant difference between the common law and

[2]  Moreover, the legislative history of Rule 41 supports a presumption in Rule 41 that *targets* will generally learn the basis for the government's invasive actions after the search. Fed. R. Crim. P. 41(c), advisory committee's note to 1972 Enactment ("A person who wishes to challenge the validity of a search warrant has access to the affidavits upon which the warrant was issued.") *In re Search of 8420 Ocean Gateway Easton*, 353 F. Supp. 2d 577, 581 (D.Md. 2004).  "[A] target has a constitutional right to review the affidavit to learn the basis for the intrusive government action and evaluate the filing of a Rule 41(e) motion. . ." *Id.*

[3]  The Government's other cases are equally inapposite. In *United States v. Mann*, 829 F.2d 849 (9th Cir. 1987), the issue was the district court's inherent power to seal court files, in this case, affidavits containing financial records from the defendant's Cayman Island bank accounts to protect the defendant's right to privacy.  The issue in *Offices of Lakeside Non-Ferrous Metals, Inc. v. United States*, 679 F.2d 778 (9th Cir. 1983) was also the inherent power to seal documents, this time in connection with a civil suit against the Government. In *In re Sealed Affidavit(s) to Search Warrants* etc., 600 F.2d 1256 (9th Cir. 1979), the issue was simply whether a district court had the power to seal search warrant materials, and remanded to the district court to determine whether to exercise that power.  In fact, the Ninth Circuit specifically remanded to district court for consideration of a potential Fourth Amendment right to the search warrant materials. *Id.* at 1258 n.3. These cases are manifestly irrelevant to a *target's* Fourth Amendment right to challenge the constitutionality of the search warrant.

4/3/2006 2:24 PM FROM: Flynn Stillman Flynn _Stillman  TO:   1 775 68° 5864   PAGE: 011 OF 032

1 constitutional inquiries." *United States v. Kaczynski,* 154 F.3d 930, 932 (9th Cir. 1998) (Reinhardt, J.

2 concurring).  "While the purposes of both are similar, the common law right of access to court

3 proceedings and documents "is not absolute . . . nor is it given the same level of protection accorded

4

5 constitutional rights." *United States v. Schlette,* 842 F.2d 1574, 1582 (9th Cir. 1988). *See also Valley*

6 *Broadcasting Co. v. United States Dist. Court,* 798 F.2d 1289, 1293 (9th Cir. 1986).

7 For example, the common law right of access is subject to the balancing of interests and

8 district court decisions are reviewed for abuse of discretion. *Kaczynski,* 154 F.3d at 932, citing

9 *Schlette,* 842 F.2d at 1576-77, 1581.  The *constitutional* right of access, however, may be overcome

10 only by showing a <u>compelling</u> interest that <u>no</u> alternative will adequately protect, *Kaczynski,* 154

11

12 F.3d at 932, citing *Globe Newspaper Co. v. Superior Court,* 457 U.S. 596, 607, 73 L. Ed. 2d 248,

13 102 S. Ct. 2613 (1982); *Oregonian Pub. Co. v. United States Dist. Court,* 920 F.2d 1462, 1466 (9th

14 Cir. 1990), and the district court's decision is reviewed under a *de novo* standard. *Kaczynski,* 154

15

16 F.3d at 932.

17 As the District Court for the District of Maryland eloquently observed, "there is something

18 fundamentally unsatisfactory in the suggestion that a target has, at most, the same right of access to

19 the documents purporting to establish probable cause for an intrusion into his or her home, office or

20 vehicle as any disinterested person on the street:

21

22 [The] balancing test under the common law does not adequately address the interests
of subjects of governmental searches. The common law right of access derives from
23 the presumption of openness which the Supreme Court has ascribed to judicial
proceedings and judicial records. The public's interest in accessing court records and
24 proceedings often runs counter to, and often must be balanced against, the interests of
a criminal defendant (or the subject of a criminal investigation). This is particularly true
25 in cases such as the instant one. Here, the Property Owner has a strong interest in
preventing public disclosure. However, the Property Owner has an abiding interest in
26 challenging the reasonableness of the government's invasion of his property and/or his
privacy. This interest is simply not addressed by the common law right of access.
27

28

*In re Search Warrants Issued on Apr. 26, 2004*, 353 F. Supp.2d at 590; *In the Matter of the Search of the Offices and Storage Areas Utilized by Stephen P. Amato*, 2005 U.S. Dist. Lexis 6870 (D. Me April 14, 2005) (quoting *In re Search Warrants Issued on April 26, 2004*).

Although the Government fails to address, much less distinguish the numerous cases that are directly on point and involve a *target's* Fourth Amendment right to have access to the search warrant affidivats pre-indictment, the closest that the Government gets to a case on the subject is *In re EyeCare Physicians of America*, 100 F.3d 514 (7th Cir. 1996), a case whose Fourth Amendment holding has been followed by no other court outside the Seventh Circuit. *See e.g., In re Search Warrants Issued on April 26, 2004*, 353 F. Supp. 2d 584 (D. Md. 2004) (rejecting *Eyecare's* analysis); *In re Search of 8420 Ocean Gateway Easton*, 353 F. Supp. 2d 577 (D.Md. 2004) (rejecting *Eye Care* and calling the Seventh Circuit's analysis "incongruous with the functioning of a democracy where openness must be the rule, secrecy the carefully limited exception"). Moreover, in *Eye Care*, the Government asserted that sealing was necessary to protect grand jury proceedings, which is not a factor here. According to the two U.S. Attorneys on the case, Mr. Montgomery is not even a target, much less the subject of a convened grand jury.

