
Ronald J. Logar, Esq., Nevada Bar No.: 0303
Eric A. Pulver, Esq., Nevada Bar No.: 7874
**Law Office of Logar & Pulver, PC**
225 S. Arlington Ave., Ste A
Reno, NV 89501
Phone: 775-786-5040
Fax: 775-786-7544

Michael J,. Flynn, Esq., Mass. State Bar No.: 172780
Philip H. Stillman, Esq., California State Bar No.: 152861
**Flynn & Stillman**
224 Birmingham Drive, Suite 1A4
Cardiff, CA 92007
Phone: 888-235-4279
Fax: 888-235-4279
*Admitted Pro Hac Vice in related Federal Case No. 3:06-cv-0056-BFS-VPC*

FILED

MAY 2006
U.S. MAGISTRATE JUDGE
DISTRICT OF NEVADA
BY _____ DEPU

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| In the Matter of the Search of: | CASE NO.: 3:06-MJ-0023-VPC |
| 12720 Buckhorn Lane, Reno, NV | DENNIS AND BRENDA MONTGOMERY'S AND THE MONTGOMERY FAMILY TRUST'S *EX PARTE* MOTION FOR DECISION OF THEIR MOTIONS FOR UNSEALING SEARCH WARRANT MATERIALS, RETURN OF PROPERTY PURSUANT TO RULE 41(G) AND FOR SEALING AND SEGREGATION OF PRIVILEGED MATERIALS ON THE PAPERS WITHOUT HEARING. |
| and | |
| 888 Mastro Drive, Reno, NV, Storage Unit Numbers 136, 140, 141, 142, and 143 | |

Dennis Montgomery, his wife, Brenda Montgomery and the Montgomery Family Trust (collectively, the "Montgomerys") hereby request that this Court decide the currently pending motions, which from the Montgomerys' view, has been fully briefed by the parties, on the papers filed and without an evidentiary hearing.

## INTRODUCTION

As this Court is well aware, numerous important and valuable items were seized by the Government on March 1 and March 3. In addition to documents, the Government seized Mr. Montgomery's laptop computer and other computer equipment in his house, as well as computer storage media both there and in a storage unit. These are the "tools of Mr. Montgomery's trade" and he needs them to begin working. Moreover, the computers seized contained both attorney-client and trade secret material to which the Government is not entitled *and* which is necessary for Mr. Montgomery's copyright infringement action pending in this Court.

As fully analyzed in the Montgomerys' briefs, although the Montgomerys believe that the search warrant was not supported by probable cause, in light of the fact that the search warrant is facially overbroad and fails to even mention what alleged criminal activity was being investigated, the wholesale seizure of documents and equipment, especially containing attorney-client privileged material, cannot stand. After the Montgomerys filed a motion to unseal the search warrant affidavit, for the return of their property and for the sealing and segregation of their attorney-client and trade secret information, the Government filed its "oppositions." As discussed in the Montgomerys" Reply Memorandum, the Government failed to substantively respond to any of the core issues and that there was no need for an evidentiary hearing since the Government had failed to create any factual issue. Accordingly, this Court permitted supplemental briefing on the issues that the Government failed to address.

-1-

Suddenly, according to the Government, a contention was made by, apparently, someone other than the U.S. Attorney's Office that there was allegedly "classified information" *in the memoranda already filed under seal with this Court.* However, according to the Government, the allegedly "classified" information is the mention of a Government agency being connected to this case. The fact that there was allegedly some type of classified information in the court files was apparently communicated to the Court *ex parte*, which precipitated first a continuance of the supplemental briefing schedule and then a minute order vacating the evidentiary hearing.

As set forth below, not only is the assertion that such information is "classified" frivolous, but this new-found assertion is simply a ruse to delay the proceedings and continue to provide the Government with time to rummage through the seized materials at their leisure. In fact, so little did the Government think of this alleged information that it did not even file a motion for a protective order. The result of this new tactic is procedural limbo for the Montgomerys, who are being deprived of due process. Accordingly, rather than let the Government simply continue to hold the improperly seized materials, the Montgomerys hereby request that this Court decide their Motion on the papers submitted.

