1

2  Ronald J. Logar, Esq., Nevada Bar No.: 0303
   Eric A. Pulver, Esq., Nevada Bar No.: 7874
3  **Law Office of Logar & Pulver, PC**
   225 S. Arlington Ave., Ste A
4  Reno, NV 89501
5  Phone: 775-786-5040
   Fax: 775-786-7544
6
   Michael J,. Flynn, Esq., Mass. State Bar No.: 172780
7  Philip H. Stillman, Esq., California State Bar No.: 152861
8  **Flynn & Stillman**
   224 Birmingham Drive, Suite 1A4
9  Cardiff, CA 92007
   Phone: 888-235-4279
10 Fax: 888-235-4279
11 *Admitted Pro Hac Vice in related Federal Case No.  3:06-cv-0056-BES-VPC*

**FILED**

MAY 1  2006

U.S. MAGISTRATE JUDGE
DISTRICT OF NEVADA
BY _____ DEPU

12              **UNITED STATES DISTRICT COURT**

13              **FOR THE DISTRICT OF NEVADA**

14                                    )   CASE NO.: 3:06-MJ-0023-VPC
15  In the Matter of the Search of:    )
    12720 Buckhorn Lane, Reno, NV      )   DENNIS AND BRENDA MONTGOMERY'S
16                                     )   AND THE MONTGOMERY FAMILY TRUST'S
    and                               )   RESPONSE TO GOVERNMENT'S MOTION FOR
17                                     )   A PROTECTIVE ORDER
                                       )
18   888 Mastro Drive, Reno, NV, Storage Unit  )
    Numbers 136, 140 , 141, 142, and 143   )
19  _____  )

20

21

22

23

24

25

26

27

28



Dennis Montgomery, his wife, Brenda Montgomery and the Montgomery Family Trust (collectively, the "Montgomerys") hereby respond to the Government's Motion for a Protective Order. For the reasons stated below, and particularly since there is no classified information at issue in this case, the Montgomerys stipulate to the entry of a reasonable protective order, but oppose the overly broad protective order proposed by the Government. Particularly in light of the FBI's attempts to intimidate counsel for the Montgomerys with threats of criminal prosecution for allegedly divulging "classified" information in this sealed proceeding, it is imperative that the Montgomerys carefully scrutinize the proposed protective order and proceed cautiously. Significantly, the Government has just recently raised these mysterious "classified" issues regarding the identity of a "certain governmental agency" after failing to do in three oppositions and after almost two months; but has now done so while attempting to justify a patently illegal search and seizure of Mr. Montgomery's home. The Government's conduct raises serious questions of deflection and avoidance in its response to Mr. Montgomery's pending motions.

**INTRODUCTION**

As this Court is well aware, numerous important and valuable items were seized by the Government on March 1 and March 3. In addition to documents, the Government seized Mr. Montgomery's laptop computer and other computer equipment in his house, as well as computer storage media both there and in a storage unit. These are the "tools of Mr. Montgomery's trade" and he needs them to begin working. Moreover, the computers seized contained both attorney-client and trade secret material to which the Government is not entitled *and* which is necessary for Mr. Montgomery's copyright infringement action pending in this Court. Although still in the dark as to the nature of the criminal activity being investigated, according to informal comments made by the U.S. Attorney's Office, the search was supposedly for "classified information."

After the Montgomerys filed a motion to unseal the search warrant affidavit, for the return of their property and for the sealing and segregation of their attorney-client and trade secret information, the Government filed its "oppositions."   As discussed in the Montgomerys" Reply Memorandum, the Government failed to substantively respond to any of the core issues and that there was no need for an evidentiary hearing since the Government had failed to create any factual issue. Weeks after the Montgomerys filed their Reply Memorandum, which included a declaration by one of the Montgomerys' counsel, Michael Flynn, and almost on the eve of the evidentiary hearing, the Government suddenly contended that there was allegedly "classified information" *in the memoranda already filed under seal with this Court.* According to statements by the Government and now included in its Motion for a Protective Order,  the allegedly "classified" information is the mention of a Government agency being connected to this case.[1]

