Ronald J. Logar, Esq., Nevada Bar No.: 0303
Eric A. Pulver, Esq., Nevada Bar No.: 7874
**Law Office of Logar & Pulver, PC**
225 S. Arlington Ave., Ste A
Reno, NV 89501
Phone: 775-786-5040
Fax: 775-786-7544

Michael J. Flynn, Esq., Mass. State Bar No.: 172780
Philip H. Stillman, Esq., California State Bar No.: 152861
**Flynn & Stillman**
224 Birmingham Drive, Suite 1A4
Cardiff, CA 92007
Phone: 888-235-4279
Fax: 888-235-4279
*Admitted Pro Hac Vice in related Federal Case No. 3:06-cv-0056-BES-VPC*

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| In the Matter of the Search of: 12720 BUCKTHORN LANE, RENO, NV<br><br>and<br><br>888 MASTRO DRIVE, RENO, NV, STORAGE UNIT NUMBERS 136, 140 , 141, 142, AND 143 | CASE NO.: 3:06-CV-00263-BES (VPC)<br><br>SUPPLEMENTAL MEMORANDUM OF THE MONTGOMERYS IN SUPPORT OF MOTIONS TO UNSEAL SEARCH WARRANT AFFIDAVITS, RETURN OF PROPERTY AND TO SEAL ATTORNEY-CLIENT COMMUNICATIONS |

I 45

Pursuant to this Court's April 19, 2006 Minute Order, Dennis Montgomery, Brenda Montgomery and the Montgomery Family Trust hereby submit the following Supplemental Memorandum in support of their pending motions. Although the Minute Order set out four questions for supplemental briefing, all issues can be resolved without the need for an evidentiary hearing if the Court agrees with the Montgomerys that the search warrant is overbroad and lacks particularity. In light of the specific requirements of Executive Order 13292 and as that Order is more specifically implemented by the National Industrial Security Operating Manual governing the logging and tracking of classified material, it is clear that the Government could have been painfully specific in formulating the search warrant if it was truly concerned about the Montgomerys' possession of classified information. For that reason alone, the Government should be held to a higher level of specificity, since that specificity was readily available to the Government.

Notwithstanding that fact, because the first three questions were apparently directed at the Government, and given that those three issues were extensively briefed by the Montgomerys and not responded to by the Government at all, rather than simply repeat that extensive briefing, the Montgomerys will simply direct the Court to the pages in their Memorandum and Reply where each of those issues is fully and exhaustively researched and analyzed. As to Question No. 4, regarding the proper way to resolve the attorney-client privilege issues, there is no classified information among any materials seized by the Government in the two searches. Therefore, there is no need for overly complicated and unwarranted concerns regarding the handling of the seized materials.

However, even assuming that there is classified information somewhere among the seized materials – which there is not – it is a simple matter to identify such material. Executive Order 13292 and as implemented by the National Industrial Security Program Operating Manual, DoD

5220.22-M, clearly define "classified" information and how to identify what is classified.[1] Moreover, the material must be logged by type, classification, date and description by the Government, so that it can easily be tracked.

Pursuant to that manual, all classified material, in order to be "classified," must be clearly marked in very specific ways. Therefore, if there is no marked material among the material seized, there is no classified material. It is a simple matter for Mr. Montgomery and his attorneys to identify those files that they believe are attorney-client privileged or trade secrets, and, to the extent that the Government contends that some allegedly privileged document is "classified," have this Court determine whether it is marked "classified" or not, or whether the assertion of privilege is valid, just as in the countless other times that this Court no doubt decides attorney-client privilege issues.

1. **Whether the Search Warrant Affidavit Must Remain Sealed In Its Entirety To Further Compelling Government Interests That Cannot Be Served By Less Intrusive Means.**

This issue has been fully briefed by the Montgomerys in their Memorandum, pages 13-16, and then in their Reply Memorandum at pages 7-14. As set forth in both the Memorandum and in their Reply, the Montgomerys do not seek wholesale publication of the search warrant affidavits – such as to the news media – but merely to Mr. Montgomery and his counsel for use in this proceeding. Since wholesale sealing of a search warrant affidavit is routinely rejected in favor of the least intrusive means available, such as redaction, the Government has a particularly difficult evidentiary burden, especially in light of the fact that there is not even a convened grand jury.

