J. Stephen Peek, Esq. (NV Bar #1758)
Jerry M. Snyder, Esq. (NV Bar #6830)
Hale Lane Peek Dennison and Howard
5441 Kietzke Lane, Second Floor
Reno, NV  89511
Tel: (775) 327-3000
Fax:  (775) 786-6179

Pillsbury Winthrop Shaw Pittman, L.L.P.
David A. Jakopin, CA Bar No. 209950
Jonathan D. Butler, CA Bar No. 229638
2475 Hanover Street
Palo Alto, CA 94304-1114
Tel: (650) 233-4500
Fax: (650) 233-4545
Admitted *Pro Hac Vice in related Federal Court Case No. 3:06-CV-0056-BES-VPC*

**FILED**

AUG 9  2006

U.S. MAGISTRATE JUDGE
DISTRICT OF NEVADA

BY _____DEPU⁻

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT COURT OF NEVADA

IN THE MATTER OF THE SEARCH OF:

The Residence Located at 12720 Buckthorne
Lane, Reno, NV and Storage Units 136, 140, 141,
142, and 143, Double R Storage, 888 Maestro
Drive, Reno, Nevada

Case No. 3:06-MJ-0023-VPC

_____/

## OPPOSITION TO DENNIS AND BRENDA MONTGOMERY'S AND THE MONTGOMERY FAMILY TRUST'S EX PARTE APPLICATION TO ENFORCE TRIAL SUBPOENA; COUNTER-MOTION TO QUASH OR MODIFY SUBPOENA

eTreppid Technologies, L.L.C. ("eTreppid") hereby files its Opposition to the Ex Parte Application to Enforce Trial Subpoena filed by Dennis Montgomery, Brenda Montgomery and the Montgomery Family Trust (collectively, "Montgomery") in the above-entitled action, and eTreppid also hereby files its Counter-Motion to Quash or Modify Subpoena.

This Opposition and Counter-Motion are **filed under seal**, pursuant order made by the Second Judicial District Court.  Declaration of Jerry Snyder In Support Of Opposition to Ex Parte Application to Enforce Trial Subpoena ("Snyder Decl."), ¶ 3, Ex. 1.  The Opposition and Counter-Motion are supported by the following points and authorities.

**POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

Through the present motion, Montgomery seeks to compel the production of certain eTreppid documents and tangible things pursuant to a subpoena.   Montgomery asserts that the information requested would be relevant to showing that the United States did not have probable cause to seek a search warrant.   This assertion is based on Montgomery's contention that the evidence would support his ownership (as opposed to eTreppid's) of the technology at issue.   Although eTreppid (which is not a party to this proceeding) is not fully aware of the parties' respective positions, the information that Montgomery seeks would not support his ownership claims regarding the technology in question. Further, Montgomery's Application and the underlying subpoena are procedurally and substantively defective.

Accordingly, the Court should deny the Application and quash the subpoena.   In the alternative, the Court should modify the subpoena so that: (1) Montgomery must abide by the terms of a mutually-agreeable Protective Order or, absent such an Order, eTreppid's proposed protective order from its civil case (now before this Court as Case No. 3:06-cv-00145), (2) Montgomery cannot disclose the documents to any third party, (3) Montgomery cannot use the documents for any purpose other than to support his claims or defenses in this proceeding, and (4) Montgomery must destroy the documents (including all copies thereof) within five days after the conclusion of this action.

**II.   STATEMENT OF RELEVANT FACTS**

**A.   eTreppid and Montgomery are currently litigating the issue of ownership.**

eTreppid and Montgomery are currently involved in two actions before this Court relating to their respective ownership claims for the technology in question.   eTreppid initiated one action in Nevada state court (now before this Court as Case No. 3:06-cv-00145) that generally relates to trade secret misappropriation by Montgomery, and Montgomery initiated the other action in Nevada federal court (Case No. 3:06-cv-00056), that generally relates to allegations of copyright infringement by eTreppid.   Both of these disputes center around ownership of certain computer source codes and software with data compression, object tracking, pattern recognition and anomaly detection applications.

