ORIGINAL

1  Ronald J. Logar, Esq., Nevada Bar No.: 0303
   Eric A. Pulver, Esq., Nevada Bar No.: 7874
2  Law Office of Logar & Pulver, PC
3  225 S. Arlington Ave., Ste A
   Reno, NV 89501
4  Phone: 775-786-5040
   Fax: 775-786-7544
5

6  Michael J. Flynn, Esq., Mass. State Bar No.: 172780
   P.O. Box 690
7  Rancho Santa Fe, CA 92067
   Phone: 858-759-7000; 858-775-7624
8  Fax: 858-759-0711
9  Admitted Pro Hac Vice in related Federal Case No. 3:06-cv-0056- and 00145-LRH (VPC).

____ FILED       ____ RECEIVED
____ ENTERED     ____ SERVED ON
            COUNSEL/PARTIES OF RECORD

JAN     2007

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY: _____ DEPUTY

10                    UNITED STATES DISTRICT COURT

11                       FOR THE DISTRICT OF NEVADA

12 |                                          ) CASE NO.: 3:06-CV-0263-LRH (VPC)
13 | In the Matter of the Search of:          ) 3:06-0023-VPC
   | 12720 BUCKTHORN LANE, RENO, NV           )
14 |                                          ) DECLARATION OF ATTORNEY MICHAEL J.
   |                                          ) FLYNN IN SUPPORT OF EX PARTE MOTION
15 | and                                      ) TO SHORTEN TIME AND MOTION TO
   |                                          ) UNSEAL.
16 | 888 MAESTRO DRIVE, RENO, NV, STORAGE)
   | UNIT NUMBERS 136, 140, 141, 142, AND 143 )
17 |                                          ) FILED UNDER SEAL

18

19     I, Michael J. Flynn, declare:

20     1.      I am an attorney licensed to practice in the state of Massachusetts. I am counsel for

21 Dennis Montgomery in the state and federal civil matters involving Warren Trepp, appearing *pro hac*

22 *vice* in related Federal Cases 3:06-cv-0056-LRH (VPC) and 00145-LRH (VPC). I either have personal

23 knowledge, and/or substantially corroborated information and belief of the facts stated herein, and if

24 called as a witness, I could and would testify competently to them. Where I have information and

25 belief as to certain facts that have not been substantially corroborated, I have placed the designation

26 "I & B" in parenthesis following the statement. Where the facts relate to vital and secretive national

27 security concerns that I have intentionally referenced in an incomplete, obtuse or oblique way, I

(1)

.103

have made the designation "MD," referencing the sealed declaration of Dennis Montgomery. That declaration was first provided by hand delivery to Judge Brian Sandoval on November 1, 2006, and apparently shredded by him on that same day when he recused himself (I&B); and then provided by hand delivery to this Court on November 28, 2006. I submit this declaration in support of Mr. Montgomery's Motion to Unseal all sealed materials in the search matter forthwith.

2.  For reasons and facts enumerated herein, this case should be unsealed *immediately*, even while this Court is reviewing the "Order" of Judge Valerie Cooke issued on November 28, 2006. In order to decide this motion, it is critical for this Court to know and separate facts and issues in the three cases before the Court. On the one hand, there are the two civil cases which directly and inextricably involve facts and evidence based on the utilization of Mr. Montgomery's software in the "Special Access Programs" relating to extremely grave, vital and "Top Secret - Special Information Compartmentalized" national security concerns in the war on terror. (MD)[1] On the other hand, there are the facts, issues, and the record in the search matter based on Mr. Montgomery's Rule 41 g Motion seeking the return of his computers and property based on the egregious misconduct by the Nevada U.S Attorney and Nevada FBI in the unconstitutional raid on Mr. Montgomery's home, corruptly engineered and designed to, in effect, "steal" Mr. Montgomery's software "source codes" on behalf of Warren Trepp. **The search matter record is devoid of any facts, evidence, documents, transcript references or exhibits that threaten national security.** But for reasons stated herein, Mr. Montgomery is gravely concerned that the Government will now seek to delay the unsealing of the

---

[1] Please see the "public" declaration of former DNI, John Negroponte, and the sealed declaration submitted by his office (presumably by him, although, of course, it has never been seen by Mr. Montgomery, or his counsel). Also, please review the sealed declaration of Mr. Montgomery supplementing the sealed declaration of the Government specifically relating to his interaction with ▊ and Air Force officials having knowledge of his exclusive ownership and possession of the software used in the Special Access Programs.