Finally, the Government's reliance on *United States v. Napier*, 436 F.3d 1133 (9th Cir. 2006) is even more inapposite than the Government's "inherent power to seal documents" cases. *Napier* involved a defendant's entitlement to a *Franks* hearing (*Franks v. Delaware*, 438 U.S. 154, 155-56, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978)), where a defendant who conditionally pled guilty wanted to show that a confidential informant lied in the affidavit supporting a search warrant sufficient to invalidate the search and suppress all evidence seized. Not only did the district court order the search warrant affidavit given to the defendant in redacted form to omit the identity of a confidential informant – again not present in this case – but the district court also allowed the defendant to cross-

-7-

examine the search warrant affiant in an evidentiary hearing *and* offered to hold an *in camera* hearing where the confidential informant could be cross-examined. Accordingly, to the extent that a *Franks* hearing has any relevance to this case, the Ninth Circuit approved of exactly what all courts other than the Seventh Circuit in *Eye Care* have required, *i.e.*, turn over the affidavit with as little redaction as possible, and then only if the Government shows by *facts* not argument, a *compelling* need for redaction.

B.   The Government Has Made No Showing Of Compelling Need For Secrecy.

There is a constitutional right under the Fourth Amendment to examine the affidavit in support of a search warrant after execution. *In re Search Warrants Issued on April 26, 2004*, 353 F. Supp. 2d 584 (D. Md. 2004). "The government, not the target, must demonstrate compelling government interests in keeping the affidavit under seal, and that the government must demonstrate that "no less restrictive means, such as redaction, is available" to prevent disclosure." *Id.*

The Government's attempt at showing "compelling need" for the continued sealing of the search warrant affidavits would warrant summary judgment against it in a civil case. First, the Government has *not* submitted an iota of admissible evidence that would support its vague and conclusory argument that there is a compelling need for secrecy. "It is axiomatic that the arguments of counsel are not evidence." *Goehring v. Wright*, 858 F. Supp. 989, 993 (N.D.Cal. 1994). "A party cannot manufacture a genuine issue of material fact merely by making assertions in its legal memoranda." *S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co.*, 690 F.2d 1235, 1238 (9th Cir. 1982). "Legal memoranda and oral argument are not evidence and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment. *British Airways Bd. v. Boeing Co.*, 585 F.2d 946 (9th Cir. 1978), *cert. denied*, 440 U.S. 981, 99 S. Ct. 1790, 60 L. Ed. 2d 241 (1979). A motion for summary judgment cannot be defeated by mere conclusory allegations

unsupported by factual data. *Angel v. Seattle-First National Bank*, 653 F.2d 1293, 1299 (9th Cir. 1981). In addition, there is "no authority for the proposition that a district judge must rely on a representation, made by the government or any other litigant for that matter. Instead, in making a determination, a trial court must rely on the evidence before it." *Mora v. United States*, 955 F.2d 156, 157 (2nd Cir. 1992).

Second, even the conclusory arguments of counsel for the Government, which are not evidence, have been rejected by virtually every court that has directly considered the issue. The Government's attempt at an <u>argument</u> of compelling need can be found on p. 6, lines 17-23. The Government argues, without evidentiary support whatsoever, that unsealing the affidavit will (1) "compromise an ongoing investigation," (2) will allow "premature identification of possible witnesses," (3) "the cooperation of such witnesses could be compromised or influenced, (4) there is a "possibility that potential subjects could alter, remove, or destroy information sought by the Government," and (5) the search warrant affidavits "identify specific, sensitive information." None of these general, conclusory *arguments of counsel* – even taken together – amount to a showing of "compelling need." Ruling on virtually the identical conclusory reasons, albeit presented in an affidavit at least, the *Up North Plastics* court stated:

> the government has failed to make a specific showing of compelling need for an extension of the sealing order. The government's claim of a compelling need to keep the court's records secret amounts ***to nothing more than conclusory allegations which would require the sealing of search warrants in nearly every criminal investigation.***

*In re Matter of Up North Plastics, Inc.*, 940 F. Supp. at 232-33 (emphasis added).

Moreover, the Government has not even addressed the second prong of the test, *i.e.*, that no less restrictive means are available. Since it has failed to even address the second prong of the test, which is also required, the Government has already failed to show "compelling need."