### ARGUMENT

### I.

### THERE IS NO BONA FIDE CLASSIFIED MATERIAL IN THE COURT RECORD AND THE CLAIM IS SIMPLY A RUSE

The Government contends that the Montgomerys' papers filed in this sealed proceeding contain some sort of classified information, that it apparently did not realize from March 10, 2006 through April 26, 2006. First, not only is there no classified material among the seized material, but there is zero classified material contained in any of the Montgomerys' papers filed in this action and

-2-

they challenge the Government to identify it.[1]

Second, what constitutes "classified" material is not determined by the whim of the U.S. Attorney or even the Government. Instead, there are very clear and straightforward procedures in place under the National Industrial Security Operating Manual for the designation of classified information, including a procedure for challenging a designation by the contractor. The National Industrial Security Program Operating Manual, DoD 5220.22-M (February 26, 2006 revision), clearly defines "classified" information and how to identify what is classified.[2] Moreover, the material must be logged by type, classification, date and description by the Government, so that it can easily be tracked.

Pursuant to that manual, all classified material, in order to be "classified," must be clearly marked in very specific ways. The Manual governs the handling of classified information by Government contractors. See Manual, §1-100. Section 4-100 clearly defines the only types of classification, i.e., "confidential," "secret," and "top secret." Classification decisions can only be made by a Government official who has been delegated that authority in writing. Manual, §4-101. The classifier must state on the front of the document (1) the reason for the particular classification and (2) the duration of the classification. *Id.* This is particularly important because it not only governs the handling of the classified information itself, but also, guides the contractor in the event that there is a derivative use of the classified information. Manual, § 4-102.

The only way to determine whether a file is actually classified is to see if it contains the

---

[1] Moreover, this is obviously not the first time that classified information is supposedly part of a case, criminal or civil. In fact, in *In re Loral Corporation*, 558 F.2d 1130 (2nd Cir. 1977), the Second Circuit specifically discussed the propriety of a magistrate handling classified information in a civil case.

[2] A searchable, HTML-based copy of the current National Industrial Security Operating Manual can be found at http://www.dtic.mil/whs/directives/corres/rtf/p522022m2x.rtf.

-3-

markings that are described in the Manual, § 4-200 ("it is essential that all classified material and information be marked to clearly convey to the holder the level of classification assigned, the [portions that contain or reveal classified information, the period of time any protection is required, and any other notations required for the protection of the information.") Section 4-201 requires that the security markings set forth in §§ 4-202 through 4-208 are "required for all classified information regardless of the form in which it appears." Sections 4-202 through 208 set forth the manner in which all information must be marked. Section 4-203 sets forth the overall marking requirements for all types of information. The overall marking must be stamped on the top and bottom of the front, the title page and the first page of the file, etched or marked with stickers. If a container cannot be affixed with a sticker, a written notification of the marking must be furnished to the recipient. This marking requirement even applies to microfilm and email, for example. As verification of the existence of classified information created by a contractor, § 5-203 requires that the Government keep a report of all classified information generated by the contractor. Thus, as the Court can surmise from the above discussion, it is very simple when examining a document or electronic file whether it is classified or not. If it is not marked, it is not classified. If it was not listed by the Government as classified at the time (and not retroactively), it is not classified.

Moreover, what is classified is not a mystery, either. The lack of specificity in the search warrant is particularly egregious in this case given that the Government could easily have identified what it was searching for with exacting specificity, given that the Government by law maintains a list of the classified information given to a contractor, generated by the contractor and retained by the contractor. *See e.g.*, Manual, § 5-201, requiring a "continuous receipt system both within and outside the facility"; § 5-202, requiring the return of a receipt to the Government for any classified information provided to the contractor; § 5-203, requiring that a record of information produced by

the contractor be provided to the Government.