As set forth in the Montgomery Declaration and the Flynn Declaration, not once during Mr. Montgomery's involvement with this "certain governmental agency" has anyone ever stated that the *identity* of this "government agency" was "classified" while Montgomery worked at eTreppid; and certainly not after he left and an individual with the initials "PW" contacted him. Although there are specific individuals from that agency who specifically and orally requested that their names be kept confidential, "PW" is not one of them, nor has eTreppid ever treated the *"identity"* of that agency as confidential. To the extent that the Government is contending that either Mr. Montgomery or counsel for Mr. Montgomery knew that information presented in any pleadings or declarations in this proceeding were classified, that contention is categorically false. Flynn Decl., ¶ 3. Moreover, the

---

[1]  Although the Montgomerys deny that the identity of this agency has ever been treated as classified in any way, out of respect for this Court and in deference to the Government's exaggerated concerns about the release of classified information, the Montgomerys will use the phrase "certain government agency" in this Response without conceding that there is any validity whatsoever to the Government's position.

proposition that a communication by "PW" after Montgomery left eTreppid about Trepp's efforts to get Montgomery arrested is absurd.

In fact, given the conduct of the parties, the only conclusion that can be drawn is that the identity of this "certain government agency" or the *fact* of its contractual relations with Dennis Montgomery is not and never has been classified. For example, PW, a technical consultant to the "certain government agency," regularly associated with foreign nationals while at Etreppid. It was widely known by all – even those foreign nationals at Etreppid, none of whom had security clearance of any type – what "certain government agency" this person worked with. Montgomery Decl., ¶ 3-5. Moreover, employees of this "certain government agency" attended the Etreppid Christmas party at the Atlantis casino in Reno in December 2003 and even had their pictures taken with employees.

Thus, this newly asserted claim that such information is now "classified" appears to be simply more "cloak and dagger" exaggeration to support an unconstitutional search of the Montgomerys' home and to provide the Government with time to rummage through the seized materials at their leisure. In addition, it appears that the Government may be trying to bolster its justification for the unconstitutional search by vastly expanding the definition of what is truly "classified" in order to then claim that the information has not been handled correctly.

Thus, although the Montgomerys do not oppose the concept of a protective order *with respect to that "certain government agency"*, the Montgomerys oppose the Government's attempts to broadly classify unclassified information in a protective order and it is imperative to closely review the Government's contentions on that issue. Thus, rather than propose a competing protective order that is more limited than the one proposed by the Government, the Montgomerys believe that the question of whether a protective order is necessary and if so, on what terms, should be discussed

with counsel for the Montgomerys and the Government in a conference with the Court.

## ARGUMENT

## I.

## THERE IS NO BONA FIDE CLASSIFIED MATERIAL IN THE COURT RECORD AND THE CLAIM IS

## SIMPLY A RUSE

The underlying basis for the Government's Motion is its mysterious contention that the Montgomerys' papers filed in this sealed proceeding contain some sort of classified information, that it apparently did not realize from March 11, 2006 through April 26, 2006. Indeed, Mr. Flynn filed a declaration on or about March 11, 2006 explicitly quoting Mr. Pugliese and Mr. West in which they stated that there was only "an extremely small amount" of "classified" material involved comprising approximately 10 mini-DV tapes. Flynn Dec., ¶ 4. Those statements have never been refuted; and were reiterated by Mr. Pugliese on Friday, April, 28, 2006.  During Mr. Flynn's communications with Agent West and Mr. Pugliese the "certain government agency" was identified numerous times without question.

First, not only is there no classified material among the seized material, but there is no classified material contained in any of the Montgomerys' papers filed in this action and they challenge the Government to identify it.

Second, there are very clear and straightforward procedures in place under the National Industrial Security Operating Manual for the designation of classified information, including a procedure for challenging a designation by the contractor. The National Industrial Security Program Operating Manual, DoD 5220.22-M (February 26, 2006 revision), clearly defines "classified"

-4-

information and how to identify what is classified.[2] *See also*, Executive Order 13292, § 1.6.