On Friday, May 26, 2006, the Government turned over redacted versions of the two search warrant affidavits to the Montgomerys. Upon review of the affidavits, it became clear that the Government had merely made wholesale redactions of every reference to any witness that had

---

[1] A searchable, HTML-based copy of the current National Industrial Security Operating Manual can be found at http://www.dtic.mil/whs/directives/corres/rtf/p522022m2x.rtf.

conveyed information to the Government, not just those witnesses whose identity was allegedly "classified" in some way or an otherwise undercover informant of some sort. In fact, in a particularly shoddy example of improper redactions, the Government apparently lifted large segments of the Buckthorn Search Warrant affidavit *from declarations of Warren Trepp and Sloan Venables already filed in eTreppid Technologies v. Montgomery*, U.S. Dist. Court for Dist. Of Nevada Case No. 3:06-cv-00145-BES (VPC). *See e.g.*, Buckthorn Search Warrant Affidavit, pp. 8-9. From those clearly improper redactions, virtually all of which could be pieced together by Mr. Montgomery from the declarations filed in that case, the remaining "block" redactions must be carefully scrutinized to determine the propriety of the redactions. *See e.g.*, Buckthorn Search Affidavit, pp. 10-12.[2]

Exceptions to providing an unredacted search warrant affidavit based on the Government's needs for secrecy are extremely limited and strictly construed against the Government. *Matter of Sealed Affidavit(s) to Search Warrants*, 600 F.2d 1256, 1257 (9th Cir. 1979) (*per curiam*). However, the grant of such secrecy is reserved for ***extraordinary* and *compelling*** circumstances. *In re Search of 8420 Ocean Gateway Easton*, 353 F. Supp. 2d 577 (D.Md. 2004). For example, one court has held that "the government [must] demonstrate a real possibility of harm before the court takes the unusual step of sealing a search warrant not based directly on grand jury testimony. The mere possibility of harm ... is not sufficient to outweigh the established policy embodied in Rule 41([i])." *In re Search Warrant for Second Floor Bedroom*, 489 F. Supp. 207, 212 (D. RI 1980) (granting motion to unseal search warrant affidavit in view of fact that government's fears concerning disclosure of grand jury proceedings were purely speculative).

[2] After Montgomery's counsel objected to the wholesale and obviously improper redactions on Tuesday, May 30, 2006, the Montgomerys received new versions of the affidavits withdrawing many of the redactions obviously taken from the civil case. However, as to the Buckthorn Affidavit, the Government left the wholesale "block" redactions. *See*, pp. 10-12. As to the Storage Unit Affidavit, the Government left the redaction on p. 5.

Courts have explored many claims by the government attempting to justify the extraordinary measure of keeping the supporting affidavits sealed after a search warrant is executed, and the Courts are reluctant to find the governments' reasons for secrecy compelling when compared to the target's right to question the legality of the search and seizure. *In Re Search Warrants Issued August 29, 1994*, at 299-300 (holding the government did not satisfy its burden of demonstrating compelling reasons to keep the affidavit sealed where they sought to protect a local ongoing investigation, no wiretaps existed, the was no evidence informants lives would be endangered, and even if there was danger, the informants names could easily be redacted to protect their identity); *In re Matter of Up North Plastics, Inc.*, at 234 (holding that the government's speculative fear of exposing the existence, nature, scope, and direction of their investigation was not compelling especially when the FBI agents searching the home provided details about the search; the target knew who the complaining witnesses were, and further, the government's speculative fear that grand jury witness might alter their testimony or feel intimidated or harassed was not a compelling reason for the extraordinary measure of sealing the affidavit); *In re Search Warrants Issued on April 25, 2004*, 353 F. Supp. 2d 584, 592 (D. Md. 2004) (the government's fears of exposing their legal theory or strategy was not compelling; the fear that potential witnesses might be coached was not compelling and where the target already suspected who the informants were, and there was no suggestion that any informants were in any danger the government's reluctance to reveal the identification of informants was not compelling; and in the alternative the affidavit could be carefully redacted by the Magistrate to protect the interests of the government and the target); *In the Matter of the Search of the Offices and Storage Areas Utilized by Stephen P. Amato*, 2005 U.S. Dist. Lexis 6870 (D. Me April 14, 2005) at 32 (The governments objection that the sealed affidavit provided a detailed "road map" as to their investigation was not a compelling reason when it was clear to the target where the investigation was

going); *In re Search of 8420 Ocean Gateway Easton*, 353 F. Supp. 2d at 582-83 (The fact that the target either knows or strongly suspects the identity of witnesses or even informants shows that this excuse is not compelling).