::ODMA\PCDOCS\HLRNODOCS\558592\1                                    2

Hale Lane Peek Dennison and Howard
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

1    Dennis Montgomery was employed as eTreppid's Chief Technology Officer, and as such he

2    was responsible for helping to develop this technology for eTreppid by using its engineers, hardware,

3    and financial resources.    From December 2005 to January 2006, Dennis Montgomery stole this

4    technology from eTreppid's facilities, deleted it from eTreppid's workstations and servers, erased the

5    video surveillance footage from eTreppid's computers, and then presented eTreppid with an ultimatum

6    to pay an exorbitant ransom or face the destruction of its stolen technology.  On January 19, 2006,

7    eTreppid filed suit against Montgomery in the Second Judicial District Court for the State of Nevada,

8    alleging *inter alia* misappropriation of trade secrets and breach of fiduciary duty.

9    Although the two actions between eTreppid and Montgomery are still in the early procedural

10   stages, it is noteworthy that eTreppid sought and obtained a Preliminary Injunction Order (the "PI

11   Order") against Montgomery on February 8, 2006 – less than three weeks after eTreppid initiated its

12   action.  Judge Perry of the Nevada state court based his ruling on a lengthy evidentiary hearing (the

13   "PI Hearing"), at which counsel elicited testimony from Dennis Montgomery, eTreppid's president

14   Warren Trepp, and other eTreppid employees.  As evidenced by the PI Order, Judge Perry found that

15   eTreppid is likely to prevail on the merits of its claim for trade secret misappropriation, and the ruling

16   bars Montgomery from destroying and/or distributing the source codes that he stole from eTreppid.

17   Snyder Decl., Ex. 2 (PI Order, at 2:7-11 and 3:6-12).

18   Montgomery subsequently filed his unverified Federal Complaint to assert ownership of the

19   technology at issue, based on his purported copyrights.  Montgomery removed eTreppid's action to

20   federal court on spurious grounds, but the PI Order is still in effect.  To date, Montgomery has not

21   provided any cognizable evidence to support his ownership claims – and contrary to his claims in the

22   present Application that he "is the owner of the technology at issue," the only court that has heard

23   Montgomery's testimony regarding those ownership claims ruled that eTreppid would likely prevail as

24   owner of the technology.

25   **B.    Montgomery and eTreppid are currently negotiating a protective order.**

26   In connection with the federal action initiated by Montgomery, eTreppid first provided a draft

27   protective order to Montgomery's counsel on May 11, 2006, following the suggestion made by this

28   Court (at a hearing an eTreppid's motion for a protective order) that the parties attempt to stipulate to

::ODMA\PCDOCS\HLRNODOCS\558592\1                                          3

Hale Lane Peek Dennison and Howard
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

1  the terms of such an order.  Snyder Decl., ¶ 5, Ex. 3.  eTreppid's proposed protective order provided

2  for two-tier protection of sensitive materials by allowing the producing party to designate materials

3  produced as either confidential (allowing counsel, agents and parties to view the materials) or

4  restricted confidential (allowing counsel and agents – but not parties – to view the materials).  *Id.*

5  eTreppid considers this two-tier protective order (which allows for a tier of very highly confidential

6  information of each party that cannot be seen by the other party) to be appropriate because

7  Montgomery is no longer an employee of eTreppid, and as such he should not be permitted

8  unrestricted access to the very materials he stole from eTreppid.  Montgomery's counsel has suggested

9  a protective order that would allow Dennis Montgomery access to all materials.  The parties are still

10  negotiating the terms of this protective order.

   **C.**     **Montgomery has tried repeatedly to obtain the requested information in the related civil matter.**

13  On July 26, 2006, Montgomery provided counsel for eTreppid with a list of documents that

14  Montgomery believed eTreppid was obliged to provide through its Rule 26(f) initial disclosures.  This

15  list, which includes a total of twenty-eight categories, appears to include all fourteen categories of

16  documents that Montgomery seeks to obtain through the present subpoena.   In this same letter,

17  Montgomery confirmed the parties agreement that each side would make initial disclosures on August

18  7, 2006.  Snyder Decl., ¶ 6, Ex. 4.  On August 7, 2006, eTreppid provided Montgomery with its initial

19  disclosures, identifying approximate 750 pages of relevant documents.  Snyder Decl., ¶ 7, Ex. 5.