-2-

search matter by any means available, including: (i) specious appeals; (ii) false and contrived ex parte declarations, (as it has repeatedly attempted - most recently with this Court while it was "appealing" Judge Cooke's Order to Show Cause for Contempt against the Nevada U.S. Attorney's Office); and/or (III) assertion of the state secrets privilege *in the search matter*. The compelling urgency for this motion arises out of the following facts.

3. The United States Government, more specifically the Bush administration, the Air Force, USSOCOMM (United States Special Operations Command) and ▮▮▮▮, are in need of full and immediate utilization of Mr. Montgomery's software technology in the war on terror. Individuals within these branches of Government *know, having worked directly with him,* that the technology is exclusively owned, possessed and operated by Mr. Montgomery; and that it is demonstrably effective in ▮▮▮▮▮▮▮▮▮▮▮▮.

4. Based on over nine months of observations and personal interactions with numerous individuals associated with this matter, I have observed that such utilization is currently obstructed by either divisive, and/or confused, and/or indecisive, and/or biased, and/or ignorant, and/or intentionally corrupt decision making by *specific individuals* within the Bush administration, and/or, currently, within the Air Force. The Nevada U. S. Attorney's Office, former Congressman James Gibbons, and Air Force General Ronald Bath, and other Air Force officials form the core of the misconduct and the failure to utilize the technology. I do not have sufficient personal knowledge, or even sufficient information and belief, as to which of the foregoing reasons, or a combination thereof, constitutes the bases for the current failure to utilize the technology *specifically within the highest ranks of the Bush administration,* while the concealment of Governmental misconduct and corruption continues. But I do know that One Hundred Million Dollars was appropriated for purchase of a portion of Mr. Montgomery's technology in January, 2006, said appropriation

apparently remains unused while lives are being lost, the Nevada based governmental misconduct continues with the harassment of Mr. Montgomery by Daniel Bogden and the local FBI, and it appears that a potential cover-up is in the making. (I&B).

5. In January, 2006, after fourteen months of utilization by ▇▇▇, tested and *confirmed* solely by Mr. Montgomery's "output" because of the urgency involved therein, and after twelve months of both utilization and independent testing with confirmation by the Air Force, the Air Force obtained an appropriation for One Hundred Million Dollars to purchase a portion of Mr. Montgomery's technology then being used to ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (MD).[2] This appropriation was legitimately based on the value of the software for use in the war on terror, but it was engineered by General Bath, then Congressman Gibbons and others within the Air Force and individuals within the Bush administration to flow the proceeds of the appropriation pursuant to a specific federal contract to Warren Trepp. (MD). Mr. Montgomery was aware of this scheme concocted by Trepp, Gibbons, Bath and others, and left his independent contracting position at eTreppid Technologies in January, 2006 approximately at the same time as the appropriation was confirmed. (MD). Air Force Special Agent Paul Haraldsen played a key role in both the utilization of the technology in 2004-05, removing it from ▇▇▇ control, obtaining the federal contract for Gibbons and Trepp, and subsequently in the false fabrication of facts to obtain the search warrants. (MD).

6. Over the past ten months, following the illegal raid on the home of Mr. Montgomery, an internal conflict has raged within the Bush administration led on the one hand by a group

---

[2] Both ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ and Air Force (approximately sixteen identifiable individuals) personnel personally working with Mr. Montgomery on a daily basis, often as long as eighteen hours a day, knew that the software then being used on certain "Special Access Programs" ("SAP") was exclusively owned, possessed and operated by him. They knew that no other person on earth had access to the source codes to "run" the programs and that self destructive "intrusion protocols" protected the software from access by anyone other than Mr. Montgomery, particularly Warren Trepp and his employees.