-9-

1.    **The "Compromise Ongoing Investigation" Argument.**

In *Goetz*, the Fourth Circuit rejected the "ongoing investigation" claim that the Government makes virtually every time, holding that "conclusory assertions are insufficient to allow review; specificity is required." *Goetz*, 886 F.2d at 66. In *Up North Plastics, Inc.*, 940 F. Supp. 229 (D. Minn. 1996), the court rejected the identical argument, stating "More than a conclusory allegation of an ongoing investigation is required, however. The government must make a specific factual showing of <u>how</u> its investigation will be compromised by the release of the affidavit to the person whose property was seized." *Id.* at 233. *See also, In re Search of 8420 Ocean Gateway Easton*, 353 F. Supp. 2d at 582-83 ("the Court fails to see how release of those results would compromise or interfere with the investigation."). "If the pendency of the criminal investigation here constitutes a compelling reason then essentially any investigation would." *Id.*

2.    **Premature Identification of Possible Witnesses Is No Excuse.**

There are no real mysteries in this case concerning possible witnesses.[4] First, Trepp and the employees at eTreppid Technologies, LLC are locked in civil litigation in this very court. Trepp and all employees with knowledge of anything having to do with Mr. Montgomery have already testified in a twelve hour evidentiary hearing or submitted declarations, including Warren Trepp, Sloan Vanables, Kendall Roman, Zehang Sun, Venkata Kalluri, Barjinder Bal, an Air Force official named John Hennessey, and of course, Mr. Montgomery. In addition, there are numerous officials up to the

---

[4] That is assuming that Agent West and AUSA Pugliese were truthful in casual conversation in identifying the potential "crime" as mishandling of classified information or as Special Agent West stated to Mr. Montgomery's attorney, Eric Pulver, during the Buckthorn Search, the alleged theft of eTreppid's trade secrets. As discussed *infra*, the closest the Government has come to actually identifying the suspected criminal activity in writing is that the Government "is conducting an investigation into violations of Title 18, United States Code" in its Opposition brief. Opposition, p.1, lines 20-21. Apparently, Mr. Montgomery is being investigated for anything from "Transportation of water hyacinths", 18 U.S.C. § 46, to "fraudulent use of a 4H club emblem," 18 U.S.C. § 707.

1   ████████████████ with whom Mr. Montgomery was in regular contact, including ██

2   ████████████████ all of whose identities are known to Mr. Montgomery and whom he has

3   been in contact with. Thus, virtually all possible witnesses are not only known to Mr. Montgomery

4
5   but have already testified. The fact that the target either knows or strongly suspects the identity of

6   witnesses or even informants shows that this excuse is not compelling. *See In re Search of 8420*

7   *Ocean Gateway Easton,* 353 F. Supp. 2d at 582.   Moreover, despite such knowledge for at least two

8   months, the Government has made no claim of any inappropriate action against any complaining

9   witnesses. This also undercuts this claim. *Id.* Finally, although there are no "undercover"

10
11  informants in this case, even that is no excuse, since (a) their identities need not in any event be

12  revealed, and (b) there is no allegation – much less a factual assertion by admissible evidence – that

13  there is even a hint of physical danger to them, or even harassment or intimidation. *Id.* "Unlike the

14  violent or drug-related crime conspiracy investigations, the government's investigation in this matter

15  simply doesn't involve a serious threat to any likely witnesses, either by way of harassment, threats,

16
17  or intimidation." *Up North Plastics,* 940 F.Supp. at 234.

18          3.      **The Claim That Cooperation of Witnesses Could Be Compromised Or Influenced Has**

19                  **Been Routinely Rejected.**

20          This excuse is another of the routine excuses presented by the Government in opposing

21  release of search warrant affidavits. As stated in *In re Search of 8420 Ocean Gateway Easton,*

22
23  "while the government raises the hypothetical possibility that "information contained in the affidavit

24  can afford the opportunity for individuals . . . to conform their version of events" and that witnesses

25  "can be contacted and coached", there is no factual basis for such a concern set out in the affidavit."

26  353 F.Supp.2d 383. As stated in *Up North Plastics,* because news of the searches had already

27  circulated throughout the small industry in which Up North Plastics operated, "to the extent that any

28

-11-

witnesses might tailor their testimony, those persons have already done so." *Up North Plastics*, 940

F. Supp. at 234.

Similarly, in *In re Search Warrants Issued on April 26, 2004*, 353 F. Supp. 2d 584 (D. Md.

2004), the Government contended that unsealing the search warrant affidavit would "interfere with

the investigation in that loyal employees and patients could be contacted and coached; discourage

other witnesses from cooperating for fear of possible retaliation; have a detrimental effect on the

well-being and business reputation of the complaining witnesses; and identify named potential

subjects and target." *Id.* at 591. The court soundly rejected these contentions – which, unlike the

present case, were made under oath – holding that these generalized fears fell far short of a

"compelling" showing. *Id.*

Moreover, although such "concerns" are merely rank speculation completely lacking any

factual basis, and ignoring that the Government has already seized more documents, computers and

storage media than it was entitled to have seized, and either contains the "smoking gun" or it does

not, the Government has more than sufficient remedies to address such conduct if the Montgomerys

were so fool-hardy. *See e.g.*, 18 U.S.C. § 1512 (proscribing tampering with a witness, victim or

informant) and 18 U.S.C. § 1519 (proscribing destruction, alteration or falsification of records in

federal investigations).

    4.    **The Government's Generalized Fear that Information Sought By The Government Could Be Destroyed Is No Excuse.**

As previously discussed, the Government either has the "goods" on Mr. Montgomery or it

does not. The Government has not even identified a crime, much less a target. There is no grand

jury convened and Mr. Montgomery is not a target. Moreover, to the extent that the Government

contends that the affidavit identifies third parties that potentially possess evidence, the Government

-12-

1   must surely have already executed search warrants on those individuals in the four weeks since the

2   search on the Montgomerys' home.  Finally, to the extent that the Government contends that third

3   parties sympathetic to the Montgomerys would destroy or alter evidence for him, any third party that

4
    was so inclined to violate at least two federal laws and tamper with evidence, would surely have
5
6   done so by now.  In short, as in *Up North Plastics*, "The government's claim of a compelling need to

7   keep the court's records secret amounts to nothing more than conclusory allegations which would

8   require the sealing of search warrants in nearly every criminal investigation."  940 F.Supp. at 234.