Thus, if classified information was truly what the Government was after, and the Montgomerys still do not know for sure, it could have specified the exact document, its marking, the date, time, classification, and media on which it was stored, but did not. That alone speaks volumes about the unconstitutionality of the search. As discussed in the Montgomerys' Memorandum – and completely ignored by the Government – in determining whether a search warrant lacks particularity, the Ninth Circuit examines "whether the government was able to describe the items more particularly in light of the information available to it at the time the warrant was issued. . . .", *United States v. Stubbs*, 873 F.2d 210, 211 (9th Cir. 1989). "Generic classifications in a warrant are acceptable ***only*** when a more precise description is not possible." *United States v. Kow*, 58 F.3d 423, 427 (9th Cir. 1995) (emphasis added). *See United States v. Carey*, 172 F.3d 1268 (11th Cir. 1999) (warrant authorizing seizure of computer without identifying criminal conduct invalid). Given the fact that the Government knowingly elected to use broad classifications of documents that essentially authorized the Government, among other things, to seize anything remotely connected to the use of a computer, coupled with the fact that there is no mention of any criminal activity in the search warrant whatsoever, the Court can only conclude that the search warrant is overbroad and unconstitutional. *U.S. v. Hunter*, 13 F. Supp. 2d 574 (D. Vt. 1998) (A search warrant, which called for the seizure of "all computers . . . computer storage devices . . and all computer software systems," was a catchall warrant, lacking sufficient limitation, so the warrant was overbroad and failed to comply with the 4th Amendment); *Arkansas Chronicle v. Easley*, 321 F.Supp. 2d 776 (E.D. VA 2004) (Search warrant for journalist's home, sought in order to obtain video and three still photos of terrorist bombing previously viewed on laptop, was overbroad and thus violated 4th Amendment particularity requirement).

-5-

Since a determination of whether the search warrant is overbroad and lacks specificity can be decided on the face of the search warrant, there is literally no chance that such a review of the warrant could implicate some alleged "classified" information.

## II.

## THE MONTGOMERYS ARE ENTITLED TO KNOW THE FULL EXTENT OF ANY EX PARTE COMMUNICATIONS WITH THE COURT

On April 19, 2006, this Court ordered supplemental briefing on four issues. On April 26, 2006, this Court indicated that as a result of an *ex parte* communication from the U.S. Attorney's office, a continuance of the briefing schedule was granted to April 28. On April 28, the Government already served the Montgomerys with its response to Question 4 posed by the Court, and indicated by telephone that a redacted version of the two West affidavits would be provided to the Montgomerys, when this Court issued a new minute order vacating the supplemental briefing and vacating the evidentiary hearing. Thus, the Montgomerys, who are obviously parties to a pending action in this Court, are completely in the dark as to what transpired in connection with this case, with no ability to respond to whatever the Government communicated to the Court and whatever precipitated the Court's action on April 28. See e.g., *Clark v. City of Hermosa Beach* (1996) 48 Cal.App.4th 1152, 1172 (right to fair hearing requires opportunity to present rebuttal, finding that *in camera* evidence violated right to fair hearing).

As stated in *United States v. Carmichael*, 232 F.3d 510 (6th Cir. 2000),

> As a general rule of thumb, in all but the most exceptional circumstances, ex parte communications with the court are an extraordinarily bad idea. This court has not concealed its strong disapproval of ex parte approaches in criminal cases, reasoning that giving the government private access to the ear of the court is not only "a gross breach of the appearance of justice," but also a "dangerous procedure."

*Id.* citing *United States v. Minsky*, 963 F.2d 870, 874 (6th Cir. 1992) (citation omitted); see also

-6-

*United States v. Farley*, 746 F.2d 412, 416 (8th Cir. 1984) (suggesting that ex parte communications should be strongly discouraged "regardless of the propriety of the court's motives," because allowing ex parte approaches undermines confidence in the court's impartiality).

Ex parte approaches "can only be justified and allowed by compelling state interests." *Carmichael*, 232 F.3d at 518. "Suffice it to say that the government bears the burden of demonstrating that the defendant was not prejudiced by an ex parte communication, and its burden is "a heavy one." *Id*. Since the Government presumably contended that there was some allegedly classified information in the court record that precipitated the Court's action, the Montgomerys and their counsel are already aware of the allegedly classified information since it was included in their brief. Accordingly, it is impossible for the Government to establish any compelling state interest to justify the ex parte communication and all Government contacts with the court should be disclosed.

Instead of an *ex parte* communication that could not be addressed by the Montgomerys, the Government could at least have followed the procedures set forth in the Classified Information Procedures Act, 18 U.S.C. Appendix III ("CIPA"). Although CIPA only applies to criminal cases "after filing an indictment or information," and there is no criminal case pending, CIPA is a procedural statute; it neither adds to nor detracts from the substantive rights of the defendant. *See, e.g., United States v. Anderson*, 872 F.2d 1508, 1514 (11th Cir.), *cert. denied*, 493 U.S. 1004 (1989); Department of Justice Criminal Resource Manual, §2054. Thus, the procedures set forth in CIPA could have been used by the Government for guidance in how to handle classified information, even in the absence of a criminal case.