Moreover, the material must be logged by type, classification, date and description by the

Government, so that it can easily be tracked. *Id.*

Pursuant to that manual (and the Executive Order), all classified material, in order to be

"classified," must be clearly marked in very specific ways. The Manual governs the handling of

classified information by Government contractors. *See* Manual, §1-100. Section 4-100 clearly

defines the only types of classification, *i.e.*, "confidential," "secret," and "top secret." *See also*,

Executive Order 13292, § 1.6. Classification decisions can only be made by a Government official

who has been delegated that authority in writing. Manual, §4-101. The classifier must state on the

front of the document (1) the reason for the particular classification and (2) the duration of the

classification. *Id.* This is particularly important because it not only governs the handling of the

classified information itself, but also, guides the contractor in the event that there is a derivative use

of the classified information. Manual, § 4-102.

The only way to determine whether a file is actually classified is to see if it contains the

markings that are described in the Manual, § 4-200 ("it is essential that all classified material and

information be marked to clearly convey to the holder the level of classification assigned, the

[portions that contain or reveal classified information, the period of time any protection is required,

and any other notations required for the protection of the information.") Section 4-201 requires that

the security markings set forth in §§ 4-202 through 4-208 are "required for all classified information

regardless of the form in which it appears." Sections 4-202 through 208 set forth the manner in

which all information must be marked. Section 4-203 sets forth the overall marking requirements for

---

[2] Rather than attach a copy of the Operating Manual, a searchable, HTML-based copy of the current National Industrial Security Operating Manual can be found at http://www.dtic.mil/whs/directives/corres/rtf/p522022m2x.rtf.

all types of information. The overall marking must be stamped on the top and bottom of the front, the title page and the first page of the file, etched or marked with stickers.  If a container cannot be affixed with a sticker, a written notification of the marking must be furnished to the recipient. This marking requirement even applies to microfilm and email, for example.  As verification of the existence of classified information created by a contractor, § 5-203 requires that the Government keep a report of all classified information generated by the contractor.  Thus, as the Court can surmise from the above discussion, it is very simple when examining a document or electronic file whether it is classified or not.  If it is not marked, it is not classified.  If it was not listed by the Government as classified at the time (and not retroactively), it is not classified.

Moreover, what is classified is not a mystery, either.  The Government by law maintains a list of the classified information given to a contractor, generated by the contractor and retained by the contractor.  *See e.g.*, Manual, § 5-201, requiring a "continuous receipt system both within and outside the facility"; § 5-202, requiring the return of a receipt to the Government for any classified information provided to the contractor; § 5-203, requiring that a record of information produced by the contractor be provided to the Government.  Thus, to the extent that the Government contends that classified information *has already been disclosed* by either the Montgomerys or their counsel and therefore necessitates a protective order, that contention is unfounded and the Montgomerys oppose a protective order on those grounds.

## II.

## ANY GOVERNMENT CONTENTIONS REGARDING CLASSIFIED MATERIAL MUST BE AIRED IN A PROCEEDING AT WHICH THE MONTGOMERY CAN ATTEND

To the extent that the Government's reference to a "closed proceeding" at p. 3, lines 15-18, wherein it proposes to establish some contractual term that classifies the identity of the "certain

government agency," refers to a closed proceeding from which counsel for Mr. Montgomery and Mr.

Montgomery are excluded, the Montgomerys oppose that request.  As Justice Frankfurter observed:

"Secrecy is not congenial to truthseeking . . . . No better instrument has been devised for arriving at

truth than to give a person in jeopardy of serious loss notice of the case against him and opportunity

to meet it." *Joint Anti-Fascist Refugee Committee v. McGrath*, 341 U.S. 123, 171-72, 71 S. Ct. 624,

649, 95 L. Ed. 817 (1951) (Frankfurter, J., concurring).  *See also United States v. James Daniel Good*

*Real Property*, 114 S. Ct. 492, 501-02, 126 L. Ed. 2d 490 (1993) (holding that ex parte preseizure

proceeding creates an unacceptable risk of error). This principle is so central to due process that the

Supreme Court has declared it "relatively immutable":

> Certain principles have remained relatively immutable in our jurisprudence. One of
> these is that where governmental action seriously injures an individual, and the
> reasonableness of the action depends on fact findings, the evidence used to prove the
> Government's case must be disclosed to the individual so that he has an opportunity to
> show that it is untrue.

*Greene v. McElroy*, 360 U.S. 474, 496-97, 79 S. Ct. 1400, 1413, 3 L. Ed. 2d 1377 (1959).