Since the burden is on the Government to justify the block redactions still remaining, the Montgomerys are at least entitled to know on what theory the Government is justifying its redactions. Moreover, the redactions in the Buckthorn Affidavit at pages 10-12 appear to refer to events that occurred after Mr. Montgomery was no longer an employee of eTreppid and therefore any issue regarding classified information cannot be at issue. Instead, the redactions appear to be limited solely to Mr. Montgomery's alleged theft of eTreppid trade secrets and his alleged attempts to find investors for the "Source Code."

Since the Government has freely admitted that the only issue in the case involves the alleged "mishandling" of classified information, the identification of witnesses and alleged evidence supporting the search based on "trade secrets" is clearly not classified. The redactions do not involve grand jury proceedings because no grand jury had been convened. Thus, the Government is left with the argument that it should not have to prematurely identify witnesses – a claim routinely rejected by the courts without a specific showing of danger to the witness. *Id.*

2. **Whether the Warrant Lacks Specificity and/or Is Overbroad.**

This issue has been fully briefed by the Montgomerys in their Memorandum, pages 17-24. And then in their Reply Memorandum at pages 16-17. The Montgomerys believe that the search warrant is facially invalid, which mandates a ruling in their favor. As set forth in their Motion and again in their Reply, the warrant fails to either identify the items to be seized with reasonable particularity or identify the criminal conduct being investigated. In the event that the Court believes that the warrant is overbroad and lacks particularity, no evidentiary hearing is required and the

motion should be granted.

In *United States v. Bridges*, 344 F.3d 1010 (9th Cir. 2003), the Ninth Circuit again rejected a warrant's failure to identify the criminal activity at issue. "In light of the expansive and open-ended language used in the search warrant to describe its purpose and scope, we hold that *this warrant's failure to specify what criminal activity was being investigated, or suspected of having been perpetrated, renders its legitimacy constitutionally defective.*" *Id.* at 1016 (emphasis added). In *Bridges*, the search warrant at issue authorized the seizure of:

> 1. a. Records and documents, or electronically stored information . . . .
> b. Documents, contracts, or correspondence . . . .
> c. Records relating to clients/victims . . . of [ATC] . . . .
> * * *
> 3. a. Computer hardware . . . .
> b. Computer software . . . .
> c. Computer-related documentation . . . .
> d. Computer passwords and other data security devices . .

*Id.* The same type of broad sweeping language lacking any reference to any criminal activity is present in this case.

The lack of specificity is particularly egregious in this case given that the Government could easily have identified what is was searching for with exacting specificity, given that the Government by law maintains a list of the classified information given to a contractor, generated by the contractor and retained by the contractor. *See e.g.*, Manual, § 5-201, requiring a "continuous receipt system both within and outside the facility"; § 5-202, requiring the return of a receipt to the Government for any classified information provided to the contractor; § 5-203, requiring that a record of information produced by the contractor be provided to the Government.

Thus, if classified information was truly what the Government was after, and the

Montgomerys still do not know for sure, it could have specified the exact document, its marking, the date, time, classification, and media on which it was stored, but did not. That alone speaks volumes about the unconstitutionality of the search. As discussed in the Montgomerys' Memorandum – and completely ignored by the Government -- in determining whether a search warrant lacks particularity, the Ninth Circuit examines "whether the government was able to describe the items more particularly in light of the information available to it at the time the warrant was issued. . . .", *United States v. Stubbs*, 873 F.2d 210, 211 (9th Cir. 1989). "Generic classifications in a warrant are acceptable ***only*** when a more precise description is not possible." *United States v. Kow*, 58 F.3d 423, 427 (9th Cir. 1995) (emphasis added). Given the fact that the Government knowingly elected to use broad classifications of documents that essentially authorized the Government, among other things, to seize anything remotely connected to the use of a computer, coupled with the fact that there is no mention of any criminal activity in the search warrant whatsoever, the Court can only conclude that the search warrant is overbroad and unconstitutional.