20  Notably, many of the identified documents are responsive to the requests made in Montgomery's July

21  26, 2006 letter and in the present subpoena.  *Id.*

22  On July 24, 2006, Montgomery adopted a different approach to obtain some of the requested

23  documents by sending eTreppid a letter to demand, as a "member" of eTreppid, that he be allowed to

24  inspect and copy a wide variety of business records.  Snyder Decl., ¶ 8, Ex. 6.  eTreppid responded that

25  Montgomery would be allowed to inspect those records to which he is entitled under NRS 86.241, but

26  only upon reasonable notice and upon Montgomery's written agreement to maintain the confidentiality

27  of those documents.  Snyder Decl., ¶ 8, Ex. 7.  Montgomery refused to comply with eTreppid's

28  conditions and, on both July 27 and July 28, knowing there is no basis under the Nevada law for a

::ODMA\PCDOCS\HLRNODOCS\558592\1                                        4

Hale Lane Peek Dennison and Howard
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

1  member to send an accountant to inspect the company's records sent an accountant, Mr. Greg Gilbert,

2  to review the requested records,. eTreppid did not allow Mr. Gilbert to review the records.

3  **D.   Montgomery never effected proper service of the subpoena on eTreppid.**

4  Having failed to obtain the records and information by other means, Montgomery is now

5  attempting to obtain them with the subject subpoena. On Thursday July 27, 2006, while Mr. Gilbert

6  was attempting to gain access to eTreppid's records, Montgomery also apparently attempted to serve a

7  subpoena on eTreppid at 2080 McCloud Avenue. Snyder Decl., ¶ 9, Ex. 8. eTreppid is located on

8  Trademark Drive, and has no connection to McCloud Avenue. Snyder Decl., ¶ 9. The July 27 proof

9  of service attached to the subpoena claims that the process server spoke to an eTreppid employee by

10  the name of Jesse Anderson, who informed the process server that no one was available to accept

11  service. The proof of service further states that eTreppid's counsel Jerry Snyder would not accept

12  service – when in fact Mr. Snyder stated that he could not accept service for lack of authorization to do

13  so. Snyder Decl., ¶ 9.

14  On Friday July 28, Montgomery again attempted to serve the subpoena, this time by leaving a

15  copy of the subpoena with a "John Doe" at 2080 McCloud Avenue. This purported service is clearly

16  deficient and ineffective; eTreppid does not employ anyone by the name of "John Doe", nor does it

17  maintain any premises at 2080 McCloud Avenue. It is perplexing that Montgomery would seek to

18  serve the subpoena at this address when the Nevada Secretary of State's website clearly identifies

19  eTreppid's agent for service of process as GKL Resident Agents. Further, assuming that "John Doe"

20  refers to some unnamed individual, Montgomery has not demonstrated (nor can he) that the individual

21  in question is employed by or affiliated with eTreppid – much less authorized to accept service of a

22  subpoena on its behalf.

23  Even though eTreppid was never served with the present subpoena, it obtained a copy of the

24  document and, on July 28, notified Montgomery of its objections. Snyder Decl., ¶ 10, Ex. 9. eTreppid

25  also hand-delivered a copy of its objections to Montgomery's counsel on July 31, immediately prior to

26  the hearing on this matter.

27  **E.   Montgomery never served the *Ex Parte* Application on eTreppid.**

28  eTreppid was unaware of Montgomery's *Ex Parte* Application to Enforce Trial Subpoena (the

Hale Lane Peek Dennison and Howard
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

1  "Application to Enforce") until August 2, 2006, when the Court granted Montgomery's *Ex Parte*

2  Application for an Order Shortening Time. eTreppid immediately contacted Montgomery to request a

3  copy of the Application to Enforce. Montgomery's counsel Michael Flynn promised to provide a

4  copy. However, Mr. Flynn failed to make good on this promise. Snyder Decl., ¶ 11.

5       On August 4, Montgomery's counsel informed eTreppid that the matter was sealed, and so

6  they would not provide eTreppid with a copy of the Application to Enforce absent notification from

7  the Court that eTreppid could review it. Snyder Decl., ¶ 11, Ex. 10. Accordingly, eTreppid obtained a

8  copy of Montgomery's Application directly from this Court. *Id.*

9  **III.   ARGUMENT**

10      **A.   Montgomery's subpoena is procedurally defective.**

11       The Court should refuse to enforce Montgomery's subpoena because it is procedurally

12  defective and because Montgomery never effected proper service of the subpoena on eTreppid.

13       Montgomery's subpoena is defective because Montgomery never effected proper service on

14  eTreppid. Instead of properly serving the subpoena at eTreppid's business address on Trademark

15  Drive, Montgomery's service agent left a copy at an unrelated address and then attempted to serve Mr.

16  Snyder – who informed her that he lacked authorization to accept service of the subpoena on

17  eTreppid's behalf.