-4-

protecting the interests of Warren Trepp including Daniel Bogden, James Gibbons, Air Force General Ronald Bath and Justice Department lawyer Peter Keisler (nominated for a federal Judgeship by the Administration in June, 2006, while he was making critical decisions on these matters) and their allies; and on the other hand, by several U.S. Senators and Congressmen, and ▮▮▮ and ranking Republican aides and officials who have scrutinized this case objectively with no allegiance to either Trepp or Mr. Montgomery, but have been blocked by individuals within the administration working on behalf of Trepp. Although all of them recognize that vital national security concerns are at stake and that immediate utilization of Mr. Montgomery's software is imperative, they are engaged in partisan, political warfare over money and self-interests. (I&B). General Bath, James Gibbons, Daniel Bogden and other Air Force officials working with high level Bush administration officials (probably within the office of the DNI - (I&B)) have blocked it's use. This group has sought to not only justify the unconstitutional raid on Mr. Montgomery's home within the Bush administration by means of knowingly false statements, memos etc. as an appropriate law enforcement action under the Fourth Amendment, they have also knowingly concealed, and/or misrepresented, and/or, until recently, they have deceived high ranking Bush administration decision makers about the findings, conclusions, basis and Order of Judge Cooke. (I&B).

7. I am in direct and indirect (through specific individuals) contact with several agencies of the United States Government, (direct and indirect), several high ranking Bush administration officials (indirect, but reliable and corroborated) and several Congressional Committees (direct and indirect) involving issues, facts and documents relating to the cases now pending before this Court. Many of the documents and transcripts currently under seal in the search matter are essential to on-going investigations by these Government agencies and Committees. At least one or more of these investigations originated as a result of the internal distribution of the findings and "Order" of Judge

Cooke (issued on Nov. 28, 2006) *by officials within the Department of Justice,* without my intervention. I have also filed a False Claims Act Complaint currently under seal relating to the alleged misconduct of James Gibbons, Warren Trepp and several Air Force officials involved in the procurement of multiple federal contracts based on Mr. Montgomery's software technology. I have also sent a letter to the Public Integrity Section of the Department of Justice with multiple exhibits.

8. Time is of the essence in all of these matters. The software technology exclusively owned and possessed by Mr. Montgomery at issue in the subject cases has *only* been *partially* utilized in the last nine months in the war on terror and has indisputably saved American lives. (MD). Mr. Montgomery has gratuitously processed "data" and freely provided the "output" from this data to the appropriate U.S. authorities, but it has not been done with "accelerated processors" and main frame computers because of harassment and interference by the Nevada U.S. Attorney's Office and local Reno FBI. (MD). The corruption of the Nevada U.S. Attorney's Office by James Gibbons and Warren Trepp resulting in the illegal raid on Mr. Montgomery's home for the purpose of "stealing" the source codes to the software has directly and substantially interfered with the full utilization of the technology. (MD). National security mandates that it be fully utilized forthwith.

9. Mr. Montgomery's computers and property have now been unlawfully retained by the Reno FBI and the Nevada U.S. Attorney's Office for over ten months without any legal justification; and even after they have admitted that the primary basis to conduct the raid - "unlawful retention of classified information" - never existed in the first place. Moreover, the inventories prepared by the local, Reno FBI do not fully itemize or disclose items that were illegally seized.

10. Since April, 2006, and as recently as December 2006, Mr. Montgomery, through various representatives, has had repeated and extensive communications with specific officials within the highest levels of the Bush administration for the purpose of exposing the corruption in

Nevada; and to make his technology available to the Bush administration for the protection of this Country.