9
        5.    **The Sensitive Information Argument That The Government Claims "Distinguishes**
10
11            **This Case From All Others" Is Meritless.**

12      As discussed, the Government has not even identified what crime that it is investigating.  Its

13  unsupported and mysterious comment that the affidavit contains "specific, sensitive information" –

14  perhaps involving the unauthorized use of the 4H club insignia –  must be the epitome of a

15
    conclusory, generalized excuse rejected in case after case.[5]  First, up until the U.S. Attorney had Mr.
16
17  Montgomery's security clearance revoked after the Buckthorn search (and counsel pointed out that

18  there was no reason for Mr. Montgomery not to review the seized material for attorney-client

19  materials since he had security clearance), Mr. Montgomery had one of the highest security

20  clearances possible – "Top Secret with Sensitive Compartmentalized Information – ███████

21  ████████████████████  He alone handled and was authorized to handle classified

22
    information at eTreppid Technologies, LLC.  He alone ran the computer programs that provided top
23

24      [5]  The Government does not argue that the unsealing of the affidavits will compromise grand
25  jury secrecy or confidential informants, two concerns often argued by the Government in these
    cases, and the argument relied on by the Seventh Circuit in *EyeCare*.  However, here the search
26  warrants were issued independent of the grand jury process, and the government has given no
    specifics on what information refers or relates to any possible grand jury proceedings.  Thus, even
27  that excuse must be rejected.  *Up North Plastics*, 940 F.Supp. 234.

28

secret information to the Government – information which was analyzed by Mr. Montgomery before

passing it along to the Government. He alone wrote the software whose very capabilities were

classified "Top Secret." In all likelihood, Mr. Montgomery's security clearance was far above the

assistant U.S. Attorneys assigned to this case. Thus, for the Government to now disingenuously

argue that the information in the affidavit is so sensitive that Mr. Montgomery is not aware of it, not

intimately familiar with it or cannot even see it, is, to be charitable, a joke.

Moreover, if the Government's *true* concern is about the release of such information to the

public, rather than to Mr. Montgomerys' counsel, that concern is easily addressed. The

Montgomerys do not seek to have the search warrant affidavits unsealed *as to the general public*,

merely unsealed for the Montgomerys' use in connection with this case. They and their counsel are

more than content to be bound by the sealing order.

C.      The Government Has Failed to Address Whether There Are Less Restrictive Means Than Total

Secrecy Available.

As set forth above, it is the Government's burden to present admissible evidence sufficient to

establish both "compelling need" for depriving the search target of the search warrant affidavit, and

also to show that no less restrictive means would suffice. *See e.g., In re Search Warrants Issued on*

*April 26, 2004*, 353 F. Supp. 2d at 591. The Government has failed to present any evidence on this

point and therefore apparently concedes that there are less restrictive means available to address the

Government's concerns, even if this Court were to find "compelling need" despite the lack of

anything but argument of counsel.

Making the Montgomerys subject to the sealing order is perhaps the most effective way to

address the Government's concerns, since the Montgomerys have no interest in the general public's

access to the search warrant materials. Instead, the Montgomerys solely want access to the affidavit

-14-

in order to contest the constitutionality of the search. If there is truly information, such as the identity of an undercover informant, for example, that information can easily be redacted. In fact, in virtually every case, redaction – if any – was held to satisfy whatever concerns the Government properly supported.

D. The Government's Weakly Presented Argument That The Court Must Hold An Evidentiary Hearing Is Wrong.

The Government has not cited any authority for its proposition that it is entitled to an evidentiary hearing, at which it can present evidence, presumably contradicting the declarations presented by the Montgomerys in support of their motion. However, before the Government can get to an evidentiary hearing, if indeed it has a right to one on a motion seeking to unseal the search warrant affidavits, it has to show that there is a material factual dispute requiring a trier of fact. As set forth above, the Government presented no declarations whatsoever and therefore the evidence submitted by the Montgomerys is undisputed. As set forth above, argument in legal memoranda does not create a factual dispute. *British Airways Bd.*, 585 F.2d at 952. Thus, even if the Government was otherwise entitled to an evidentiary hearing if there was a factual dispute, the Government has failed to create one. Moreover, the alleged issues on which the Government appears to believe evidence may be submitted, is not even material to the unsealing of the affidavits. Thus, the Government is not entitled to an evidentiary hearing on the issue of whether or not the search warrant materials should be unsealed.

II.