### III.

### WITHOUT A DECISION ON THE MONTGOMERYS' MOTION, THEY SUFFER SERIOUS PREJUDICE

As discussed in their Reply Memorandum, the Government has improperly seized the tools of Mr. Montgomery's livelihood (the computers), which not only are used by him for his business, but contain the many personal files that all home computers contain – one of the reasons for specificity in a computer search warrant. In addition, the Government continues to have possession of Mr. Montgomery's trade secrets, his attorney-client communications, as well as old electronic media that is necessary for his copyright claims. Without a decision by this Court, the Montgomerys are literally left without a remedy, since the Government continues to maintain and have access to the Montgomerys' property and there is no court order in place regarding the handling and/or return of that property. In *Black v. United States*, 172 F.R.D. 511 (S.D.Fla. 1997), Government contended that the defendants did not suffer irreparable harm and had as a remedy a Rule 41(g) motion after trial. As the court stated:

> To simply say "let the Plaintiffs raise these issues under Rule 41(e), when the issue presents itself down the road a piece", would have no meaning if the Government were able to review the materials in the meantime. In plain words, when the cat's out of the bag, there is no further need for finite legal determinations of who is entitled to what.

*Id.* at 515. In this case, the Montgomerys have a constitutional, Fourth Amendment right to challenge the constitutionality of a search of their home by the Government. They have a right to enforce the Fourth Amendment requirement that the search warrant be specific, and supported by probable cause. With neither a decision on their pending motion – even if decided on the papers – or a pending criminal charge, the Montgomerys literally are deprived of procedural and substantive due process and are prejudiced by each day that the Government unconstitutionally retains their property.

///

///

-8-

IV.

**<u>AT THE VERY LEAST, THE COURT SHOULD ORDER THAT THE GOVERNMENT DISCLOSE ANY REVIEW OF THE SEIZED MATERIALS, AND ISSUE AN ORDER REGARDING THE HANDLING OF ATTORNEY-CLIENT AND TRADE SECRET MATERIALS</u>**

The Montgomerys are very concerned that the Government continues to have unfettered access to computer files and documents containing attorney-client communications and trade secrets. Moreover, there is no time limit imposed on how long the Government can keep their property. Therefore, the Montgomerys request that the Government be ordered to specifically disclose the date, time and people that have accessed the files, in order to determine whether the Government has already accessed privileged and confidential material. In addition, the Montgomerys request that this Court establish a protocol for handling this property in order to facilitate its return to the Montgomerys.

(A) <u>Handling Classified information.</u>

There is no "classified material" among any materials seized by the Government pursuant to its unconstitutional search. Since, as discussed above, all classified information must be marked, it is very simple when examining a document or electronic file whether it is classified or not. If it is not marked, it is not classified. If it was not listed by the Government as classified at the time (and not retroactively), it is not classified. As a practical matter, therefore, any hard copies of documents will either be marked or they will not. If not, they are not classified. Similarly, a simple search of all electronic files seized from the Montgomerys can be made for the "magic" words, "confidential," "secret," or "top secret." Any files that are found as containing the "magic words" can then be reviewed first for the date of creation of the file. If it was created prior to the first contact with the Government in approximately December 2003, it is clearly not classified in any way. If it was

-9-

created during the appropriate time, it must be reviewed for a determination of whether it was created by Mr. Montgomery for the purpose of obtaining legal advice. This would often be shown merely by the name of the file. Mr. Montgomery will no doubt be able to look at the title of the file and be able to state whether he thinks it is an attorney-client communication. If the file is listed in the search and is not listed as potentially privileged, no further inquiry need be made. For those documents that contain the search terms and are identified as potentially privileged by Mr. Montgomery, a special master having the appropriate security clearance (or this Court) can review the document in order to determine whether it is indeed privileged. This method will then segregate those files that are potentially classified and which are potentially privileged..

(B)  Handling of Potentially Privileged Material.

Once the potentially classified information is identified (if any), there is no reason for Mr. Montgomery and his counsel *not* to have supervised access to all <u>other</u> documents and files, whether in "hard copy" or electronic, in order to prepare a privilege log of those documents that must be segregated and sealed by this Court, and ordered returned to the Montgomerys. If there is a dispute over whether a particular unclassified file is properly privileged, this Court can rule on the assertion of privilege as it does countless times in litigation. In the alternative, the Montgomerys suggest a procedure similar to that adopted in *Black v. United States*, 172 F.R.D. 511 (S.D.Fla 1997).