Thus, the presentation of *in camera* evidence often violates a party's right to a fair hearing.

*See e.g., Clark v. City of Hermosa Beach* (1996) 48 Cal.App.4th 1152, 1172.  As stated in *United*

*States v. Carmichael*, 232 F.3d 510 (6th Cir. 2000),

> As a general rule of thumb, in all but the most exceptional circumstances, ex parte
> communications with the court are an extraordinarily bad idea. This court has not
> concealed its strong disapproval of ex parte approaches in criminal cases, reasoning
> that giving the government private access to the ear of the court is not only "a gross
> breach of the appearance of justice," but also a "dangerous procedure."

*Id.* citing *United States v. Minsky*, 963 F.2d 870, 874 (6th Cir. 1992) (citation omitted); *see also*

*United States v. Farley*, 746 F.2d 412, 416 (8th Cir. 1984) (suggesting that *ex parte* communications

should be strongly discouraged "regardless of the propriety of the court's motives," because allowing

*ex parte* approaches undermines confidence in the court's impartiality).  *Ex parte* approaches "can

only be justified and allowed by compelling state interests." *Carmichael*, 232 F.3d at 518. "Suffice it to say that the government bears the burden of demonstrating that the defendant was not prejudiced by an ex parte communication, and its burden is "a heavy one." *Id.*

Since the Government is now contending as justification for the protective order that there has already been disclosure of allegedly classified information in the court record, the Montgomerys and their counsel are already aware of the allegedly classified information since it was included in their brief. Accordingly, it is impossible for the Government to establish any compelling state interest to justify any *ex parte* communication.

## III.

## THE MONTGOMERYS DO NOT OPPOSE A REASONABLE AND NARROWLY TAILORED PROTECTIVE ORDER

Although the Montgomerys believe that there is no classified information at issue in the current proceeding and believe that any issue regarding the use of classified information should more properly be handled if and when a criminal case has been filed against Mr. Montgomery pursuant to the procedures set forth in the Classified Information Procedures Act, 18 U.S.C. Appendix III, the Montgomerys do not oppose *in theory* the entry of a narrowly crafted protective order that addresses the Government's alleged concern that Mr. Montgomery or his counsel will disclose the allegedly classified identity of "a certain government agency" to the public. However, whether such an order should issue in this case *at this time* and on what conditions should be discussed between counsel for the Montgomerys, the Government and the Court in a conference. In particular, the definition of what is classified must truly comport with the National Industrial Security Program Operating Manual, and not just the whim of the US Attorney's office in Reno, Nevada – especially given the Government's position on what this "case" is about.

**CONCLUSION**

For the foregoing reasons, the Montgomerys respectfully request that this Court deny the

Government's Motion as to its proposed protective order, and enter the protective order submitted

by the Montgomerys.

Respectfully Submitted,

FLYNN & STILLMAN

By:_____

Dated: May 10, 2006

      Philip H. Stillman, Esq.
      Attorneys for DENNIS MONTGOMERY, BRENDA
      MONTGOMERY and MONTGOMERY FAMILY TRUST

## CERTIFICATE OF SERVICE

I, Philip H. Stillman, declare: I am an employee in the Town of Cardiff, County of San Diego, State

of California, employed by the Law Office of Flynn & Stillman, located at 224 Birmingham Drive, Suite

1A4, Cardiff, CA 92007. I am over the age of 18 years and not a party to this action.

I am readily familiar with the Law Office of Flynn & Stillman's's practice for the collection of mail,

delivery of its hand-deliveries, their process of facsimile's and the practice of mailing.