3. **The Government Shall Provide The Evidence On Which It Relies In Contending That the Searches In Question Were base on Probable Cause and Were Conducted Pursuant to A Lawfully Issued Warrant And Refutes The Allegations Raised In Mr. Montgomery's Motion.**

Since the Government has failed to produce any evidence whatsoever in support of its Oppositions to the Motion, the Montgomerys are totally and completely in the dark as to what possible evidence the Government relies upon. On May 26, 2006, the Government turned over two redacted affidavits of Special Agent Michael West, but the Government referenced more evidence in the hearing that has not yet been turned over.[3] Since this issue is directed at the Government, the

[3] Contrary to the statements of the prosecutor both privately and in court, the affidavits are clearly focused on recovering eTreppid's alleged trade secrets, not the mishandling of classified information. Since eTreppid did not have a "facility" clearance (see Operating Manual, §2-100), and Mr. Montgomery was the only person at eTreppid with the necessary security clearance for the work that he was performing, even if there was classified information in his possession – which there is

Montgomerys can only wait to see what the Government ultimately produces.

4. **If data seized contains classified Department of Defense information, to the extent that some materials seized may be subject to attorney client privilege, how should that issue be addressed? If, as the Government asserts, neither Mr. Montgomery nor counsel has security clearance, who will review the information to determine whether any material is privileged?**

This question posed by the Court actually involves three distinct concerns. First, and perhaps easiest to resolve is the Government's concern that there are allegedly classified materials among those seized by the Government.[4] The second concern is how to identify those materials that are subject to the attorney-client privilege and/or the work product doctrine. Finally, there is the Montgomerys' concern that his trade secrets, trade secrets that [redacted] and the Department of Defense want to obtain for their own use, is not misappropriated by them. The Montgomerys believe that there is a straightforward approach to resolve each issue.

(A) Handling Classified information.

There is no "classified material" among any materials seized by the Government pursuant to its unconstitutional search. "Classified information" is clearly defined generally in Executive Order 13292, § 1.6 and more specifically as it applies to government contractors in the Department of Defense's National Industrial Security Program Operating Manual, referred to in the Government's Oppositions as DoD 5220.22-M (the "Manual").[5] The Manual governs the handling of classified

---

not – he was the only person authorized to handle it.

[4] Of course, since Mr. Montgomery has already had access to any information seized by the FBI, it is a "red herring" to even argue about whether he can review material because he does not have security clearance. The plain fact is that Mr. Montgomery *had* such clearance, and is obviously intimately familiar with what is on his computers. He has never been notified that his security clearance has been revoked and he is entitled to a hearing on that revocation if and when he is notified. Therefore, the idea that he can no longer view what he already knows is simply illogical.

[5] At the hearing on May 26, 2006, the Government erroneously argued that the Operating Manual only applied to Department of Defense contracts. "The Manual controls the authorized

information by Government contractors. *See* Manual, §1-100. Section 4-100 clearly defines the only types of classification, *i.e.*, "confidential," "secret," and "top secret." *See also*, Executive Order 13292, § 1.2, 1.4. Classification decisions can only be made by a Government official who has been delegated that authority in writing. Manual, §4-101; Executive Order 13292, § 1.3. The classifier must state on the front of the document (1) the reason for the particular classification and (2) the duration of the classification. *Id.* Executive Order 13292, § 1.6. This is particularly important because it not only governs the handling of the classified information itself, but also, guides the contractor in the event that there is a derivative use of the classified information. Manual, § 4-102.

The only way to determine whether a file is actually classified is to see if it contains the markings that are described in the Manual, § 4-200 ("it is essential that all classified material and information be marked to clearly convey to the holder the level of classification assigned, the [portions that contain or reveal classified information, the period of time any protection is required, and any other notations required for the protection of the information.") *See also*, Executive Order § 1.6. Section 4-201 requires that the security markings set forth in §§ 4-202 through 4-208 are "required for all classified information regardless of the form in which it appears." Sections 4-202 through 208 set forth the manner in which all information must be marked. Section 4-203 sets forth the overall marking requirements for all types of information. The overall marking must be stamped on the top and bottom of the front, the title page and the first page of the file, etched or marked with

---

disclosure of classified information released by U.S. Government Executive Branch Departments and Agencies to their contractors," including the "certain Government agency." Manual, §§ 1-100, 1-101(b) (applies to contracts with that "certain government agency"). The Operating Manual, § 1-100 also states that "This Manual is issued in accordance with the National Industrial Security Program (NISP)." The NISP was established by Executive Order 12829 for the protection of information classified under Executive Order 12958 (the predecessor to Executive Order 13292). Manual §1-101. The National Security Council is responsible for providing overall policy direction for the NISP. The Secretary of Defense has been designated Executive Agent for the NISP by the President. Thus, the Government is simply incorrect.

stickers. If a container cannot be affixed with a sticker, a written notification of the marking must be furnished to the recipient. This marking requirement even applies to microfilm and email, for example. As verification of the existence of classified information created by a contractor, § 5-203 requires that the Government keep a report of all classified information generated by the contractor. Thus, as the Court can surmise from the above discussion, it is very simple when examining a document or electronic file whether it is classified or not. If it is not marked, it is not classified. If it was not listed by the Government as classified at the time (and not retroactively), it is not classified.