18       Proper service requires that Montgomery deliver a copy of the subpoena to eTreppid.

19  Although Rule 45 does not articulate how to effect service on a business entity, Rule 4 provides that

20  "service upon a domestic or foreign corporation… shall be effected: (1)… by delivering a copy of the

21  summons and of the complaint to an officer, managing or general agent, or to any other agent

22  authorized by appointment or by law to receive service of process…" FED. R. CIV. PROC. 4(h).

23       Montgomery did not deliver a copy of the subpoena to any officer, managing agent, or other

24  agent for service of process. Instead, as set forth in the Affidavit of Service, Montgomery attempted

25  service by delivering a copy of the subpoena to counsel for eTreppid, and to a "John Doe" at an

26  address that has no apparent connection to eTreppid. Montgomery could have accomplished service

27  by delivering a copy of the subpoena to GKL Resident Agents, which is clearly identified as

28  eTreppid's agent for service of process. Having failed to properly serve this subpoena, Montgomery

::ODMA\PCDOCS\HLRNODOCS\558592\1     6

1 | cannot now assert that eTreppid is obliged to comply with its requests.

2 | **B.    Montgomery failed to provide notice of the Application to Enforce.**

3 | Montgomery asserts that eTreppid is in contempt of court for failing to provide documents in

4 | response to the subject subpoena, contending that "[o]bviously, a trial subpoena served pursuant to

5 | Fed. R. Civ. P. 45 must be obeyed, absent a protective order." Application to Enforce, at 3:23-24.

6 | To the contrary, Rule 45 provides that a party served with a subpoena may, "before the time

7 | specified for compliance if such time is less than 14 days after service of the subpoena," serve written

8 | objections to the subpoena upon the requesting party – at which point "the party serving the subpoena

9 | shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an

10 | order of the court by which the subpoena issued." FED. R. CIV. PROC. 45(c)(2)(A).  Rule 45 further

11 | provides that Montgomery may obtain a court order for compliance with the terms of the subpoena: "if

12 | objection has been made, the party serving the subpoena may, upon notice to the person commanded to

13 | produce, move at any time for an order to compel the production." *Id.*

14 | Notwithstanding the clear obligations imposed by the rules of procedure, Montgomery failed to

15 | provide any notice of the Application to Enforce.  In effect, Montgomery has asked the Court to grant

16 | the Application to Enforce without providing a noticed motion to eTreppid.  This approach violates not

17 | only the specific requirements of Rule 45, but also the fundamental due process notions of notice and

18 | the opportunity to be heard.  Accordingly, the Court should deny the Application to Enforce and quash

19 | Montgomery's subpoena.

20 | **C.    Montgomery's subpoena does not allow reasonable time for compliance.**

21 | Rule 45 provides that this Court "shall quash or modify" a subpoena which "fails to allow a

22 | reasonable time for compliance." FED. R. CIV. PROC. 45(c)(3)(A).  Montgomery did not attempt to

23 | serve the subject subpoena on eTreppid until Thursday July 27, and the subpoena demanded

24 | production of documents at a hearing scheduled for Monday July 31.

25 | As explained below, Montgomery's subpoena is extremely broad and burdensome.

26 | Accordingly, even if the subpoena were properly served and not otherwise objectionable, Montgomery

27 | has not provided reasonable time for compliance. If this Court grants Montgomery's Application to

28 | Enforce in whole or in part, the Court should allow eTreppid at least two weeks to collect the

::ODMA\PCDOCS\HLRNODOCS\558592\1                  7

*Left margin (vertical):* Hale Lane Peek Dennison and Howard
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

1   requested records.

2   **D.   Montgomery's subpoena is overbroad.**

3   Montgomery's subpoena is overbroad and unduly burdensome.   First, Montgomery seeks

4   production of records that can have no conceivable bearing on whether or not the United States had

5   probable cause to search Dennis Montgomery's residence.   Second, Montgomery has not taken any

6   "reasonable steps to avoid imposing an undue burden or expense" on eTreppid, as required by Rule 45

7   of the Federal Rules of Civil Procedure; Montgomery first attempted to serve the subpoena on July 27,

8   only four days prior to the demanded production date.   This short time-frame presents an undue burden

9   on eTreppid.   Third, Montgomery's subpoena seeks access to commercially-sensitive, privileged and

10  confidential records without restricting Montgomery's ability to disclose those records to third parties

11  or to use them for other purposes.