11.  *Certain specific officials* within the highest levels of the Bush Administration, the Air Force, the ████████████████████ the Department of Justice, and specifically, the former Director of National Intelligence, John Negroponte, appear to have *either* been given false and/or conflicting, and/or incomplete information (regardless of the true facts) about the classified information basis to raid Mr. Montgomery's home; and/or about Montgomery's ownership of the technology; and/or the illegal conduct of the Nevada U.S. Attorney's Office and local, Reno FBI; and/or in connection with other material issues; *and/or* they are motivated by personal agendas driven by unknown motives; *and/or* certain *specific individuals* are protecting and assisting James Gibbons and certain Air Force Generals on behalf of Warren Trepp without the knowledge or authority of others within the administration, and/or within the office of the Director of National Intelligence. (I&B). At this time it is unclear which officials have blocked the utilization of the technology within the highest levels of our government, and which officials, if any, have sanctioned either out of ignorance, or intent, the misconduct of the Nevada U.S. Attorney's Office and the local FBI. Several of them have claimed that they did not know either that the Nevada U.S. Attorney falsely claimed that Mr. Montgomery was allegedly in possession of classified information, or that Montgomery still possessed a Top Secret - SIC Clearance to do so even if he did. Such conflicts, at least within the Bush administration and the Air Force, have adversely impacted the utilization of Mr. Montgomery's technology and have directly jeopardized national security. *Such conflicts need to be resolved as soon as possible.* **The evidence in the search case provides detailed facts and documents upon which to do so.**

12.  The only means to address and resolve these problems may be the use of said evidence

through congressional oversight specifically in the context of hearings by several committees of the Senate. These issues plainly overlap into the three branches of our government. Plainly, the raid on Mr. Montgomery's home was based on grossly fabricated claims relating to classified information, when the truth was available by a simple telephone call as hereinafter set forth. The unsealing of the record in this matter and concomitant exposure of that record to the full spotlight of truth, which only a First Amendment driven free press can accomplish, will serve the dual purpose of exposing corruption and protecting national security. (I&B). Otherwise both of these interests will languish while lives will be lost and the machinations of power will prevail. (I&B).

13. During the past nine months, I have personally observed that the national security of the United States, at least in relation to the utilization of Mr. Montgomery's technology, has been subjected to the personal and political agendas of individuals at the highest levels of Government as manifest in the corrupt use of the local, Reno FBI and Nevada US Attorney's Office in the illegal raid on Mr. Montgomery's home; and the subsequent, continued harassment of Mr. Montgomery *after high level officials within the administration were explicitly informed both in writing and in personal visits by representatives of Mr. Montgomery.* The search case documents, exhibits and transcripts specifically relate to the abuse of governmental power by the Nevada U.S. Attorney and Nevada FBI, all initiated by James Gibbons who has admittedly received undisclosed financial benefits from Warren Trepp

14. I have indirect but reliable and confirmed knowledge that the findings and Order of Judge Cooke issued on November 28, 2006, in the search matter, as soon as it was internally distributed to investigative agencies within the Department of Justice by the Attorney General's office, resulted in significant and substantial progress in resolving internal conflicts at least within the Department of Justice to those who have had access to it. And it has had a positive impact within the

Department of Defense to those who are aware of it.

15. All government officials that I have communicated with are aware that Judge Cooke's Order is currently under *de novo* review by this Court, and are anxiously awaiting both the final order of this Court and the unsealing of the case.

16. Prior to Judge Cooke's order, several Bush administration officials claimed to be unaware of the underlying facts involved in the search matter including the fact that the Nevada U.S. Attorney claimed he was primarily conducting the search and seizure based on Mr. Montgomery's unlawful retention of classified information. Nor were they aware that the FBI and U.S. Attorney's Office subsequently *admitted* after being challenged, that there was no classified information involved at all. As Judge Cooke found, the representations of material fact in the search affidavits relating to the alleged unlawful retention of classified information were critical facts in her decision to issue the warrants.

17. The subsequent *admissions*, collectively down the chain of command, by the Bush administration, the Air Force, the Department of Justice, by Nevada U. S. Attorney Daniel Bogden, and by the local, Reno FBI, as early as June 1, 2006 just prior to the commencement of the evidentiary hearings, that there was no basis to believe or to conduct the raid based on classified information, strongly suggests that the evidence in support of those claims was intentionally fabricated by at least two officials within the Air Force, by the local, Reno FBI office, and by the Nevada U.S. Attorney's Office all acting in collusion. (I&B). It is likely that other key officials within the Air Force and/or the administration were unaware of said fabrication at the time the search affidavits were submitted as evidenced by the subsequent admissions. (I&B). Classified information is something easily determined by checking with the "Original Classification Authority" ("OCA") that made the designation. Not only did the Nevada US Attorney, a special Air Force investigator, and a

local, Reno based FBI agent collectively misrepresent the facts relating to classified information, they relied upon knowingly false documents (Form DD 254) both at the time of the search and during the evidentiary hearings. These same officials also knowingly misrepresented Mr. Montgomery's Top Secret SIC security clearance which entitled him to possess the information in the first place.