## THE GOVERNMENT'S RULE 41(G) ARGUMENT IS SIMILARLY FLAWED

A. This Court Has Equitable Jurisdiction Pursuant To The Ninth Circuit's Test.

The Government is correct that in the Ninth Circuit, a pre-indictment Rule 41(g) motion is an

-15-

equitable proceeding. , before reaching the merits of the motion, the district court must consider

whether: (1) "the Government displayed a callous disregard for the constitutional rights of the

movant"; (2) "the movant has an individual interest in and need for the property he wants returned";

(3) "the movant would be irreparably injured by denying return of the property"; and (4) "the movant

has an adequate remedy at law for the redress of his grievance." *United States v. Kama*, 396 F.3d

1236, 1238 (9th Cir. 2005),[6] citing *Ramsden v. United States*, 2 F.3d 322, 325 (9th Cir 1993). If the

"balance of equities tilts in favor of reaching the merits" of the Rule 41(g) motion, the district court

should exercise its equitable jurisdiction to entertain the motion. *Id.* Where the Government falls

short is in its application of the four factors.

> 1.     **The Government Has Shown A Callous Disregard For The Montgomerys'**
>
> **Constitutional Rights.**

The "callous disregard" factor is no more than an inquiry into whether the search warrant was

unconstitutional. *Ramsden*, 2 F.3d at 325. In *Ramsden*, the Ninth Circuit held that the

Government's violation of the movant's Fourth Amendment rights established the Government's

"callous disregard." Here, the Government violated the Montgomerys' Fourth Amendment rights in

at least two ways: (1) the search warrant was facially overbroad and therefore invalid and (2) the

search warrant was not supported by probable cause. In addition, the Montgomerys were deprived

of property without due process under the Fifth Amendment. The entirety of the Government's

argument on this factor is one sentence in its Response to the Montgomerys' Rule 41(g) motion, at p.

4, lines 18-19: "There is no credible evidence that the Government displayed a callous disregard for

the constitutional rights of the Montgomerys or the Montgomery Family Trust." Truly, after such an

---

[6] In *Kama*, the Ninth Circuit did not address the issue of equitable jurisdiction other than to cite the rule in *Ramsden* because the appellant waived the issue on appeal by not raising it.

1   unwarranted exercise of police power against someone who is not even a "target" of a criminal

2   investigation, the Government's cavalier and dismissive one-sentence analysis is itself a "callous

3   disregard" for the rights of the Montgomerys.

4          (a)    The Search Warrant Is On Its Face Overbroad And Unconstitutional.

5          The Fourth Amendment dictates that a search warrant must be sufficiently particular and not

6   overbroad. United States v. McGrew, 122 F.3d 847, 849 (9th Cir. 1997), citing Andresen v.

7   Maryland, 427 U.S. 463, 480, 49 L. Ed. 2d 627, 96 S. Ct. 2737 (1976).  As discussed at length in the

8   Montgomerys' Motion, the search warrant in this case is precisely the type of overly broad warrant

9   that has been rejected time and time again by the Ninth Circuit.  United States v. Kow, 58 F.3d 423,

10  427 (9th Cir. 1995); In re Grand Jury Subpoenas, 926 F.2d 847, 857 (9th Cir. 1991); United States v.

11  Stubbs, 873 F.2d 210, 211 (9th Cir. 1989);United States v. Spilotro, 800 F.2d 959, 963 (9th Cir. 1986);

12  United States v. Cardwell, 680 F.2d 75 (9th Cir. 1982).

13         Moreover, other than to state in its Response that the Government is investigating violations

14  of "title 18, United States Code," there is not even a clue as to the nature of the criminal activity

15  being investigated.  There is therefore no feasible way for anyone, either the Government or the

16  Montgomerys, to determine what is possibly subject to seizure and what is not.  For this exact

17  reason, the Ninth Circuit has "criticized repeatedly the failure to describe in a warrant the specific

18  criminal activity suspected," McGrew, 122 F.3d at 849 n.2 citing Kow, 58 F.3d at 427.

19         In the face of numerous cases from the Ninth Circuit – some containing almost the same

20  language as the warrants at issue here – the Government's sole response is found in its Response to

21  Motion to Unseal Affidavits, p. 7, lines 2-4: "the concerns regarding breadth and substance are best

22  left to the Court's determination."  This shocking lack of argument in the face of specific Ninth

23  Circuit decisions directly on point is itself tantamount to an admission that there is no way to support

-17-

4/3/2006 2:04 PM FROM: Flynn, Stillman Flynn, Stillman TO:

the warrant's particularity. Because of the Government's abject lack of response to the

Montgomerys' overbreadth argument, the Montgomerys will simply refer the court to its very

extensive argument on this point in its Motion. The facial unconstitutionality of the search warrant

establishes "callous disregard."

(b)    *The Search Warrant Affidavit Must Be Unsealed To Show Lack Of Probable*

*Cause.*

If a Rule 41(g) motion is made, the Rule provides that the court shall receive evidence on any

issue of fact necessary to decide the motion. At a hearing to determine whether the movant may

obtain the return of his property, the government must establish that there was probable cause. *Up*

*North Plastics*, 940 F.Supp. at 233. "In such cases, the court's decision will almost always depend

upon whether the affidavit submitted in support of the warrant application established probable

cause to believe that evidence of a crime would be found in the place to be searched." *Id.* Thus, the

affidavit must be seen to be effectively challenged. *Id.*

> To permit an affidavit or any documents in support of a search warrant to remain
> sealed against examination by the person whose property was searched deprives him
> of the right secured by Rule 41 to challenge that search. There is nothing in Rule 41 to
> suggest that such evidence is intended to be taken in secret or without a full
> opportunity for the aggrieved person to argue that probable cause was lacking.