In *Black*, the Court ordered that a printout be prepared that listed each of the files on the computers. The preparation of the list would be supervised by a representative of the Government and the defendants. The list would be reviewed by the Court to determine issues of privilege. The remainder of the files would be sealed and the Government enjoined from reviewing them pending further order of the Court. Unlike in *Black*, where it was conceded that some of the material contained on the computers and disks were properly in the hands of the Government, there is no

-10-

such concession here. There is no classified information whatsoever, and the Government has no entitlement to any of the seized materials. Thus, unlike in *Black*, the Montgomerys or their attorneys should have the opportunity to review the list of files to assert privileges. Moreover, in *Black*, the amount of material seized was voluminous. In this case, even the Government concedes that at most there is a "very small amount" of classified material at issue. Therefore, the Court's task is greatly simplified by having the parties attempt to agree in advance of the Court's review, as to what is and is not at issue.

(C) <u>Handling Of Trade Secret Information</u>.

The software programs developed by Mr. Montgomery are extremely valuable to the Government. The Government has even promised in writing not to attempt to obtain Mr. Montgomery's technology *by any means*. The Montgomerys are very concerned that the Government is merely using this bogus and unconstitutional search warrant in an effort to obtain the technology from Mr. Montgomery that it believed was stored on computer equipment at his house or in his storage areas in order not to pay Mr. Montgomery for it. The clearest evidence of this is the language of the search warrant itself, which does not even mention "classified information" but focuses instead on the mysterious "Source Code," potential investors who might have copies of Mr. Montgomery's technology, and the wholesale seizure of any computer equipment, storage media or hard drives that the FBI could come across.

The harm to the Montgomerys if this technology falls into the Government's hands is truly irreparable. The Government will have discovered Mr. Montgomery's trade secret mathematical algorithms used to provide the results that only he has so far been able to provide, eliminate any need for the Government to license the technology from the Montgomerys, and worse, the Montgomerys will never even be able to know about it because the Government will classify the

-11-

information at such a level that it will be impossible for the Montgomerys to even learn that the Government is using the technology, not to mention prove it. Since the Government has absolutely no claim to such information, which was created by Mr. Montgomery prior to any Government involvement and which has valuable commercial applications as well, the Montgomerys are absolutely entitled to prevent that information from falling into the hands of the Government. The Montgomerys should be specifically permitted to access the computer files and prevent the Government from accessing them. Thus, it is a simple matter for the parties, in conjunction with the Government, to review the totality of the files – especially those on the seized computers, and determine whether or not the particular item apparently falls within any recognized security classification, the attorney-client or work product privileges or is a trade secret. The parties would be bound by a protective order fashioned for the handling of the seized materials, in the event that the Court does not order the wholesale return of the material because of the facial invalidity of the search warrant.

## CONCLUSION

For the foregoing reasons, the Montgomerys respectfully request that this Court make the following orders: (1) fully disclose the nature and content of any *ex parte* communications with the Government, (2) decide the pending motion on the papers filed, and (3) in addition to the foregoing, enter an order regarding the handling of the seized materials pending further order of this Court.

Respectfully Submitted,

FLYNN & STILLMAN

Dated: May 3, 2006    By: _____
Philip H. Stillman, Esq.
Attorneys for DENNIS MONTGOMERY, BRENDA MONTGOMERY and MONTGOMERY FAMILY TRUST

-12-

## CERTIFICATE OF SERVICE

I, Philip H. Stillman, declare: I am an employee in the Town of Cardiff, County of San Diego, State of California, employed by the Law Office of Flynn & Stillman, located at 224 Birmingham Drive, Suite 1A4, Cardiff, CA 92007. I am over the age of 18 years and not a party to this action.

I am readily familiar with the Law Office of Flynn & Stillman's's practice for the collection of mail, delivery of its hand-deliveries, their process of facsimile's and the practice of mailing.

On 3rd day of May, 2006, I caused the foregoing document to be delivered to the following persons and/or entities:

Paul Pugliese, AUSA
United States Attorney's Office for the District of Nevada
100 W. Liberty Street
Reno, NV 89501

**BY FACSIMILE AND BY EMAIL.**

                                                                    /S/PHS
                                                                    Philip H. Stillman
                                                                    Flynn & Stillman