On 3rd day of May, 2006, I caused the foregoing document to be delivered to the following persons

and/or entities:

Paul Pugliese, AUSA
United States Attorney's Office for the District of Nevada
100 W. Liberty Street
Reno, NV 89501

**BY FACSIMILE AND BY EMAIL.**

_____/S/PHS_____
Philip H. Stillman
Flynn & Stillman

1  Ronald J. Logar, Esq., Nevada Bar No.: 0303
2  Eric A. Pulver, Esq., Nevada Bar No.: 7874
   **Law Office of Logar & Pulver, PC**
3  225 S. Arlington Ave., Ste A
   Reno, NV 89501
4  Phone: 775-786-5040
   Fax: 775-786-7544
5
6  Michael J. Flynn, Esq., Mass. State Bar No.: 172780
   Philip H. Stillman, Esq., California State Bar No.: 152861
7  **Flynn & Stillman**
   224 Birmingham Drive, Suite 1A4
8  Cardiff, CA 92007
   Phone: 888-235-4279
9  Fax: 888-235-4279
10 *Admitted Pro Hac Vice in related Federal Case No. 3:06-cv-0056-BES-VPC*

11                    **UNITED STATES DISTRICT COURT**

12                      **FOR THE DISTRICT OF NEVADA**

13

14 In the Matter of the Search of:              )   CASE NO.: 3:06-MJ-0023-VPC
                                                )
15 12720 BUCKTHORN LANE, RENO, NV               )
                                                )   DECLARATION OF DENNIS MONTGOMERY
16 and                                          )   IN SUPPORT OF RESPONSE TO THE
                                                )   GOVERNMENT'S MOTION FOR A
17  888 MASTRO DRIVE, RENO, NV, STORAGE )         PROTECTIVE ORDER
18 UNIT NUMBERS 136, 140 , 141, 142, AND 143 )
   _____ )
19

20

21

22

23

24

25

26

27

28

### DECLARATION OF DENNIS MONTGOMERY

I, Dennis Montgomery, declare:

1.    I am over the age of 18 and a party to two civil actions involving Warren Trepp. I was a target of two search warrants executed on my home and storage units and have personal knowledge of the facts stated herein. If called as a witness, I could and would testify competently to them.

2.    I am aware that the Government is contending that certain classified information was contained in papers filed in this action by my attorneys. In particular, the Government appears to contend that the very identity of the "certain government agency" for whom I performed work is "classified". That contention is false.

3.    First, I was never notified that the identity of any "contracting parties" was "classified." Although Warren Trepp may have signed documents relating to contracting parties, I was never instructed by him or anyone else that the identity of a particular government agency was "classified". In fact, in light of my experiences at eTreppid, that proposition is simply false. For example, "PW," a technical consultant to the certain government agency, regularly fraternized with foreign nationals employed at eTreppid, and who had no security clearance. It was common knowledge among all employees that he worked with the "certain government agency." Any attempt to now make that information "confidential" is absurd. When PW contacted me after I had left eTreppid and conveyed information to me about an email he received from Trepp there was absolutely no "classified" aspect of that communication.

4.    The specific "identity" of specific governmental agents from a specific governmental agency was considered "confidential" as relayed to me by those specific individuals. PW is not one of them. As to the others, I have maintained as "confidential" their identity. The letter from a specific individual from a specific governmental agency relating to my technology is not "classified".

-1-

5.    In addition, e.    oyees of that "certain government agei __ came to the eTreppid Christmas party in December 2003 at the Atlantis Casino Resort in Reno, Nevada and were photographed with eTreppid's employees. Thus, to the extent that a hallmark of "classified" is being treated as such by the contracting parties, it is obvious that the identity of that "certain Government agency" is *not* classified.

///

///

///

///

I declare under penalty of perjury under the laws of the United States and the State of Nevada that the foregoing is true and correct.  Signed this 9th day of May, 2006 at Reno, Nevada.

_____
Dennis Montgomery

Ronald J. Logar, Esq., Nevada Bar No.: 0303
Eric A. Pulver, Esq., Nevada Bar No.: 7874
**Law Office of Logar & Pulver, PC**
225 S. Arlington Ave., Ste A
Reno, NV 89501
Phone: 775-786-5040
Fax: 775-786-7544

Michael J. Flynn, Esq., Mass. State Bar No.: 172780
Philip H. Stillman, Esq., California State Bar No.: 152861
**Flynn & Stillman**
224 Birmingham Drive, Suite 1A4
Cardiff, CA 92007
Phone: 888-235-4279
Fax: 888-235-4279
*Admitted Pro Hac Vice in related Federal Case No. 3:06-cv-0056-BES-VPC*