As a practical matter, therefore, any hard copies of documents will either be marked or they will not. If not, they are not classified. Similarly, a simple search of all electronic files seized from the Montgomerys can be made for the "magic" words, "confidential," "secret," or "top secret." Any files that are found as containing the "magic words" can then be reviewed first for the date of creation of the file. If it was created prior to the first contact with the Government in approximately December 2003, it is clearly not classified in any way. If it was created during the appropriate time, it must be reviewed for a determination of whether it was created by Mr. Montgomery for the purpose of obtaining legal advice. This would often be shown merely by the name of the file. Mr. Montgomery will no doubt be able to look at the title of the file and be able to state whether he thinks it is an attorney-client communication. If the file is listed in the search and is not listed as potentially privileged, no further inquiry need be made. For those documents that contain the search terms and are identified as potentially privileged by Mr. Montgomery, a special master having the appropriate security clearance (or this Court) can review the document in order to determine whether it is indeed privileged. This method will then segregate those files that are potentially classified and which are potentially privileged..

(B) Handling of Potentially Privileged Material.

Once the potentially classified information is identified (if any), there is no reason for Mr. Montgomery and his counsel *not* to have supervised access to all other documents and files, whether in "hard copy" or electronic, in order to prepare a privilege log of those documents that must be segregated and sealed by this Court, and ordered returned to the Montgomerys. If there is a dispute over whether a particular unclassified file is properly privileged, this Court can rule on the assertion of privilege as it does countless times in litigation.

(C) Handling Of Trade Secret Information.

The software programs developed by Mr. Montgomery are extremely valuable to the Government. The Government has even promised in a writing dated January12, 2004 not to attempt to obtain Mr. Montgomery's technology *by any means*. The Montgomerys are very concerned that the Government is merely using this bogus and unconstitutional search warrant in an effort to obtain the technology from Mr. Montgomery that it believed was stored on computer equipment at his house or in his storage areas in order not to pay Mr. Montgomery for it. The clearest evidence of this is the language of the search warrant itself, which does not even mention "classified information" but focuses instead on the mysterious "Source Code," potential investors who might have copies of Mr. Montgomery's technology, and the wholesale seizure of any computer equipment, storage media or hard drives that the FBI could come across.[6]

The harm to the Montgomerys if this technology falls into the Government's hands is truly irreparable. The Government will have discovered Mr. Montgomery's trade secret mathematical algorithms used to provide the results that only he has so far been able to provide, eliminate any need for the Government to license the technology from the Montgomerys, and worse, the

[6] Executive Order 13292, § 1.7 expressly prohibits the classification of information to restrain competition. Thus, to the extent that the Government is contending that Mr. Montgomery's trade secrets are "classified" in order to help eTreppid, that is clearly prohibited.

Montgomerys will never even be able to know about it because the Government will classify the information at such a level that it will be impossible for the Montgomerys to even learn that the Government is using the technology, not to mention prove it. Since the Government has absolutely no claim to such information, which was created by Mr. Montgomery prior to any Government involvement and which has valuable commercial applications as well, the Montgomerys are absolutely entitled to prevent that information from falling into the hands of the Government. The Montgomerys should be specifically permitted to access the computer files and prevent the Government from accessing them.

Thus, it is a simple matter for the parties, in conjunction with the Government, to review the totality of the files – especially those on the seized computers, and determine whether or not the particular item apparently falls within any recognized security classification, the attorney-client or work product privileges or is a trade secret. The parties would be bound by a protective order fashioned for the handling of the seized materials, in the event that the Court does not order the wholesale return of the material because of the facial invalidity of the search warrant.

Respectfully Submitted,

FLYNN & STILLMAN

Dated: June 2, 2006

By: [signature]
Philip H. Stillman, Esq.
Attorneys for DENNIS MONTGOMERY, BRENDA MONTGOMERY and MONTGOMERY FAMILY TRUST