12  As addressed below in further detail, Montgomery's subpoena is overbroad because it demands

13  production of such broad categories of documents as:

14  • "all minutes and records of the Management Committee" (Request No. 4);

15  • "all documents… delivered to any US Governmental Officer after December 1, 2005"
16  (Request No. 7);

17  • "all inventories of the contents of any safe maintained by eTreppid and/or Warren
    Trepp" (Request No. 9);

18
19  • "all employment agreements signed by any employee in the company" (Request No.
    11); and

20  • "all of Warren Trepp's emails, correspondence, and communications of every nature
21  and description" with six named individuals, as well as "any agent or employee of any
    Governmental agency" (Request No. 14).

22

23  Montgomery's requests do not include any subject-matter limitations, nor do the majority of

24  requests include any time limitations.   For example, Request No. 14 would appear to require

25  production of Mr. Trepp's personal files, including every income tax return that he has filed with the

26  IRS – without even justifying why a subpoena directed at eTreppid should entitle Montgomery to Mr.

27  Trepp's personal files!   Likewise, Request No. 9 (which demands inspection of the inventories of

28  every safe maintained by eTreppid and/or Mr. Trepp) appears to include within its scope any personal

::ODMA\PCDOCS\HLRNODOCS\558592\1                                8

Hale Lane Peek Dennison and Howard
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

1  safe used by Mr. Trepp, even if unrelated to eTreppid's business; this request could require production

2  of Mr. Trepp's will, of collectable baseball cards or of any other personal documents that he might

3  "maintain" in a safe.

4        The Court should deny Montgomery's subpoena as grossly overbroad and unduly burdensome.

5  **E.    Montgomery's subpoena specifically requests privileged documents.**

6        Rule 45 provides that this court "shall quash or modify the subpoena if it… (iii) requires the

7  disclosure of privileged or other protected matter and no exception or waiver applies." FED. R. CIV.

8  PROC. 45(c)(3)(A). Montgomery's subpoena specifically requests all correspondence between Warren

9  Trepp, eTreppid's president, and Doug Frye, an attorney who represents both Mr. Trepp and eTreppid.

10  All such correspondence is protected by the attorney-client privilege and/or the attorney work product

11  privilege – so this request seeks privileged information. Accordingly, the Court should deny this

12  request and/or modify the subpoena to excuse eTreppid from producing such privileged documents.

13  **F.    eTreppid is entitled to a protective order because the subpoena seeks**

14      **commercially-sensitive documents.**

15        Rule 45 provides that a court "may order appearance or production only upon specified

16  conditions" for any subpoena that "requires the disclosure of a trade secret or other confidential

17  research, development, or commercial information." FED. R. CIV. PROC. 45(c)(3)(B). Further, "[t]he

18  court must balance the need for discovery by the requesting party and the relevance of the discovery to

19  the case against the harm, prejudice or burden to the other party. One factor to be considered in

20  assessing the burden of complying with a subpoena is whether the moving party is a non-party to the

21  litigation." *Cmedia, LLC v. LifeKey Healthcare, LLC,* 216 F.R.D. 387, 389 (N.D. Tex. 2003)

22  (citations omitted).

23        Montgomery's subpoena clearly requests disclosure of eTreppid's trade secret and

24  commercially-sensitive information, which relate both to eTreppid's business operations and the

25  technical specifications of eTreppid's software. eTreppid is not a party to this action, and it appears

26  that Montgomery is seeking the requested records for use in the ongoing civil litigation and for his

27  own personal use. In deference to the parties' ongoing negotiations for implementation of a joint

28  protective order in that litigation, any production of eTreppid's trade secret or commercially-sensitive

Hale Lane Peek Dennison and Howard
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

documents should be governed by the following restrictions: (1) Montgomery must abide by the terms of a mutually-agreeable Protective Order or, absent such an Order, eTreppid's proposed protective order from its civil case (now before this Court as Case No. 3:06-cv-00145), (2) Montgomery cannot disclose the documents to any third party, (3) Montgomery cannot use the documents for any purpose other than to support his claims or defenses in this proceeding, and (4) Montgomery must destroy the documents (including all copies thereof) within five days after the conclusion of this action.

These necessary restrictions would safeguard eTreppid's confidential and proprietary data. Further, Montgomery cannot assert that these restrictions would prevent him from using the records in this proceeding because the restrictions would permit Montgomery's counsel, independent experts and the Court itself to view those records.

### G.    Objections to particular requests.

Request No. 1 seeks "CD No. 1 referenced in the September 28, 1998 'Contribution Agreement.'"  CD No. 1 is relevant, but there is no reason to believe the compact disc at issue is within eTreppid's possession, custody, or control; at the PI Hearing, Warren Trepp testified that he could not recall whether Montgomery ever provided this compact disc.   Snyder Decl., **Ex. 1** (Transcript for PI Hearing, Vol. 1, at 240:6-15).