18.  As explicated at length in Judge Cooke's findings and Order, these same government officials knowingly and intentionally deleted key portions of the primary documents relating to the ownership of the technology. After fabricating a completely false picture of ownership of the technology to the issuing Magistrate, as explicitly set forth in these documents, these same officials compounded their falsehoods by relying on other facts, documents and evidence in the search affidavits and in the evidentiary hearings which were also demonstrably false and/or distorted beyond recognition. Judge Cooke, as the issuing Magistrate, referenced these falsehoods in her Order finding that she was "misled". The U.S. Attorney has not and cannot refute these findings in his appeal to this Court.

19.  Nevada U.S. Attorney Daniel Bogden has been discharged. Assistant US Attorney Paul Pugliese, who was assigned to the Montgomery search matter has resigned or been discharged. Director of National Intelligence, John Negroponte has been removed. It is essential that the Senate Intelligence Committee and The Public Integrity Section of the Department of Justice and other Government agencies be provided with documents and transcripts from the search matter as soon as possible. The ultra aggressive use, and flagrant abuse, of governmental power under the Fourth Amendment, against American citizens, particularly patriotic ones like Mr. Montgomery, by the political party in control of the administration of our government for the purpose of manipulating the system in favor of rich and powerful contributors to direct federal contracts in the hundreds of millions of dollars to said contributors by that same particular political party, represents a significant

and substantial threat to fundamental liberties. (I&B). This case is a prime example of such abuse. The fact that vital issues of national security are involved further raises the need for full and complete disclosure of governmental misconduct to the American citizenry as soon as possible before the Government casts a veil of secrecy on the search matter through the unwarranted assertion of the state secrets privilege. (I&B). Corruption should not be concealed under the guise of national security.

20. To my knowledge, there are no documents or transcript references in the search matter adversely affecting national security. There are, of course, the sealed declarations of Dennis Montgomery and from former DNI Negroponte in the civil cases, which have grave implications for national security. Mr. Montgomery requests that those declarations remain under seal.

21. Based on my personal involvement in these matters for over twelve months, I believe that the unsealing of the search matter will have a cleansing affect on the administration of justice and achieve substantial results in protecting our national security. Continued sealing will have adverse and potentially extremely grave consequences for both the administration of justice and our national defense.

22. I have spoken to AUSA Ron Rachow requesting an order shortening time for this motion to be heard. He refused stating that the reasons for his refusal are contained in the Government's "Objections" to Judge Cooke's Order.

Signed under the pains and penalties of perjury under the laws of Nevada and the United States this 18th day of January, 2007.

_____/s/_____
Michael J Flynn, Attorney for Dennis Montgomery

-11-

# CERTIFICATE OF SERVICE

I, Zachary Draper, declare: I am an employee in the City of Reno, County of Washoe, State of Nevada, employed by the Law Office of Logar & Pulver, PC, located at 225 S. Arlington Avenue, Suite A, Reno, NV 89501. I am over the age of 18 years and not a party to this action.

I am readily familiar with the Law Office of Logar & Pulver's practice for the collection of mail, delivery of its hand-deliveries, their process of facsimile's and the practice of mailing.

On Jan. 18, 2007 I caused the following documents, (1.) the Montgomerys' Opposition to the Gov't Objections to the Nov. 28, 2006 Order, with attachment Exhibit A; and (2) this certificate of service to be delivered to the following persons and/or entities:

Sent Via Hand Delivery:

1. Jake Herb or Lia Griffen, or U.S. Dist. Court, District of Nevada, Reno, U.S. District Court, 400 S. Virginia St., Reno, NV 89501; and

2. Ronald Rachow, AUSA, and the Reno U.S. Attorney, United States Attorney's Office for the District of Nevada, 100 W. Liberty Street, Reno, NV 89501; fax (775)-784-5181.

_Zachary Draper_
Zachary Draper
For the Law Office of Logar & Pulver