*Id.* Although the search warrants are facially unconstitutional, the Montgomerys are still entitled to

argue that the search warrants were not supported by probable cause in order to establish the

"callous disregard" prong, in addition to the underlying constitutional violation, requiring that the

Montgomerys' Rule 41(g) motion be granted.

2.    **The Montgomerys Obviously Have an Individual Interest In And Need For The**

**Property They Want Returned.**

At least the Government made a one line comment regarding the "callous disregard" factor. It

-18-

made no comment at all on the Montgomerys obvious ownership interest in the computers, the hard drives, the storage media, their daughter's Playboy pictures, and the many documents relating to Mr. Montgomery's thirty years as a computer programmer and inventor.  Furthermore, many of the files stored on the computers as well as in the ransacked storage unit are currently necessary for his prosecution and defense of the two related civil actions now pending in this Court, e*Treppid Technologies, LLC v. Montgomery* and *Montgomery v. Trepp* et al.  In support of his copyright claims, and in defense of Trepp's bogus trade secret claim, the Montgomerys must have the seized materials in order for their retained experts to analyze the data, address any patent and copyright issues raised by the U.S. Patent Office and U.S. Copyright Office regarding his applications for derivative work copyrights and patents.  There is no *bona fide* argument that the Montgomerys do not have either an interest or a need for the return of the computers by which he works his trade, and the other improperly seized materials.  *See Ramsden*, 2 F.3d at 325 (documents necessary for business established need).  *See also, Goodman v. United States*, 369 F.2d 166, 168 (9th Cir. 1966) (movant has pre-indictment interest in return of original documents seized, together with copies).

      3.    **The Montgomerys Would Be Irreparably Injured by Denying Return of the Property.**

The Montgomerys are suffering and will suffer irreparable harm if this Court refuses to return their property.  As set forth in the Montgomery Declaration, the Montgomerys have a specific need for the materials seized.  First, Mr. Montgomery is by trade a computer programmer and inventor.  The Government has taken all his computer equipment, including specialized software owned by Mr. Montgomery that is necessary for the performance of his occupation.  Moreover, given the overbreadth of the search warrant, the Government was even able to take his word processing software and other clearly irrelevant tools of his trade.  He is now not only deprived of his computer equipment, but because of that, he cannot even perform any work and therefore cannot earn a living

-19-

in order to pay for his defense in this action and in the continued civil litigation.[7]

Second, and perhaps even more important, the Montgomerys are currently locked in civil litigation with Trepp and eTreppid Technologies over the ownership of various intellectual property created by Mr. Montgomery.  The storage media and documents seized from the residence and the storage unit are specifically relevant to the litigation to conclusively demonstrate that Mr. Montgomery created the intellectual property prior to and independent of eTreppid. Documents and disks seized from his storage unit establish a line of twenty-plus years of research and development, including without limitation, programming from the 1980's for which Mr. Montgomery holds numerous copyrights.  Since the source code of those early programs from the 1980's is antiquated in today's computer world and has not been used in many years, that evidence is (a) irreplaceable and (b) critical to Mr. Montgomery's civil litigation.  His inability to obtain those files and records may very well lead to his loss of valuable copyright rights, some of which he needs to immediately file in order to preserve his copyright claims in the civil litigation.  In infringement actions, for example, irreparable harm is presumed where infringement is demonstrated.

Third, in addition, the Government's possession of attorney-client communications and its refusal to allow Mr. Montgomery or his attorneys access to the documents in order to identify and segregate the attorney-client documents similarly constitutes irreparable harm. The Government even proposes to send all seized materials to Washington D.C., where unspecified individuals working for the Government will have free reign to review, analyze and copy Mr. Montgomery's attorney-client

---

[7]  Moreover, the computer hardware itself is totally unnecessary to any criminal investigation. The Government can easily "image" the hard drives on any equipment taken, thereby preserving whatever alleged "evidence" is there, while returning the hardware itself to Mr. Montgomery. Similarly, the Government can easily copy any other storage media such as "floppy disks" and return either copies or the originals of these storage media to Mr. Montgomery.  The Government has expressly refused to do either.

communications which, in significant part, relate directly to the legal theories, advice and strategies for dealing with Trepp's claims regarding what appears to be identified in the search warrants as the "Source Code."[8]  As shown by the Stillman Declaration and the exhibits attached thereto, Mr. Stillman has previously proposed to review the seized files with the Government and Mr. Montgomery in order to segregate the attorney-client information from any other information.  That offer has been expressly rejected, on the spurious grounds that Mr. Montgomery might see "classified information" that he already possessed legitimately, although Mr. Montgomery denies that there is any such material among the seized materials.

Since the Government has so far refused to provide any copies of any of the documents or electronic media taken in the search, that alone distinguishes this case from, for example, *Offices of Lakeside Non-Ferrous Metals v. United States*, 679 F.2d 778, 780 (9th Cir. 1982), where the Government's provision of copies of all materials were furnished to the movant. Accordingly, since the Government has not submitted any evidence on this point or refuted the evidence submitted by the Montgomerys, their showing of irreparable harm is uncontested.