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| In the Matter of the Search of: | CASE NO.: 3:06-MJ-0023-VPC |
| 12720 BUCKTHORN LANE, RENO, NV | |
| | DECLARATION OF MICHAEL FLYNN IN |
| and | RESPONSE TO GOVERNMENT'S MOTION |
| | FOR PROTECTIVE ORDER |
| 888 MASTRO DRIVE, RENO, NV, STORAGE | |
| UNIT NUMBERS 136, 140, 141, 142, AND 143 | |

# DECLARATION OF MICHAEL J. FLYNN

I, Michael J. Flynn, declare:

1.      I am an attorney licensed to practice in the state of Massachusetts. I am counsel for Dennis Montgomery in the state and federal civil matters involving Warren Trepp, appearing *pro hac vice* in related Federal Case No. 3:06-cv-0056-BES-VPC. I have personal knowledge of the facts stated herein, and if called as a witness, I could and would testify competently to them.

2.      I have reviewed the Government's Motion for a Protective Order referring to the disclosure of allegedly classified information. To the extent that the Government contends that I had knowledge that anything stated in any of the Montgomerys' papers, declarations or letters filed in this action was "classified", and knowing that such information was classified, disclosed it, is categorically false.

3.      I have not disclosed any "classified" information (to the extent that I am in possession of any, which I deny), and do not believe that there is any bona fide "classified" information contained anywhere in the Montgomerys' papers filed in this action. Had I had any knowledge that any information was "classified", I would never place it in the record without prior notification to the Court and the Government on how to handle such information, as I have repeatedly done in the past.

4.      As this case has developed, I have learned that different individuals with different agendas have sought to "seal" information or treat it as "classified" depending on their motives and how it is expected to serve their agendas. When I first became involved in these matters on behalf of Mr. Montgomery in late January, 2006, I noted that eTreppid attempted to "seal" everything it could in its case and I treated all aspects of its case as "confidential" until I learned otherwise. Now, having obtained a firmer grasp of the facts and the designation and treatment of "classified" information as required by the federal regulations, I understand that the actual "classified" information at issue in any

-1-

of these proceedings is extremely limited. In fact, in my conversations with AUSA Paul Pugliese and FBI agent Michael West, as I stated in my prior declaration dated March 11, 2006, they stated and I agree, that there is only an "extremely small amount of classified information" comprising approximately 10 mini dv's and/or tapes that were ever brought to eTreppid and treated as "classified". I note that neither Mr. Pugliese and Mr. West have ever refuted that statement.

5.     I note that the Government was in possession of my prior declaration dated March 11, 2006 from its filing on or about that date until Friday, April 28, 2006 and never raised this issue of the "identity" of a certain governmental agency either in their three responsive pleadings or in a motion for a protective order.

6.     On or about Tuesday, May 8, 2006 at approximately 4:30 pm, I received a phone call from my partner, Philip Stillman, who stated that he had been called by an FBI agent named Eddy Diefer (ph.?). The FBI agent had read him a statement that AUSA Paul Pugliese had instructed the agent to read, essentially threatening Mr. Stillman with criminal prosecution for placing purportedly "classified information" in court papers and threatening him with criminal prosecution if he did so in the future. I then called Agent Diefer (ph.?) and he read what sounded like the same statement to me. I then told the agent that I considered the statement to be a threat and attempt to intimidate us as counsel for Mr. Montgomery in order to to undermine and destroy our client's rights during the pendency of judicial proceedings; and that I considered it to be an ethical violation and if it continued I would report it to the appropriate authorities. I note that Mr. Pugliese instructed the agent to essentially threaten us while we are in the process of preparing a response to Mr. Pugliese's motion for a protective order wherein he claims we have disclosed "classified" information in our original motion to return the illegally seized property of Mr. Montgomery.

I declare under penalty of perjury under the laws of the United States and the State of Nevada

-2-

1  that the foregoing is true and correct.  Signed this 9th day of May, 2006 at Rancho Santa Fe, California.