Request No. 2 seeks "the original Sept. 28, 1998 'Contribution Agreement' and all schedules, attachments, amendments, etc."  eTreppid already provided a copy of the Contribution Agreement to Montgomery prior to the PI Hearing.  Accordingly, this request is duplicative, oppressive and unduly burdensome in that it calls for production of a document already in Montgomery's possession.

Request No. 3 seeks "All 'Operating Agreements' of eTreppid and Intrepid from 1998 to the present, and all schedules, attachments, amendments, etc."  Once again, eTreppid provided these documents to Montgomery prior to the PI Hearing.

Request No. 4 seeks "All minutes and records of the Management Committee from 1998 to present."  This request is overbroad; it is not reasonably limited to those minutes and records which relate to Montgomery's ownership claims for the technology at issue.

Further, Montgomery's unfounded allegations that Mr. Trepp "committed corporate fraud" are unrelated to the stated need to establish Montgomery's purported ownership interest.  Montgomery

Hale Lane Peek Dennison and Howard
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

Hale Lane Peek Dennison and Howard
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

1  claims that Mr. Trepp reduced his ownership interest in eTreppid "from 30% to 8%, while taking

2  enormous distributions for himself and his friends." Montgomery's current ownership interest in

3  eTreppid is 29.619%.

4       Montgomery's allegations are knowingly false. The only distributions eTreppid has never paid

5  were to Mr. Montgomery in connection with the redemption of a portion of his interest in the company

6  in an amount in excess of $3,000,000.00 and a tax distribution made to the members in 2006. Any

7  reduction in Montgomery's percentage ownership interest in eTreppid occurred in connection with the

8  sale or other voluntary transfer or his failing to invest additional capital. As established at the

9  Preliminary Injunction Hearing, Montgomery requested and was allowed the opportunity to redeem his

10  shares in eTreppid in exchange for a total payment of approximately $3.0 million. (Transcript for PI

11  Hearing, Vol. 2, at 81:21-83:7). Accordingly, even if they were relevant to this proceeding,

12  Montgomery's allegations of "corporate fraud" lack merit. Quite the contrary, Montgomery was the

13  only member of eTreppid whoever received distributions unrelated to tax obligations and it enriched

14  him by millions of dollars!

15       Request No. 5 seeks "all patent applications submitted by Intrepid or eTreppid." This request

16  is overbroad and seeks production of confidential information. eTreppid has already provided

17  Montgomery with copies of numerous patents issued to eTreppid for inventions related to object

18  tracking, compression, pattern recognition, and anomaly detection. Snyder Decl., **Ex. 5**. Further, any

19  pending applications are confidential until published – yet another reason that any should be governed

20  by a protective order.

21       Request No. 6 seeks reports "setting forth what 'Trade Secrets' are either present or missing

22  within the eTreppid software system." This request is improper and unduly burdensome, and it further

23  seeks access to confidential and proprietary documents without requiring Montgomery to either

24  maintain the secrecy or prevent dissemination of information regarding eTreppid's trade secrets.

25       Montgomery has also not established how a complete register of eTreppid's trade secrets could

26  possibly relate to this proceeding. It seems clear that Montgomery does not desire access to

27  eTreppid's trade secrets for use in this proceeding, but is rather using this subpoena to obtain

28  information to which he has not gained access in his ongoing civil litigation with eTreppid. As shown

::ODMA\PCDOCS\HLRNODOCS\558592\1                    11

Hale Lane Peek Dennison and Howard
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

1   by the existence of the Order from PI Hearing, Montgomery cannot be trusted with eTreppid's trade

2   secrets or with any information relating to those trade secrets.  Snyder Decl., **Ex. 2** (PI Order).

3        This request appears to require eTreppid to prepare detailed expert reports far in advance of the

4   deadline for expert disclosures in the ongoing civil litigation.  Montgomery asserts that the requested

5   reports would show that eTreppid reported the theft of software that eTreppid knew was not a trade

6   secret.  Even if this unfounded allegation were true, the only reports that could possibly be relevant to

7   this proceeding are those reports that were already in eTreppid's possession, custody or control when

8   the search warrant issued.  The Court should require Montgomery to limit the scope of this request

9   accordingly.  Further, to the extent that any such documents are relevant to the criminal proceeding,

10  the Court should not allow Montgomery to use documents obtained from this subpoena in a manner

11  inconsistent with the terms of a protective order in the civil litigation.