4.    **The Montgomerys Have No Adequate Remedy At Law For The Redress Of Their Grievance.**

The Montgomerys have also established that they have no adequate remedy at law.  "The ruptured privacy of the victims' homes and effects cannot be restored. Reparation comes too late." *Linkletter v. Walker*, 381 U.S. 618, 637, 85 S. Ct. 1731, 1742, 14 L. Ed. 2d 601 (1965).  "Where no

---

[8]  As discussed *supra*, the Montgomerys have no idea what alleged criminal activity is being investigated.  They only surmise that the investigation is somehow related to eTreppid's trade secret claim based on Agent West's offhand comment to Eric Pulver during the Buckthorn search, and the fact that Trepp has repeated referred to his alleged "trade secrets" as the "Source Code."  Other than that, the criminal investigation could involve anything from pornography (which might explain the FBI's seizure of the Montgomerys' daughter's Playboy photos, to some type of "spamming" or other activity somehow involving a computer.

future proceeding in which the plaintiff may vindicate his rights seems likely, it becomes more

difficult to find an adequate remedy at law" *Hunsucker v. Phinney*, 497 F.2d 29, 35, (5th Cir) *cert.*

*denied*, 1975, 420 U.S. 927, 95 S. Ct. 1124, 43 L. Ed. 2d 397 (1974). *See also, Ramsden*, 2 F.3d at

326 (movant does not have the opportunity to challenge the seizure of the documents and request

their return at a later date, without a current plan to prosecute). As many cases take months or years

to develop, and a grand jury has not even been convened at this point, there is no adequate remedy.

Moreover, as the Government has actually denied that Mr. Montgomery is a target *at all*, and Mrs.

Montgomery and the Montgomery Family Trust have *never even been mentioned as potential search*

*warrant targets*, they clearly have no remedy at law. Given that the pendency of criminal charges

would be a defense to a pre-indictment Rule 41(g) motion, and the Government's "Response" is

conspicuously silent on this point, the Court is justified in assuming that there is no current plan to

prosecute Mr. Montgomery, Mrs. Montgomery or the Montgomery Family Trust, which establishes

lack of adequate remedy at law.

5.    **All Factors Favor This Court's Exercise Of Equitable Jurisdiction.**

Contrary to the Government's bald conclusion that none of the factors favor assertion of

equitable jurisdiction, as discussed above, each of the four factors favors the exercise of jurisdiction

in this case. Moreover, although the Government seems to be under the impression that this Court

must hold an evidentiary hearing to determine the exercise of equitable jurisdiction, it cites no

precedent or rule that would require an evidentiary hearing, particularly where there are no facts in

dispute. As discussed above, the Government's *argument* that there is some dispute falls far short of

*establishing* a factual dispute. *Mora*, 955 F.2d at 157 (Government representations in memoranda

are not evidence upon which the court can rely).

B.    The 41(g) Motion Should Be Granted On The Merits.

-22-

Fed. R. Crim. P. 41(g) provides:

> A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return . . . . The court must receive evidence on any factual issue necessary to decide the motion. If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings.

Rule 41(g) provides a pre-indictment right to seek return of property based on the commission of an unlawful search and seizure. *See, e.g., In re Search of 8420 Ocean,* 353 F. Supp.2d at 579 and n.2; *In the Matter of the Search of the Offices and Storage Areas Utilized by Stephen P. Amato,* 2005 U.S. Dist. Lexis 6870 (D. Me April 14, 2005).

As exhaustively set forth in the Montgomerys' Motion, and need not be repeated again here since the Government has not responded to any of the arguments, the warrant is invalid as a general warrant, and in the alternative, is not supported by probable cause. Although the Government is not entitled to an evidentiary hearing on the facial invalidity of the search warrants, the *Montgomerys* are entitled to an evidentiary hearing on the existence of probable cause, once the search warrant affidavits are unsealed for the Montgomerys to use in the proceeding.

The only issue raised in its Response to the Rule 41(g) motion is limited to the Government's alleged "ownership" of classified information. First and foremost, the Government has presented nothing but speculation as to whether there is any "classified" information among the materials seized from the Montgomerys. Moreover, the Government's apparent theory that property owned by the Montgomerys that is subsequently classified by the Government suddenly transfers ownership sufficient to deprive the Montgomerys of their computer equipment that allegedly contains such information is located, is not only unsupported by any citation to a statute or some legal precedent, but is contrary to logic as well. The Fifth Amendment requires that the Montgomerys be given due process before being deprived of property. The Government's contention that its *ex post facto*

-23-

classification of material created by Mr. Montgomery creates a "springing" interest in Mr.

Montgomery's property without any opportunity to challenge that alleged assertion smacks of a Fifth

Amendment violation.

Moreover, even if the Government's theory were given credence, that still does not justify the

retention of all of the seized property, even assuming that the Government can establish that there is

any classified information among the materials seized.  Although the Montgomerys have the burden

of proof in a Rule 41(g) motion, the Government's argument that there is perhaps classified material

among that seized is a defense to the return of the property, and therefore the Government bears the

burden of proof.  As set forth several times, the Government has presented nothing but speculation

and argument in its Response, which does not meet its burden of proof.  Accordingly, the Motion

should be granted in full.

C.    The Montgomerys Are Entitled To The Return Of Both The Laptop Computer And The

Prescription Medications Seized.