2

3                                                                    Michael J. Flynn

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# FLYNN & STILLMAN

224 BIRMINGHAM DRIVE, SUITE 1A4
CARDIFF, CALIFORNIA 92007

TELEPHONE 858-759-7000
FACSIMILE 858 759 0711

MICHAEL J. FLYNN
ADMITTED ONLY IN MASSACHUSETTS

SPECIALIZING IN
COMPLEX LITIGATION

ONE CENTER PLAZA, SUITE 240
BOSTON, MASSACHUSETTS 02108
TELEPHONE (617) 720 2700
FACSIMILE (617) 720 2709

May 10, 2006

*VIA US MAIL*

Daniel G. Bogden, United States Attorney
Paul Pugliese,
Greg Addington,
Assistant United States Attorneys
100 West Liberty, Suite 600
Reno, Nevada, 89501

### Re: Dennis Montgomery

Dear Messrs. Bogden, Pugliese and Addington:

I represent the above named Dennis Montgomery in connection with various matters currently pending before the United States District Court in Reno, Nevada involving the FBI raid on Mr. Montgomery's home and storage facility. Based on various threats made by Mr. Montgomery's co-owner, Warren Trepp, of eTreppid Technologies, we understand that the FBI raid was spawned by Mr. Trepp's initiation of a criminal complaint against Mr. Montgomery. In fact, Mr. Trepp had repeatedly stated that he would use his threatened "Republican connections" to James Gibbons and Daniel Bogden to "get Mr. Montgomery arrested." Mr. Trepp. of course, is infamous as the head trader at Drexel Burnham Lambert where he and his partner, Michael Milken, engaged in the largest crime wave of fraud in the history of the U.S. Apparently, Mr. Trepp's threats and "connections" have now come at least to partial fruition with the illegal search and seizure of Mr. Montgomery's home.

We have filed various motions to redress the illegal search and seizure, declare the search unconstitutional, and restore Mr. Montgomery's property to him. These motions are now pending before the Court. Prior to filing said motions, we verbally and in writing communicated to Mr. Pugliese and the FBI our offer to cooperate with the US Government in the protection of any purported "classified information," which was the stated purpose of the search, although nowhere in the warrant is said purpose expressed. Both Mr. Pugliese and the FBI stated that there was "only an extremely small amount of classified information" involved, comprising a few tapes and cd's, *but rejected our offer of cooperation.*

Between the raid on March 1, 2006 and April 28, 2006, no government official, including the

Daniel Bogden, Esq. et al.
*In re Dennis Montgomery*
May 10, 2006
Page 2 of 3

FBI and/or Mr. Pugliese ever discussed the fact that reference to a "certain governmental agency", although openly discussed in our conversations during that period, was allegedly "classified".

On Friday, April 28, under the mandate of a Court Order and a looming evidentiary hearing scheduled for May 3, requiring Mr. Pugliese to provide the Court detailed proof justifying probable cause to conduct the raid, justify the facial invalidity of the warrant, and justify the non-disclosure of the affidavits in support of the warrant, all of which had to be filed in Court on April 28, Mr. Pugliese, presumably at the behest of his superiors, raised for the first time alleged disclosure by us, as Mr. Montgomery's counsel, of "classified information" in our moving papers allegedly involving reference to a "certain governmental agency." Notwithstanding our verbal stipulation with Mr. Pugliese on April 28 to avoid any references to that "certain governmental agency", in order to have the motions decided either with or without an evidentiary hearing, Mr. Pugliese apparently had several ex parte communications with the Court involving these matters resulting in an Order wherein the Court refused to accept any further ex parte communications and vacated the May 3 hearing and briefing schedule. These ex parte communications raise fundamental concerns regarding due process. But the Reno US Attorney's office has now stepped up its efforts to avoid resolution of our motions to redress the illegal search with threats of intimidation against Mr. Montgomery's counsel designed to deflect the Court's attention from deciding the underlying motions.

Yesterday, Mr. Pugliese instructed an FBI agent to call us and threaten us with criminal prosecution with a prepared written statement. We do not take such threats lightly, and we can only presume that Mr. Trepp's "connections' and threats have reached the levels that he intended. Such threats will NOT prevent us from representing our client in the most vigorous manner allowable under the law. We deem the threats to be a violation of the criminal law and of the canons of ethics governing attorneys.