12       Request No. 7 seeks all reports "delivered to any US Governmental official after December 1,

13  2005."  This request is clearly overbroad and seeks confidential information; it does not provide any

14  limitation on the subject matter of the reports.  Further, the request is overbroad and unduly

15  burdensome because it does not specify which individual(s) delivered any such report; the request

16  would oblige eTreppid to produce a tremendous amount of information (including, for example,

17  withholding tax records and income tax returns), much of which could not possibly relate to this

18  proceeding.  The Court should require Montgomery to limit the scope of their request.

19       Request No. 8 seeks all documents relating to "eTreppid or any of its agents, employees

20  consultants etc [sic] and the security clearance of Dennis Montgomery."  This request is unduly

21  burdensome in that it would require eTreppid to canvass its facility and computers for all responsive

22  documents.  In addition, as Montgomery would have been required to complete any applications for

23  security information, he undoubtedly has retained copies As phrased, the request would also call for

24  production of privileged documents such as eTreppid's communications with counsel.  Further, neither

25  the subpoena nor the Application to Enforce specify how these documents could possibly relate to this

26  proceeding.

27       Request No. 9 demands "All inventories of the contents of any safe maintained by eTreppid

28  and/or Warren Trepp."  Montgomery asserts that this information is relevant to show that any

::ODMA\PCDOCS\HLRNODOCS\558592\1                    12

lassified documents at issue were stored in a safe at eTreppid's facility.  Accordingly, the Court should require Montgomery to limit the scope of his request to only require production of an inventory

3   of the classified materials maintained in a safe at eTreppid's facility as of the date that the search

4   warrant issued.

5       Request No. 10 seeks "all software programs or any portions thereof currently existing at

6   eTreppid which you claim constitute eTreppid's 'Trade Secrets.'"  This request clearly seeks

7   production of privileged materials, in contravention of the Rule 45 provisions protecting such

8   materials.  As discussed above, it appears that Montgomery may be using this request to gain access to

9   eTreppid's confidential and proprietary information for his personal use and for use in his ongoing

10   civil litigation with eTreppid.  As mentioned in numerous ways previously, Montgomery cannot be

11   trusted with eTreppid's trade secrets, and the only court to have heard testimony regarding this matter

12   agreed.  Snyder Decl., **Ex. 2** (PI Order).  Further, the request is overbroad because it would require

13   disclosure of trade secrets unrelated to the technology at issue.

14       Request No. 11 seeks "all employment agreements signed by any employee in the company."

15   This request is overbroad and seeks information which violates the privacy of eTreppid employees.

16       Request No. 12 seeks all revisions and editions, past and present, of eTreppid's employee

17   manual – asserting that such information would show "terms on the handling of classified

18   information."  Contrary to Montgomery's assertions, the handling of classified information is governed

19   by federal law, not by any employment term.  As such, the requested information is not relevant to

20   Montgomery's challenge of the validity of Special Agent West's search warrant.

21       Request No. 13 seeks all "complaints, correspondence, emails and communications between

22   any government official and any eTreppid employee, principal, officer, manager, or Chairman relating

23   to the criminal complaint filed by Warren Trepp or eTreppid against Dennis Montgomery."  By

24   seeking documents from eTreppid – which is not a party to this proceeding – Montgomery has failed

25   to "take reasonable steps to avoid imposing undue burden or expense on the person subject to the

26   subpoena."

27       Request No. 14 seeks all correspondence between Warren Trepp and "Ronald Bath, Paul

28   Hareldsen, James Gibbons, Michael Milken, Douglas Frye, Michael West, and any agent or employee

Hale Lane Peek Dennison and Howard
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

Hale Lane Peek Dennison and Howard
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

1  of any government agency." This request is premised on Montgomery's assertion that he is "entitled

2  to know what contacts eTreppid had with any of these individuals, since they are directly tied to the

3  investigation that led to the issuance of the search warrants that are at issue here."