The Government also attempts to retain Mr. Montgomery's laptop, seized after he was

ordered to park his car in the garage, with the unsupported argument that Mr. Montgomery

voluntarily parked the car in the garage.  Mr. Montgomery's laptop is essential to his current work

and it must be returned.  At most, the Government could simply image the hard drive and return the

laptop itself, even assuming that it was legitimately seized.  Although the Government could have

created a disputed factual issue regarding the propriety of that seizure by submitting some admissible

evidence, it has failed to do so and therefore there is no need for an evidentiary hearing.  The

laptop's seizure, which is not overtly the instrumentality of any crime at all, violates the

Montgomerys' Fourth Amendment rights and must be returned.

While less critical, since they can be replaced, the prescription medications should also be

-24-

returned.  These medicines are the type of garden-variety medicines routinely found in many homes,

such as Valium, Carisoma tablets (a weak pain medicine) and an antibiotic (Azithromycin).  They are

not therefore presumptively "contraband" and subject to seizure under the Plain View Doctrine."

## III.

## THE GOVERNMENT APPARENTLY AGREES THAT IT HAS NO RIGHT TO REVIEW ATTORNEY-CLIENT PRIVILEGED MATERIALS

The Government does not take apparent issue with the fact that it is not entitled to review

attorney-client information contained in the seized materials.  However, the Government then takes

an illogical approach designed to deprive the Montgomerys of the very privilege that it first

acknowledges.  In short, the Government contends that the Montgomerys have not identified the

specific materials subject to the privilege, but has at the same time refused the Montgomerys and

their attorneys any access to the seized materials to make a specific assertion of privilege.  Thus,

there is no way for the Montgomerys to make any showing *other than* a general assertion that the

seized materials contain attorney-client privileged materials on the hard drives of the computers

seized, and potentially in documents seized from the box labeled "attorney-client documents" in the

storage unit, among others.

To address this specific problem, counsel for the Montgomerys specifically proposed to enter

into a stipulation and order for the handling of the attorney-client communications, which the

Government rejected, on the specious grounds that Mr. Montgomery and his counsel might view

---

" The Government's statement that Mr. Montgomery "was offered" an opportunity to produce the prescriptions for those medications is an example of the continued attempts to interrogate Mr. Montgomery even after his counsel was present.  As Agent West and the Government should obviously be aware, Mr. Montgomery has absolutely no obligation to say a word to the FBI whatsoever under the Fifth Amendment.  So to the extent that the Government is seeking to draw some inference that the medications were "contraband" because Mr. Montgomery's attorney declined to allow Mr. Montgomery to be further interrogated is plainly improper.

1   classified information that, if it even is present, is already well-known to Mr. Montgomery.

2   Moreover, to the extent that there is some reference to allegedly classified information contained in

3   attorney-client communications, the Government is *still* not entitled to review those

4
5   communications.

6       Worse, "putting the cart before the horse," the Government proposes to have the Department

7   of Defense review *all* seized media *before* allowing Mr. Montgomery or his counsel to assert the

8   attorney-client privilege. Thus, the privilege would be essentially meaningless, given that the

9   Government will have already reviewed the Montgomerys' privileged communications. However,

10
11  the exact reverse is true. The Montgomerys must be permitted to segregate the privileged material

12  from the seized files *before* anyone other than the Montgomerys or their counsel has an opportunity

13  to review the materials.

14      Finally, the Government has absolutely no right to the trade secrets that are not only valuable

15  to the Government, but the sole and exclusive property of the Montgomerys. For example, the

16
17  Government has no right to seize the trade secret programs, the use of which were paid for by the

18  Government. If the Government is allowed to usurp and obtain the Montgomerys' trade secrets

19  through the guise of an overbroad and unconstitutional search warrant and thereby avoiding having

20  to pay the Montgomerys for the right to use the programs is nothing short of outrageous.

21      The Montgomerys must be afforded an opportunity to raise pertinent privilege challenges and

22
23  to have them resolved pursuant to established procedures. *In re Impounded Case (Law Firm)*, 879

24  F.2d 1211 (3rd Cir. 1989) citing *United States v. Zolin*, 491 U.S. 554, 105 L. Ed. 2d 469, 109 S. Ct.

25  2619 (1989). *See also, Klitzman, Klitzman and Gallagher v. Krut*, 744 F.2d 955 (3rd Cir. 1984).

26  Accordingly, the Court should order the Government to allow the Montgomerys and their counsel

27  access to the seized materials to determine which files are subject to a privilege, after which, this

28

1  Court can rule on the validity of those assertions of privilege.

2  **CONCLUSION**

3  For the foregoing reasons, Dennis Montgomery, Brenda Montgomery and the Montgomery

4  Family Trust respectfully request (1) that all search warrant materials be unsealed forthwith, (2) that

5

6  the Government be ordered to return all property seized, pursuant to Rule 41(g), and (3) that this

7  Court order that all files and electronic media be sealed until such time as all privileged material can

8  be segregated from the non-privileged material. Finally, in the alternative, the moving parties

9  request that the Government be given a limited time within which to image any hard drives or other

10

11  evidence and then promptly return all seized material.

12  Respectfully Submitted,

13  FLYNN & STILLMAN

14

15  Dated: April 3, 2006    By:_____

16  Philip H. Stillman, Esq.
   Attorneys for Defendants DENNIS MONTGOMERY and

17  MONTGOMERY FAMILY TRUST

18

19

20

21

22

23

24

25

26

27

28