This entire sordid episode of local governmental mischief results from the government's illegal raid on Mr. Montgomery's home spawned by Mr. Trepp. There is a simple and obvious solution to resolve this matter as I stated in my correspondence to Mr. Rumsfeld and Mr. Gonzalez et al on March 1, 2006. In that correspondence, we offered Mr. Montgomery's full cooperation with the appropriate governmental agencies to get his software technology up and running in the war on terror in order to avert national disasters and save the lives of US citizens. We explicitly stated in our March 1 offer that the local political mischief then on-going in Reno initiated by Mr. Trepp's local influence should be addressed at the highest levels of government on behalf of which Mr. Montgomery utilized his software. Mr. Montgomery's sole concern is to save American lives and to get his software operative.

We understand that approval of our March 1 offer is currently being decided upon by the highest officials of the US Government, notwithstanding the local political push to harass Mr. Montgomery with these latest threats. We strongly urge all of you to place patriotism and common sense in front of local power and hegemony, and to meet with us and Mr. Montgomery, resolve the illegal search issues now pending before the Court, protect national security, save American lives, and get Mr. Montgomery's software operative immediately.

Daniel Bogden, Esq. et al.
*In re Dennis Montgomery*
May 10, 2006
Page 3 of 3

Your superiors are well aware of the efficacy of said technology. We respectfully request that you make the utilization of said technology your highest priority.

Very Truly Yours,

Michael J. Flynn

cc: Carlotta P. Wells
Senior Trial Counsel
Federal Programs Branch
Civil Division - Room 7150
U.S. Department of Justice
20 Massachusetts Ave., NW
PO Box 883
Washington, D.C. 20044

Donald Rumsfeld, Secretary of Defense, via hand delivery.

Ronald J. Logar, Esq., Nevada Bar No.: 0303
Eric A. Pulver, Esq., Nevada Bar No.: 7874
**Law Office of Logar & Pulver, PC**
225 S. Arlington Ave., Ste A
Reno, NV 89501
Phone: 775-786-5040
Fax: 775-786-7544

Michael J. Flynn, Esq., Mass. State Bar No.: 172780
Philip H. Stillman, Esq., California State Bar No.: 152861
**Flynn & Stillman**
224 Birmingham Drive, Suite 1A4
Cardiff, CA 92007
Phone: 888-235-4279
Fax: 888-235-4279
*Admitted Pro Hac Vice in related Federal Case No. 3:06-cv-0056-BES-VPC*

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| In the Matter of the Search of:<br>12720 BUCKTHORN LANE, RENO, NV<br><br>and<br><br>888 MASTRO DRIVE, RENO, NV, STORAGE<br>UNIT NUMBERS 136, 140 , 141, 142, AND 143 | CASE NO.: 3:06-MJ-0023-VPC<br><br>DECLARATION OF PHILIP H. STILLMAN IN<br>SUPPORT OF RESPONSE TO GOVERNMENT'S<br>MOTION FOR PROTECTIVE ORDER |

## DECLARATION OF PHILIP H. STILLMAN

I, Philip H. Stillman, declare:

1.    I am an attorney licensed to practice in the state of Massachusetts and California. I am counsel for Dennis Montgomery, Brenda Montgomery and the Montgomery Family Trust in the state and federal civil matters involving Warren Trepp, and I have been admitted *pro hac vice* in related Federal Case No. 3:06-cv-0056-BES-VPC and in Case No. 3:06-cv-0143-BES-VPC. I have personal knowledge of the facts stated herein, and if called as a witness, I could and would testify competently to them.

2.    At 4:30 p.m. on May 9, 2006, I spoke with an Special Agent Eddie Deefer of the Reno office of the Federal Bureau of Investigation. The agent informed me that he was instructed by AUSA Paul Pugliese to read a statement to me. I told him to "read away." Agent Deefer read a statement that stated in essence that Mr. Pugliese had confirmed with the relevant government agencies that I had improperly disclosed supposedly classified information in our papers filed in this action. The statement further stated that I could be criminally prosecuted for any further disclosure.

3.    I personally took this formal statement, read to me over the telephone by an FBI agent, as an attempt to intimidate and harass me in the course of my representation of my client.

I declare under the penalties of perjury of the laws of the State of Nevada and the United States that the foregoing is true and correct on May 9, 2006 at Cardiff, California.

By:_____
       Philip H. Stillman, Esq.

-1-