4       Rather than providing evidence to support his contention that either Ronald Bath or Paul

5  Hareldsen – both high-ranking military officers – provided false information to the Government,

6  Montgomery justifies this request based on his "belief." This unfounded allegation is underscored by

7  Montgomery's other stated "beliefs," which include:

8 · his belief that Nevada gubernatorial candidate Jim Gibbons somehow influenced the
9    present investigation as a result of "possibly illegal" campaign contributions
   (Application to Enforce, at 11:8-11);

10 · his belief that the law firm Hale Lane may have influenced Judge Perry (the judge who
11    issued the PI Order) by donating to his election campaign, even Judge Perry was
   appointed in 2004 and is currently running unopposed (Snyder Decl., **Ex. 11** (M. Flynn
12    letter dated July 26, 2006) at p.3); and

13 · his belief that Warren Trepp is "one of the most notorious financial criminals in all
   history" (Snyder Decl., **Ex. 11** (M. Flynn letter dated July 26, 2006) at p.2). Mr. Trepp
14    has never been indicted in any criminal proceeding.

15       Montgomery and his counsel have established a pattern of leveling wild accusations without

16  any support, and the Court should require some offer of proof from Montgomery to prevent him from

17  using and abusing the subpoena process to continue what appears to be an obvious attempt to provide

18  cover for Mr. Montgomery's conduct in stealing eTreppid's trade secrets.

19       Montgomery also requests all correspondence between Messrs. Trepp and Frye. This request

20  is overbroad and seeks production of privileged documents. As Montgomery is aware, Mr. Frye is

21  counsel for both eTreppid and Mr. Trepp personally, so any such correspondence is privileged.

22       Finally, even if this request were relevant (eTreppid maintains it is not), it is incredibly

23  overbroad because it does not include any limitations based on time or subject matter. In order to

24  comply with this request as phrased, Mr. Trepp could be forced to search through records that date

25  back twenty years or more.

26  ///

27  ///

28  ///

## IV.   CONCLUSION

For the foregoing reasons, the Court should (i) deny Montgomery's Application to Enforce and (ii) quash and/or modify Montgomery's subpoena.

Dated:  August 9, 2006.

J. Stephen Peek, Esq.
Nevada Bar Number  1758
Jerry M. Snyder, Esq.
Nevada Bar Number 6830
Hale Lane Peek Dennison and Howard
5441 Kietzke Lane, Second Floor
Reno, Nevada  89511
Tel:  (775) 327-3000
Fax:  (775) 786-6179
*Attorneys for eTreppid Technologies, L.L.C. and Warren Trepp*

::ODMA\PCDOCS\HLRNODOCS\558592\1

15

**PROOF OF SERVICE**

1

I, Paul D. Cain, declare:

2

I am employed in the **City of Reno, County of Washoe, State of Nevada,** by the law offices
of Hale Lane Peek Dennison and Howard.  My business address is: **5441 Kietzke Lane, Second
Floor, Reno, Nevada  89511.**  I am over the age of 18 years and not a party to this action

3

4

I am readily familiar with Hale Lane Peek Dennison and Howard's practice for collection of
mail,  delivery of its hand-deliveries, and its process of faxes.

5

6

On August 9, 2006, I caused the foregoing **OPPOSITION TO DENNIS AND BRENDA
MONTGOMERY'S AND THE MONTGOMERY FAMILY TRUST'S EX PARTE
APPLICATION TO ENFORCE TRIAL SUBPOENA; COUNTERMOTION TO QUASH OR
MODIFY SUBPOENA** to be delivered:

7

8

9

___X___        by hand-delivering a true copy thereof in a sealed envelope, addressed as follows:

10

*Fax No. 786-5044*
Ronald J. Logar, Esq.
Eric A. Pulver, Esq.
The Law Offices of Logar & Pulver
225 S. Arlington Avenue, Suite A
Reno, NV 89501

11

12

13

14

___X___        by faxing a true copy thereof to the fax number indicated below and by placing a true
copy thereof in Hale Lane Peek Dennison and Howard's outgoing mail in a sealed envelope, addressed
as follows:

15

16

*Fax No. 888-235-4279*
Michael J. Flynn, Esq.
Philip H. Stillman, Esq.
Flynn & Stillman
224 Bermingham Dr., Ste. 1A4
Cardiff, CA  92007

17

18

19

20

___X___        by faxing a true copy thereof to The Hon. Valerie P. Cooke's chambers (at 775-686-
5864) and by hand-delivering the original opposition to chambers (400 South Virginia Street, Room
404, Reno, Nevada  89501) per Judge Cooke's August 2, 2006 instructions

21

22

I declare under penalty of perjury under the laws of the United States of America that the
foregoing is true and correct, and that this declaration was executed on August 9, 2006.

23

24

25

Paul D. Cain

26

27

28

::ODMA\PCDOCS\HLRNODOCS\558592\1                                    16