# ORIGINAL

1  RONALD J. LOGAR, ESQ., Nevada Bar No.: 0303
2  ERIC A. PULVER, ESQ., Nevada Bar No.: 7874
   Law Office of Logar & Pulver, PC
3  225 S. Arlington Ave., Ste A
   Reno, NV 89501
4  Phone: 775-786-5040
   Fax: 775-786-7544
5
6  MICHAEL J. FLYNN, ESQ., Mass. Bar No.: 172780
   P.O. Box 690, 6125 El Tordo
7  Rancho Santa Fe, CA 92067
   Phone: 858-775-7624; 858-759-7000;
8  Fax: 888-235-4279
   *Admitted Pro Hac Vice in related Nevada Cases*
9  *No. 3:06-cv-0056-LRH-VPC; 3:06-CV-00145-LRH-VPC*

**FILED**

FEB 2   2007

U.S. MAGIS...      ...GE
DISTRICT OF NEVADA
BY_____DEPU

10              UNITED STATES DISTRICT COURT

11              FOR THE DISTRICT OF NEVADA

12
13  In the Matter of the Search of:           )   CASE NO.: 3:06-0263-PMPVPC
                                              )
14  12720 BUCKTHORN LANE, RENO, NV            )
                                              )
15  and                                       )   **DECLARATION OF MICHAEL FLYNN IN**
                                              )   **SUPPORT OF MONTGOMERY OPPOSITION**
16  888 MASTRO DRIVE, RENO, NV, STORAGE )       **TO GOVERNMENT'S MOTION TO STRIKE**
17  UNIT NUMBERS 136, 140 , 141, 142, AND 143 )  **PLEADINGS AND PRECLUDE PRO HAC**
                                              )   **VICE MOTION OF ATTORNEY FLYNN.**
18
19                                              **FILED UNDER SEAL**
20
21
22
23
24
25
26
27
28

Atty. Decl., 3:06-CV-0263/3:06-MJ-0023

## DECLARATION OF MICHAEL J. FLYNN

I, Michael J. Flynn, declare:

1.      I am a member of the Bar of the Commonwealth of Massachusetts in good standing and a partner in Flynn & Stillman, formerly Flynn, Sheridan, Tabb & Stillman up through 2002, which I founded.  I have personal knowledge of the facts stated herein, and if called as a witness, I could and would testify competently to them. This  false and frivolous *ad hominem* attack on me by the Nevada U. S. Attorney's office ("USAO") is not only appalling, it reflects utter desperation in the context of the Court's presently pending  review of Judge Cooke's Order.

2.      Like the search of Mr. Montgomery's home, the USAO Motion is without basis in fact or law, and is the product of a shoddy, incomplete and misleading investigation resulting in false statements and inapplicable legal conclusions. I leave it up the Court as to whether the U. S. Attorney's office should be sanctioned and its pleading stricken.  Moreover, it is plainly designed to deprive my client of his Sixth Amendment right to effective assistance of counsel, "poison" the mind of the Court, and delay the Court's ruling on pending motions, particularly the Rule 41 g motion which was filed almost one year ago. On this latter point, I note that the USAO raises the pro hac vice issue for  the first time after a year of litigation on the constitutionality of the search when it admittedly  knew from the face of the pleadings on March 10, 2006 that my pro hac vice was filed in the two related civil cases approximately one year ago, *and that the USAO had appeared in those related cases on behalf of the Government.*

3.      I have been a licensed attorney in Massachusetts since 1970. I was graduated Summa Cum Laude from Suffolk University Law School in Boston, ranked first in my class, and Editor in Chief of the Suffolk University Law Review.  At the time of my graduation in 1970 I held the highest grade point average in the history of Suffolk University Law School. I then served as a law clerk to the Honorable Paul Kirk of the Massachusetts Supreme Judicial Court. Thereafter, I was an

1   associate for approximately a year at the prestigious Boston firm of Bingham Dana and Gould.

2   Thereafter, I founded my own firm while representing the President and CEO of a Massachusetts

3   bank charged with multiple counts of bank fraud in one of the first of many  highly publicized cases I

4   have litigated.  I have practiced with distinction continuously for  thirty seven years.

5

6   4.      I have litigated in most major cities of the United States.  I have tried over one

7   hundred civil and criminal  cases, several lasting over six months, and  many over four months,

8   including one of the longest sequestered criminal jury trials in U. S. history.  I generally get along

9   well with legitimate opposing counsel who do not lie or play games. I have defended and

10  represented many people who were without resources, and unable to compensate me.  The USAO

11  raises the issue of the Scientology litigation. In one Scientology case in 1984 in Los Angeles (I only

12  had a Massachusetts residence at the time) I defended the  former Scientology archivist  trying to

13  expose Scientology founder, L. Ron Hubbard, as a fraud in a four month trial which I personally

14  financed along with other benefactors who sought to expose Hubbard and Scientology. See *Church

15  of Scientology v Armstrong*, Los Angeles Superior Court Civil Action No. B025920.  Such cases are

16  characteristic of my legal career and reflective of my decades long multi-state litigation practice.

17  5.      Both Mr. Stillman and I are licensed attorneys in Massachusetts where the Firm was

18  originally  based.  Mr. Stillman is licensed to practice in California. Messrs. Sheridan and Tabb, my

19  former partners through 2002,  were, like myself, only licensed in Massachusetts.   Mr. Stillman

20  opened the West Coast office of the firm in 1992, in conjunction with a highly publicized case which I

21  tried in a four month jury trial in 1994.

22  6.      Beginning in 1975, as recited above, my practice of law and trial of cases began to

23  expand beyond Massachusetts and I began to litigate cases in different states while appearing pro

24  hac vice with local counsel. To this day, I continue to have a multi-state litigation practice  while

25  maintaining my bar membership in Massachusetts with an office address at Mr. Sheridan's current

office at One Center Plaza, Boston, MA, as truthfully reported on my pro hac vice application. I also maintain a personal residence in Massachusetts; and I continue to "regularly practice" there as truthfully reported on my pro hac vice application.  But what is a "regular practice" to me is plainly not typical of a lawyer who only practices within a specific locale, nor one who only selects limited cases to litigate. Admittedly, given my multi state practice, and having now tried cases for about 35 years, I only choose very selective cases based on what I perceive to be essential principles of justice. Just within the last two years, I have rejected several very "high profile" cases involving large fees and great media attention because of my assessment of the basic principles of justice involved.

7.      Additionally, I litigate cases in Massachusetts with significantly less frequency not only because of my selectivity, but also because I now generally assess cases and matters routinely referred to me in Massachusetts and then refer them to other counsel.  In cases involving long-standing, and some times, famous clients (whose identity I will not reveal here), the litigation itself involves multi-state involvement. For example, just within the past two years, notwithstanding the USAO's blatantly false statements designed to mislead the Court into believing that I have not "regularly practiced " in Massachusetts since 1991, I litigated related cases in the Boston Federal District Court and the District of Columbia. The case names and numbers are none of the Nevada USAO's business. If necessary, I will provide them, as well as other Massachusetts matters to the Court in camera. I have litigated numerous cases in Massachusetts since the USAO's bogus date of1991 and remained as the founding and principal partner of my firm there until the end of 2002.

8.      Once again, as it did with the illegal search of Mr. Montgomery's home, the USAO has "misled" this Court even on the simple point of my Massachusetts' office address relying on an assistant to a leasing agent to attack my professional reputation and character. I note that apparently the USAO didn't bother to contact Mr. Sheridan and inquire of him; or if it did, it chose to conceal his response from the Court. I also continue to maintain a residence in Boston as well as a

residence in California, also as truthfully reported on my pro hac vice application. If necessary, I will provide my Boston residential address to the Court in camera. Again, the USAO's pleadings are replete with irrelevant and fabricated assertions made with no supporting sworn declarations. Perhaps the USAO failed to fulfill its Rule 11 obligations before filing this motion and that is why it has not supported any of its allegations under oath as required and as I have done here.

9.    It is significant that the USAO references litigation involving Scientology. Its current pleadings constitute character assassination reminiscent of the attacks mounted against me by the Church of Scientology when I litigated against them for eight years in the 1980's. As part of its *written policy* to file frivolous cases against its opponents, Scientology filed twenty one lawsuits against me in six different states, *numerous suits for defamation*, and six bar complaints - all dismissed - because I dared to represent some of their numerous victims, including journalists and families they attacked. They spent millions of dollars concocting outrageous falsehoods trying to "destroy" me, again pursuant to their written policy to "destroy" their enemies, and poison the minds of judges involved in the Scientology cases. *See eg, United States v. Kattar*, 840 F.2d 118 (1st Cir. 1988); *Church of Scientology v. Armstrong,* 232 Cal. App. 3d 1060 (1991).  When the judges did not take the bait, they then attacked them. *See United States v. Hubbard*, 474 F. Supp. 64 (D.D.C. 1979). The Scientology complaints for defamation were dismissed; and the Scientology organization paid millions of dollars as part of a collective settlement of multiple cases to me and to my clients. [1] It is interesting that the U.S. Government is using irrelevant Scientology case material to attack my credibility when it carried on what it described as a "war" against Scientology and Hubbard for over 30 years.

---

[1]. The reference to the trash theft case is also irrelevant. The cult involved in that matter  also paid a multimillion dollar settlement after a six month jury trial resulting in a jury verdict for my client.

10.      Similarly, this recent attack by the USAO is designed to follow the same Scientology protocols, attempting to achieve the same negative impact on the Court, thereby "poisoning the well", all while this Court is engaged in the pending review of Judge Cooke's order. I remain confident that this Court will see through such a scurrilous personal attack, attempting to invoke some form of bias and prejudice against me and my client with irrelevant falsities. Such a tactic speaks volumes about what the Nevada U.S. Attorney and Warren Trepp, and his lawyers, are afraid to deal with on the merits of this matter.

11.      **The "Stand Down" order - The Nevada U. S. Attorneys "continued investigation" of Mr. Montgomery.** Before dealing seriatim with the U.S. Attorney's false, and/or misleading, and /or ambiguous unsworn charges in its Motion, I will address issues relating to the "stand down" order which the USAO claims creates an irreconcilable conflict between my statements in the "Reply" pleading on Feb. 5th and my letters on Feb. 7th.   The Feb. 5th "Reply" to the one page opposition of the USAO to Mr. Montgomery's Motion to Unseal the Case states in footnote 1 that I have received *"indirect and informal information"* that the Department of Justice ordered Mr. Bogden's office to "stand down" prior to the date that it filed its opposition in which it claimed that it was continuing with the Montgomery investigation as of that date. (Italics supplied). As part of that information, I had also received information that the DOJ in Washington had opened an investigation: (i) into Mr. Bogden's conduct of the case; (ii) an investigation relating to Mr. Pugliese's and Bogden's filing of pleadings prepared by Trepp's attorneys; and (iii) into Trepp's payments to Gibbons and related matters. See attached sealed, in camera declaration of Dennis Montgomery. Each of these investigation matters were then confirmed by a reliable, secondary source. Plainly, the media blitz of the last several weeks confirms the accuracy of at least parts of the "information;" and it definitively establishes that the Washington DOJ, and not the Nevada based USAO, are both the locus and source of the investigation. Additionally, in the context of facts and evidence that I

1  provided to the Public Integrity Section on or about December 1, 2006, which I have no intention of

2  disclosing to the USAO, I stand by the validity and accuracy of *all* aspects and phases of the

3  investigation recited above until I receive direct, corroborated information otherwise, which I have

4  explicitly requested from the USAO.

5

6       12.     As noted in my Feb. 7th, letter attached as Exhibit 2 to the USAO's Motion, *within two*

7  *days* after filing the Reply in which I called the information "indirect and informal" I explicitly

8  requested the USAO to confirm or deny the fact that they had been ordered to "stand down" in its

9  investigation of Mr. Montgomery. This information has now been proven to be credible and reliable,

10  particularly in light of the following facts: (i) both Mr. Pugliese and Mr. Bogden, who were in charge

11  of the case and investigation, had been discharged by the end of 2006; (ii) I provided very specific

12  information to the Public Integrity Section on or about December 1, 2006 relating to the conduct of

13  the investigation of Mr. Montgomery; (iii) I had written a letter to the USAO on December 15, 2006,

14  with a copy sent to Attorney General Gonzalez. (Exhibit 3 to "Objection" to the USAO Motion);  (iv) I

15  now have confirmed that the DOJ in Washington has been investigating these matters; (v) By mid-

16  January, Mr. Montgomery had received very specific information on this precise issue which I had

17

18  corroborated; (vi) The USAO still refuses to respond to my written requests. There is, in fact, an on-

19  going Washington based DOJ investigation as reported throughout the national news beginning

20  Thursday, Feb. 15,2007. It is now plainly misleading for the USAO to claim in its prior Opposition and

21  in its Motion to Disqualify me, without refuting under oath the assertion that the USAO has in fact

22  been ordered to "stand down" and that it is not continuing to investigate Mr. Montgomery, that its

23

24  investigation is still ongoing. This Court and Mr. Montgomery are entitled to know these facts.

25       13.     Instead, in order to obfuscate these critical issues before the Court, the USAO follows its

26  same pattern of malicious, unfounded, and fabricated charges already exposed in Judge Cooke's

27

28  Order. Only now it attacks me. It now claims that there is an irreconcilable contradiction between my

1  statements in the February 7th letter stating that I have received no response from "anyone" in

2  response to a complaint filed with the Public Integrity Section, and my statement in the February 5th

3  Reply that I have reason to believe that the USAO has been ordered to " 'stand down' ". The U.S.

4  Attorneys office then states: 'Both statements cannot be true." Motion at p. 7 lines 2-10. **Both**

5
6  **statements are, in fact, true**. I have not received a response from anyone at Public Integrity, and I

7  do have "indirect and informal information" that the U.S. Attorneys' office has been ordered to "stand

8  down" from *two reliable* sources.  The accuracy of the information I received in mid-January, which is

9  the current subject of the mass media's confirmation into the DOJ's investigation into Trepp and

10  Gibbons, is part and parcel of the same source relating to the "stand down" order.  Apparently, the

11
12  authors of the subject motion in the Nevada U. S. Attorneys office are **either** (a) intentionally

13  misleading the Court about this "stand down" order; or (b) are unaware of it notwithstanding their duty

14  to investigate; or  (c) are refusing to disclose and/or refute it because they do not address its

15  accuracy in their Motion. In fact, they studiously avoid the issue notwithstanding my specific request

16  in my Feb. 7th letter to disclose its accuracy; and they do not state either in their pleadings or in a

17  supporting declaration that it is false. The procedure to deal with this issue should be simple. As

18
19  requested in my Feb 7, 07 letter, the USAO should forthwith notify Mr. Montgomery and the Court if it

20  has been ordered to stand down, particularly where both Mr. Pugliese and Mr. Bogden have been

21  removed from their official duties on this matter and the DOJ in Washington is obviously involved. If

22  their malicious and unfounded investigation has been terminated by Washington, the Court and Mr.

23  Montgomery should be notified forthwith.

24      14.    On December 15, 2006, I sent the letter, attached as  Exhibit 3 to our "Objection" to the

25  USAO Motion,  to Mr. Bogden and Attorney General Gonzalez, specifically requesting that the DOJ

26  in Washington assume control over these matters. In light of the " indirect and informal information" I

27  have received as now confirmed by the recent events, I believe this attack on me to be a retaliatory,

28

Atty. Decl., 3:06-CV-0263/3:06-MJ-0023                          -7-

last gasp effort by Mr. Bogden to attack me before he leaves office on February 28th.

15. **USAO Statement: The Rule 41 g Motion Was filed on March 10 by Michael J. Flynn.** This USAO statement is **False.** The Motion was signed by Philip Stillman under the masthead of local counsel, Logar and Pulver along with the offices of Flynn and Stillman. The pro hac vice appearances of Michael Flynn and his Massachusetts Bar licensing in the related cases are noted. The USAO litigated the issues for almost a year, yet now raises the issue. All of the related cases were before Judge Cooke who plainly knew I was appearing pro hac vice in all of the related cases; and the USAO appeared for the Government in the related cases , which was a party thereto. Thus, there has been no prejudice, no concealment, no misleading, and no misinformation whatsoever, either to the Government or to the Court on this issue.

16. **USAO Statement: Flynn does not regularly practice law in Massachusetts referencing dates no later than 1991.** See paragraph 6 above.

17. **USAO Statement: Flynn does not maintain an office in Massachusetts.** See paragraph 5 above..

18. **USAO Statement: Flynn filed "uniformly false" and scandalous statements in connection with "seeking"a contempt proceeding against the United States with no evidentiary foundation**. These USAO assertions are either outright **false** or ambiguously **inaccurate.** Apparently, the USAO authors of the motion have not read the Court's sua sponte issuance of the OSC, or the transcripts of the three days of evidentiary hearings, or are unfamiliar with the year long pleadings, declarations and memos in the search matter, and/or have no clue as to the strongly supported evidentiary positions of Montgomery. First, the Court, not "Flynn" issued an OSC sua sponte for the USAO's defiance of an order to turn over yet another in camera ex parte filing by the USAO. This order was issued after the USAO had repeatedly filed in camera filings *when virtually every material representation they had previously made in connection with the*

1   *search, after being ordered by the Court to be disclosed, and then challenged by Montgomery,*

2   *was proven to be demonstrably false.* See Post Hearing Memo of Montgomery and November 28,

3   2006 Order of Judge Cooke. Thus an evidentiary basis existed to establish that the USAO had

4
5   engaged in a year long *pattern* of filing false pleadings either (i) to support an ongoing investigation;

6   and/or (ii) to support alleged "classified information" and/or state secrets. Perhaps for that reason, the

7   Court ordered the USAO to disclose its in camera filing made on November 30, 2006, which the

8   USAO openly defied on December 1, 2006, resulting in the sua sponte OSC..

9       19.     More importantly, based on the evidence, both of the USAO's year long positions

10  about an ongoing investigation, "classified information" and assertion of the state secrets privilege

11  are not only highly suspect, the classified information basis to conduct the raid was just plain false.

12
13  ● First, on April, 17, 2006, the Court scheduled the commencement of the evidentiary hearings for

14  May 3, 2006. (Exhibit 1 hereto). On April 19, the Court ordered the USAO and Montgomery to file

15  "supplemental briefing" on four specific issues by Wednesday, April 26, 2006. (Exhibit 2 hereto). On

16  April 26, 2006, the USAO filed a sealed, in camera, ex parte motion seeking an extension until April

17  28, 2006., which the Court granted. (Exhibit 3 hereto). The USAO then filed more in camera filings

18  apparently relating to state secrets and "classified information" - crying wolf - which caused the

19  Court on April 28, 2006 to cancel it's previous orders and cancel the May 3, 2006 hearing based on

20
21  "classified information." (Exhibit 4 hereto).

22  ● This was accompanied by a contemporaneous  threat ordered by Mr. Bogden to have the FBI

23  call Mr. Flynn and Mr. Stillman and read them a statement  threatening them with criminal

24  prosecution for revealing state secrets, and classified information, and Peter Wiedeman's name, and

25  mentioning ▮▮▮ all because I had mentioned Wiedeman and ▮▮▮ in a *sealed affidavit on file*

26  *in the search matter.* As a result of said threats, and the efforts of the USAO to avoid an evidentiary

27  hearing and/or resolution of our Rule 41 (g) motion, on May 10, 2006, I wrote a letter attached as

28

1   Exhibit 5 hereto, protesting the threats, and again offering Mr. Montgomery's cooperation to prove to

2   the USAO that there was no classified information at issue, and that he owned the technology which

3   was critical to national security in the war on terror. The letter was ignored.

4      • The foregoing frivolous basis to cry wolf then led the USAO to engage in yet more obfuscating

5   secrecy by filing a Motion for a Protective Order *seeking to completely gag Mr. Montgomery and his*

6   *counsel and to  impose severe secretive restrictions* on how the Court conducted the evidentiary

7   hearings - just more subterfuge. The Motion was heard and *denied* on May 26, 2006.  Thereupon, at

8   

9   the conclusion of the hearing, Mr. Pugliese was *then* compelled to retract this entirely falsely based

10  threat with an admission ("that we would get under Brady anyway" - see Exhibit 6 hereto) that no

11  "classified information" or "state secrets" were involved in the original search. Later, Mr Pugliese, in

12  open court retracted more of the USAO threats and  stated that ██████ and Wiedeman's names

13  

14  could be used during the evidentiary hearings.

15     • Thus,  by the end of June, before the evidentiary hearings began on June 29, 2006, the USAO

16  was compelled to admit that  it couldn't designate any "OCA" (Original Classification Authority) who

17  had classified anything at eTreppid, let alone what Mr. Montgomery was charged with taking and

18  unlawfully detaining according to the search affidavits. But the USAO did succeed at the time in

19  gaining  a two month delay with their falsities; and by the *commencement* of the evidentiary hearings

20  on June 29, 2006, they had established a *record* as follows: (i)  conclusive evidence in the form of

21  the USAO admissions proved the demonstrable unconstitutionality of the raid on the Montgomery

22  

23  home to steal source codes for a notorious swindler like Warren Trepp based on knowingly false

24  statements both with respect to "classified information" and with respect to "eTreppid Source Code"

25  in the search affidavits designed to "mislead" the Magistrate -Judge;  (ii) the USAO had created a

26  pattern of evasion, "crying state secret wolf" and making baseless threats to charge Montgomery's

27  counsel with non-existent crimes; and (iii) the USAO had repeatedly filed secret, in camera

28

1  pleadings, accompanied by an overblown and unfounded motion to obtain a gag order, all of which

2  was later proven to baseless and unfounded after they were compelled to support them. In sum, the

3  USAO engaged in a pattern of making false statements, filing false in camera pleadings, making

4  unfounded threats against counsel, and when challenged, their misconduct was established by their

5  own subsequent admissions. This pattern has repeated itself right up to the present, and coupled

6  with the illegal search, justifies the characterization "Gestapo" like tactics. It became reinforced

7  when the Court's November 28, 2006 Order was issued finding "callous disregard," and disclosed

8  that a known mobster, Neil Azzinaro, was one of the USAO sources for the search, and that Paul

9  Haraldsen had lied when he denied tape recording phone conversations with Mr. Montgomery in an

10  effort to entrap him. Such conduct by our Government cannot be countenanced in a free society.

11  ● Second, as early as June, 2006, after we had repeatedly requested the identity of the OCA

12  (Original Classification Authority) that had allegedly classified the "stolen classified information" as

13  claimed in the search affidavits, and which became characterized as the "palm trees tapes," the

14  USAO was compelled to admit not only that there was no classified information that had been

15  "stolen," and no OCA, but also that the "palm trees tapes" had never been "classified" at all.

16  Incredibly, in a meeting after the May 26, 2006 protective order hearing, *after* its protective order

17  was denied based on "classified information," attended by Messrs Flynn, Stillman and Pulver, the

18  USAO admitted that there was none, and then refused to respond when confronted with my

19  assertion/inquiry that the "palm trees" tapes had, in fact been found in Trepp's safe. So whether they

20  were classified or not, the USAO has never confirmed or denied that the tapes had been found in

21  Trepp's safe, thus compelling an inference by silence that the affidavit was even wrong on the

22  allegation that Mr. Montgomery took them. **The USAO has never refuted our sworn declarations**

23  **on this point.** (Exhibit 6 hereto). In fact, a close reading of the search affidavit where SA West,

24  based on Patty Gray representations, obtusely tracks the tapes in and out of safes, cabinets, etc with

1  no definitive conclusion reveals the baseless nature of those charges. More evidence of "Gestapo"

2  like tactics.

3     ● Third, after yet more in camera secret filings in July- August, 2006 designed to convince and

4  mislead  the Magistrate that the investigation was still  "on-going " in a new direction, ie, more

5  baseless harassment of Mr. Montgomery by teams of FBI agents, while knowing that DOJ policy

6  prohibited it, (See DOJ policy referenced in the order of Judge Cooke) and with more efforts to

7

8  conceal these filings from Mr. Montgomery's counsel, we properly concluded after the last day of

9  evidentiary hearings on August 17, 2006, that the USAO filed "sham" pleadings as a matter of

10  course, which it then had to retract almost as a matter of course.  The record is replete with such

11  sham filings.That characterization remains applicable today given  the one page "Opposition" to

12  Montgomery's Motion to Unseal" claiming that the investigation is "on-going" while refusing to

13

14  disclose whether the DOJ ordered the USAO to "stand down."

15     ● Fourth, after the Judge issued the OSC on December 1, 2006 when the USAO openly defied

16  the Court's order to provides us with yet another secret and presumably "sham" pleading, (December

17  1, 2006 Order attached hereto as Exhibit 7), the USAO then withdrew that filing., The USAO then

18  filed on December 4, 2006 yet another "approximately 2" of secret, in camera filings, this time with

19  Judge Hicks, also later withdrawn. One year of continuous, repeated, and  secret filings coupled with

20  demonstrably proven to be false statements of the USAO in order to improperly prejudice this Court

21  is enough. We can only assume based on the attached Montgomery declaration that the 2" filing on

22  December 4th is more of the same. Thus, when we received information from two reliable sources

23  that the DOJ was investigating the conduct of the USAO, coupled with the departure of Pugliese and

24

25  Bogden, coupled with all of the evidence we have of the Trepp/Gibbons/Bsath/Bogden connections,

26  coupled with the now revealed investigation on-going in Washington, absent some corroborated

27  evidence from the USAO to the contrary, we conclude that the USAO has been ordered to "stand

28

1   down" and that the investigation into Mr. Montgomery is not "ongoing" as claimed by the USAO on

2   January 25, 2007. If so, Mr. Montgomery's Motion to Unseal and Rule 41 g Motion should be

3   decided as soon as possible without handicapping the Court with false information.

4      ● Common sense dictates that a year of filing false, baseless, harassive, and fabricated

5   declarations and pleadings to justify an outrageously illegal search, and after the issuing Judge found

6   it to be in "callous disregard" of Montgomery's rights, justified all of the allegations that the USAO

7   engaged in all of the actions set forth in items 1 through 5 of its current Motion. See Motion, page 5

8   lines 7-15.

9      ● At this juncture, Mr. Montgomery has no intention of divulging other evidence either lodged with

10  other federal agencies and departments, or in his possession relating to these issues, other than

11  what has been set forth in his attached declaration.

12

13

14

15  20.   **USAO Statement: Flynn filed Baseless Allegations in his declaration in**

16  **connection with his Motion to Unseal "because no evidence exists".** This statement is **False.**

17  Evidence exists on each and every allegation in my declaration. Some items of evidence have

18  already been given to the DOJ in Washington. Much more exists. Mr. Montgomery has no intention,

19  and no obligation, at this point to provide the USAO in Nevada with anything. The Flynn declaration

20  remains unrebutted by the USAO in connection with the Motion to Unseal. The two sealed

21  declarations of Mr. Montgomery address some of these issues. The urgency relating to national

22  security matters which prompted the February 7th letter as well as the Motion to Unseal the search

23  file are both based on compelling facts set forth in Mr. Montgomery's two declarations.

24      ● The burden was on the USAO to refute under oath, the statements in the Flynn declaration in

25  support of the Motion to Unseal. Instead they filed a one page Opposition claiming that the

26  investigation into Montgomery is still ongoing; and have now filed this Motion, again with no

27

28

-13-

Atty. Decl., 3:06-CV-0263/3:06-MJ-0023

1 supporting declarations or evidence rebutting anything. The USAO continues to evade this issue.  As
2 recently reported in the media blitz concerning James Gibbons, there is an open investigation in
3 Washington concerning cash payments by Trepp to Gibbons, phone calls by Trepp's wife to
4 Gibbons' wife before the illegal raid, unreported gifts by Trepp to Gibbons, including a $60,000 cruise
5 (incorrectly reported as $10,000 in the media), emails relating in part to these issues, and numerous
6 inconsistent and false statements already made by Gibbons and Trepp in the media.
7

8    • For example: (i) Gibbons said on Thursday, Feb. 15, 07 that he wouldn't know Bogden if he
9 walked in the room - yet he gave a press conference with him last August, 06; (ii) On Feb. 15th
10 Gibbons said that he had nothing to do with contracts won by eTreppid. He said he "had nothing to
11 do with any contract. I've never negotiated, never asked for and never proposed a contract for
12 eTreppid. So the story that was reported in the Wall Street Journal is false." Yet Gibbons sent out a
13 press release in June, 2004, claiming he had obtained a Three million dollar contract for eTreppid;
14 and he has made numerous statements to numerous individuals that he was instrumental in winning
15 large contracts for Trepp. The evidence will emerge that Gibbons and his friend Air Force General
16 Ronald Bath were involved with Trepp in securing a $100 million dollar "black budget" defense
17 appropriation in January, 2006, which led to the illegal raid on Montgomery's home in order to, in
18 effect, "steal" the source codes needed to fulfill that appropriation.
19

20    • As to the unsupported USAO allegation that "Flynn cynically and fancifully declares that 'an
21 internal conflict has raged within  the Bush administration", please see attached, sealed  declaration
22 of Mr. Montgomery. Again, the USAO is making unsworn allegations without investigating or knowing
23 the facts.
24

25    • As to the corruption allegations against the USAO and Gibbons, Bath, and others, see: (i)
26 Montgomery's Post Hearing Memo and the Order of Judge Cooke relating to the illegality and
27 unconstitutionality of the search, and the ownership rights of Trepp and Montgomery in the source
28

1  codes, ie the USAO's misconduct and "callous disregard" of Montgomery's rights to seize source
2  codes, of which Trepp only owned the codes on "CD No.1" - "nothing more, nothing less"; (ii) the
3  admissions of the USAO that there was no classified information involved to justify the raid, leaving
4  only the attempt to seize "eTreppid Source Code," in violation of DOJ policy between two competing
5  owners, of which Trepp only owned source codes on "CD No. 1" conveyed in 1998, almost *eight*
6  *years before the raid*;  (iii) Mr. Montgomery's answers to interrogatories filed in the civil cases, of
7  which the USAO is appearing on behalf of the Government; (iv) The two Montgomery sealed
8  declarations; and (v) the original search affidavits and all of the presently unsealed declarations and
9  filings of the USAO in this matter which have been proven to be false, inaccurate, and/or
10  "misleading," including the 2" of material filed on December 4, 2006.
11      ● As to the allegations in the February 7, 2007 letters relating to the loss of American soldiers and
12  the need for immediate unsealing, relating to the filing of court documents by the USAO prepared by
13  Trepp's attorneys, and relating to the "unwarranted complacency, ineptitude, or worse" of *"someone"*
14  within the Bush administration, please see the attached sealed declaration of Mr. Montgomery.  Mr
15  Bush and Mr. Cheney were copied on the Feb. 7th letter because of the dire national security
16  concerns at issue and their previous involvement in these matters as recited in the Montgomery
17  declarations.
18      21.    Finally, underlying all of these matters are issues relating to the immediate utilization
19  of Mr. Montgomery's technology, previously used in numerous black budget programs, of which the
20  USAO plainly has no knowledge, nor the security clearances to acquire such knowledge. Thus,
21  operating in the dark on issues that may pose  "exceptionally grave damage" to the national security
22  of the United States (See declaration of DNI Negroponte, Par. 11), as well as on issues relating to
23  the relationship of Gibbons, Trepp, Bath and Bogden,  the USAO makes unsworn charges of "false,"
24  "outrageous," "cynical," "fanciful," "scandalous," etc when it has engaged in such conduct throughout

-15-

Atty. Decl., 3:06-CV-0263/3:06-MJ-0023

this case; and now, may have no authority to even make such allegations. Assuming it does refute the "stand down" order *under oath* in its Reply, then underlying these cases are issues so vital to our national security involving Mr. Montgomery's technology, before proceeding further, the Nevada USAO should investigate the real facts, unlike what it did in the search of Mr. Montgomery's home. Perhaps after doing so, it will withdraw this Motion and understand the urgency of the national security matters at issue herein.

I declare under the penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct. Signed this 27 day of February, 2007, in Rancho Santa Fe, California.

Michael J. Flynn

# SEALED

# EXHIBIT  1

# FLYNN  DECLARATION

# SEALED

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA
RENO, NEVADA

**U.S. DISTRICT COURT**
**DISTRICT OF NEVADA**
**FILED**

APR 1 7 2006

**CLERK, U.S. DISTRICT COURT**

BY _____ DEPUTY

IN THE MATTER OF THE SEARCH OF: )
                                )
The residence located at 12720  )
Buckthorne Lane, Reno, Nevada   )
                                )
and                             )
                                )
Storage Units 136, 140, 141, 142, and 143 )
located at 888 Mastro Drive, Reno, Nevada )
                                )

CASE NO. 3:06-MJ-0023-VPC

MINUTES OF COURT

DATE:   April 17, 2006

PRESENT: THE HONORABLE VALERIE P. COOKE, U.S. MAGISTRATE JUDGE

Deputy Clerk: ___Lisa Mann_____   Reporter: ___None Appearing_____

U.S. Attorney: ___None Appearing_____   Counsel for Defendants: ___None Appearing___

MINUTE ORDER IN CHAMBERS XXX

Pursuant to Fed.R.Crim.P. 41(g) a *sealed* evidentiary hearing on the motions to (1) unseal search warrant affidavits; (2) for the return of property pursuant to Fed.R.Crim.P. 41(g); and (3) for the segregation and sealing of all attorney-client and trade secret materials seized is scheduled for **Wednesday, May 3, 2006 at 1:30 p.m.** before Magistrate Judge Valerie P. Cooke in Courtroom No. 1, Fourth Floor, 400 S. Virginia Street, Reno, Nevada.

LANCE S. WILSON, CLERK

By: _Lisa Mann_
    Lisa Mann, Deputy Clerk

SEALED

EXHIBIT  2

FLYNN   DECLARATION

No.5675   P. 274

Apr.19. 2006  1:02PM

# FILED

APR 19 2006

U.S. MAGISTRATE JUDGE
DISTRICT OF NEVADA

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEVADA

BY_____DEPUT

IN THE MATTER OF THE )
SEARCH OF: )
)
The Residence Located at 12720 )
Buckthorne Lane, Reno, Nevada, )
and Storage Units 136, 140, 141, )
142, and 143, Double R. Storage, )
888 Maestro Drive, Reno, Nevada. )
)
_____ )

No. 3:06-MJ-0023-VPC

### MINUTES OF THE COURT

April 19, 2006

PRESENT:   THE HONORABLE VALERIE P. COOKE, U.S. MAGISTRATE JUDGE

DEPUTY CLERK: ____Lisa Mann_____   REPORTER: NONE APPEARING

COUNSEL FOR PLAINTIFF(S): NONE APPEARING_____

COUNSEL FOR DEFENDANT(S): NONE APPEARING_____

## MINUTE ORDER IN CHAMBERS:

Dennis Montgomery, Brenda Montgomery and the Montgomery Family Trust filed a motion (1) to unseal search warrant affidavits; (2) for the return of property pursuant to Fed. R. Crim. P. 41(g); and (3) for the segregation and sealing of all attorney client and trade secret materials seized (March 10, 2006). The Government opposed in three separate responses (March 27, 2006), and Montgomery replied (April 3, 2006).

The court directs the parties to provide simultaneous supplemental briefing on the following issues on or before Wednesday, April 26, 2006 at 4:30 p.m.:

(1) Discuss whether the affidavit accompanying the search warrant must remain sealed in its entirety in order to further compelling government interests that cannot be served by less restrictive means.

(2) Discuss whether the warrant lacks specificity and/or is overbroad.

(3) The Government shall provide the evidence that it claims supports its contention that "the searches in question were based on probable cause and were conducted pursuant to a lawfully issued warrant" and that refutes allegations raised in Mr. Montgomery's motion.

(4) If data seized contains classified Department of Defense information, to the extent that some materials seized may be subject to attorney client privilege, how should that issue be addressed? If, as the Government asserts, neither Mr. Montgomery nor counsel has security clearance, who will review the information to determine whether any material is privileged?

The parties shall provide legal authorities and any potentially applicable protocol that relates to the above-referenced issues.

**IT IS SO ORDERED.**

LANCE S. WILSON, CLERK

By:_____/s/_____
            Deputy Clerk

SEALED


EXHIBIT  3


FLYNN   DECLARATION

**FILED**

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

APR 26 2006
U.S. MAGISTRATE JUDGE
DISTRICT OF NEVADA
BY_____DEPUT

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF: | ) ) ) |
| | 3:06-MJ-0023-VPC |
| The Residence Located at 12720 Buckthorne Lane, Reno, Nevada, and Storage Units 136, 140, 141, 142, and 143, Double R Storage, 888 Maestro Drive, Reno, Nevada. | ) ) ) ) ) ) ) |

**MINUTES OF THE COURT**

April 26, 2006

PRESENT:   THE HONORABLE VALERIE P. COOKE, U.S. MAGISTRATE JUDGE

DEPUTY CLERK:_____LISA MANN_____   REPORTER: NONE APPEARING

COUNSEL FOR PETITIONER(S): NONE APPEARING

COUNSEL FOR RESPONDENT(S): NONE APPEARING

**MINUTE ORDER IN CHAMBERS:**

The court received an *ex parte* request from the government for an extension of time to file the simultaneous supplemental briefing as ordered by the court on April 19, 2006. That request is GRANTED. The parties shall each have to and including **4:00 p.m. on Friday, April 28, 2006** to file simultaneous supplemental briefing on the issues identified in the court's April 19, 2006 order. The parties shall file such supplemental briefing via facsimile to the court's chambers at 775-686-5864.

If Dennis Montgomery, Brenda Montgomery and the Montgomery Family Trust ("the Montgomerys") wish to file their brief before the extended deadline, they have leave to do so. However, the court wished to accord the Montgomerys the same extension of time as the government.

The evidentiary is presently set for **Wednesday, May 3, 2006 at 1:30 p.m.** If either party requests a continuance of the hearing, they shall do so no later than **Friday, April 28, 2006 at 3:00 p.m.**

**IT IS SO ORDERED.**

LANCE S. WILSON, CLERK

By:_____/s/_____
     Deputy Clerk

SEALED

EXHIBIT  4

FLYNN   DECLARATION

Apr.28. 2006 11:35AM

**FILED**

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

APR 28 2006

U.S. MAGISTRATE JUDGE
DISTRICT OF NEVADA

BY_____DEPUY

IN THE MATTER OF THE          )          3:06-MJ-0023-VPC
SEARCH OF:                    )
                             )
The Residence Located at 12720 )          **MINUTES OF THE COURT**
Buckthorne Lane, Reno, Nevada, )
and Storage Units 136, 140, 141, )        April 28, 2006
142, and 143, Double R Storage,  )
888 Maestro Drive, Reno, Nevada. )
_____ )

PRESENT:   THE HONORABLE VALERIE P. COOKE, U.S. MAGISTRATE JUDGE

DEPUTY CLERK: _____LISA MANN_____   REPORTER: NONE APPEARING_

COUNSEL FOR PETITIONER(S): NONE APPEARING_____

COUNSEL FOR RESPONDENT(S): NONE APPEARING_____

**MINUTE ORDER IN CHAMBERS:**

On March 10, 2006, Dennis Montgomery, Brenda Montgomery, and the Montgomery Family Trust ("the Montgomerys") filed a motion to unseal the affidavit in support of the search warrants issued, the government responded and the Montgomerys replied. The Montgomerys requested an evidentiary hearing pursuant to Fed.R.Crim.P. 41(g), which has been set for May 3, 2006. On April 28, 2006, this court issued a minute order directing supplemental briefing on certain legal issues, and those points and authorities were to be filed simultaneously on April 26, 2006.

On April 26, 2006, the government made an *ex parte* request for an extension of time in which to file its brief, and the court granted that request. This court issued a minute order and granted both parties an extension of time, until April 28, 2006, to file the supplemental briefs. The court further ordered that in the event either party determined that the May 3, 2006 evidentiary hearing must be vacated, they were to provide written notice no later than Friday, April 28, 2006.

There appear to be serious concerns about the search warrants issued by this court as it relates to certain classified information. The parties are advised that this court has sealed all of the papers relating to this proceeding in an envelope, which is taped shut, and which bears this court's signature over the sealing tape. This envelope has been placed in the vault of the Clerk of the Court.

Given the nature of these proceedings, the court has determined that the May 3, 2006 evidentiary hearing is **VACATED**. The order requiring the parties to file simultaneous supplemental briefing is **VACATED**. The court will not accept any further telephonic communications from counsel for the parties, and the court directs that the parties file the appropriate motion or separate action addressing any issues relating to the government's concerns about classified information.

In accordance with the protocol established by the court for storage of papers related to this proceeding, this order shall also be sealed in an envelope, taped, the court will place its signature over the tape, and the order will also be stored in the vault of the Clerk of the Court.

**IT IS SO ORDERED.**

LANCE S. WILSON, CLERK

By:_____/s/_____
          Deputy Clerk

SEALED


EXHIBIT  5


FLYNN   DECLARATION

# FLYNN & STILLMAN

224 BIRMINGHAM DRIVE, SUITE 1A4
CARDIFF, CALIFORNIA 92007

TELEPHONE 858-759-7000
FACSIMILE 858-759-0711

SPECIALIZING IN
COMPLEX LITIGATION

MICHAEL J. FLYNN
ADMITTED ONLY IN MASSACHUSETTS

ONE CENTER PLAZA, SUITE 240
BOSTON, MASSACHUSETTS 02108
TELEPHONE (617) 720-2700
FACSIMILE (617) 720-2709

May 10, 2006

*VIA US MAIL*

Daniel G. Bogden, United States Attorney
Paul Pugliese,
Greg Addington,
Assistant United States Attorneys
100 West Liberty, Suite 600
Reno, Nevada, 89501

### Re: Dennis Montgomery

Dear Messrs. Bogden, Pugliese and Addington:

I represent the above named Dennis Montgomery in connection with various matters currently pending before the United States District Court in Reno, Nevada  involving the FBI raid on Mr. Montgomery's home and storage facility. Based on various threats made by Mr. Montgomery's co-owner, Warren Trepp, of eTreppid Technologies, we understand that the FBI raid was spawned by Mr. Trepp's initiation of a criminal complaint against Mr. Montgomery. In fact, Mr. Trepp had repeatedly stated that he would use his threatened "Republican connections" to James Gibbons and Daniel Bogden to "get Mr. Montgomery arrested."  Mr. Trepp. of course, is infamous as  the head trader at Drexel Burnham Lambert where he and his partner, Michael Milken, engaged in the largest crime wave of fraud in the history of the U.S. Apparently, Mr. Trepp's threats and "connections" have now come at least to partial fruition with the illegal search and seizure of Mr. Montgomery's home.

We have filed various motions to redress the illegal search and seizure, declare the search unconstitutional, and restore Mr. Montgomery's property to him. These motions are now pending before the Court. Prior to filing said motions, we verbally and in writing communicated to Mr. Pugliese and the FBI our offer to cooperate with the US Government in the protection of any purported "classified information," which was the stated purpose of the search, although nowhere in the warrant is said purpose expressed.  Both Mr. Pugliese and the FBI stated that there was "only an extremely small amount of classified information" involved, comprising a few tapes and cd's, *but rejected our offer of cooperation.*

Daniel Bogden, Esq. et al.
*In re Dennis Montgomery*
May 10, 2006
Page 2 of 3

Between the raid on March 1, 2006 and April 28, 2006, no government official, including the FBI and/or Mr. Pugliese ever discussed the fact that reference to a "certain governmental agency", although openly discussed in our conversations during that period, was allegedly "classified".

On Friday, April 28, under the mandate of a Court Order and a looming evidentiary hearing scheduled for May 3, requiring Mr. Pugliese to provide the Court detailed proof justifying probable cause to conduct the raid, justify the facial invalidity of the warrant, and justify the non-disclosure of the affidavits in support of the warrant, all of which had to be filed in Court on April 28, Mr. Pugliese, presumably at the behest of his superiors, raised for the first time alleged disclosure by us, as Mr. Montgomery's counsel, of "classified information" in our moving papers allegedly involving reference to a "certain governmental agency." Notwithstanding our verbal stipulation with Mr. Pugliese on April 28 to avoid any references to that "certain governmental agency", in order to have the motions decided either with or without an evidentiary hearing, Mr. Pugliese apparently had several ex parte communications with the Court involving these matters resulting in an Order wherein the Court refused to accept any further ex parte communications and vacated the May 3 hearing and briefing schedule. These ex parte communications raise fundamental concerns regarding due process. But the Reno US Attorney's office has now stepped up its efforts to avoid resolution of our motions to redress the illegal search with threats of intimidation against Mr. Montgomery's counsel designed to deflect the Court's attention from deciding the underlying motions.

Yesterday, Mr. Pugliese instructed an FBI agent to call us and threaten us with criminal prosecution with a prepared written statement. We do not take such threats lightly, and we can only presume that Mr. Trepp's "connections' and threats have reached the levels that he intended. Such threats will NOT prevent us from representing our client in the most vigorous manner allowable under the law. We deem the threats to be a violation of the criminal law and of the canons of ethics governing attorneys.

This entire sordid episode of local governmental mischief results from the government's illegal raid on Mr. Montgomery's home spawned by Mr. Trepp. There is a simple and obvious solution to resolve this matter as I stated in my correspondence to Mr. Rumsfeld and Mr. Gonzalez et al on March 1, 2006. In that correspondence, we offered Mr. Montgomery's full cooperation with the appropriate governmental agencies to get his software technology up and running in the war on terror in order to avert national disasters and save the lives of US citizens. We explicitly stated in our March 1 offer that the local political mischief then on-going in Reno initiated by Mr. Trepp's local influence should be addressed at the highest levels of government on behalf of which Mr. Montgomery utilized his software. Mr. Montgomery's sole concern is to save American lives and to get his software operative.

We understand that approval of our March 1 offer is currently being decided upon by the highest officials of the US Government, notwithstanding the local political push to harass Mr. Montgomery with these latest threats. We strongly urge all of you to place patriotism and common sense in front of local power and hegemony, and to meet with us and Mr. Montgomery, resolve the illegal search issues now pending before the Court, protect national security, save American lives, and get Mr. Montgomery's software operative immediately.

Daniel Bogden, Esq. et al.
*In re Dennis Montgomery*
May 10, 2006
Page 3 of 3

Your superiors are well aware of the efficacy of said technology. We respectfully request that you make the utilization of said technology your highest priority.

Very Truly Yours,

Michael J. Flynn

cc: Carlotta P. Wells
Senior Trial Counsel
Federal Programs Branch
Civil Division - Room 7150
U.S. Department of Justice
20 Massachusetts Ave., NW
PO Box 883
Washington, D.C. 20044

Donald Rumsfeld, Secretary of Defense, via hand delivery.

SEALED


EXHIBIT 6


FLYNN DECLARATION

1   Ronald J. Logar, Esq., Nevada Bar No.: 0303
2   Eric A. Pulver, Esq., Nevada Bar No.: 7874
    **Law Office of Logar & Pulver, PC**
3   225 S. Arlington Ave., Ste A
    Reno, NV 89501
4   Phone: 775-786-5040
    Fax: 775-786-7544
5
6   Michael J. Flynn, Esq., Mass. State Bar No.: 172780
    Philip H. Stillman, Esq., California State Bar No.: 152861
7   **Flynn & Stillman**
    224 Birmingham Drive, Suite 1A4
8   Cardiff, CA 92007
    Phone: 888-235-4279
9   Fax: 888-235-4279
10  *Admitted Pro Hac Vice in related Federal Case No. 3:06-cv-0056-BES-VPC*

11              **UNITED STATES DISTRICT COURT**

12              **FOR THE DISTRICT OF NEVADA**

13
    In the Matter of the Search of:          )   CASE NO.: 3:06-MJ-0023-VPC
14                                           )
    12720 BUCKTHORN LANE, RENO, NV           )   SECOND DECLARATION OF ATTORNEY
15                                           )   FLYNN IN SUPPORT OF MOTIONS TO
    and                                      )   UNSEAL SEARCH WARRANT MATERIALS;
16                                           )   RETURN PROPERTY PURSUANT TO RULE
                                             )   41(G); AND TO SEGREGATE PRIVILEGED
17  888 MASTRO DRIVE, RENO, NV, STORAGE )     MATERIAL
    UNIT NUMBERS 136, 140 , 141, 142, AND 143 )
18  _____ )
19
20
21
22
23
24
25
26
27
28

## SECOND DECLARATION OF MICHAEL J. FLYNN

I, Michael J. Flynn, declare:

1.      I am an attorney licensed to practice in the state of Massachusetts. I am counsel for Dennis Montgomery in the state and federal civil matters involving Warren Trepp, appearing *pro hac vice* in related Federal Case No. 3:06-cv-0056-BES-VPC. I have personal knowledge of the facts stated herein, and if called as a witness, I could and would testify competently to them.

2.      On Friday, May 26, 2006 after the conclusion of the hearing on the Government's Motion for a Protective Order, I had a conversation with AUSA Paul Pugliese. Mr. Pugliese said that he was providing us information that "we would get under Brady anyway" to the effect that certain information that the Government had previously deemed to be classified was *not,* in fact, classified; and that  "classified information that the Government thought to be in the possession of Mr. Montgomery had been found". I immediately inquired whether it had been "found in Trepp's safe", as I had previously informed he and Agent West that it had last been seen. Mr. Pugliese did not respond to this inquiry. I asked Mr. Pugliese if there was any "classified information" that the Government had still not located. Mr. Pugliese did not respond to this inquiry.

3.      For the convenience of the Court, I hereby recite the following excerpts from my Declaration dated March 11, 2006 filed in support of the Montgomery Motion pursuant to Rule 41(g): "During the search of Mr. Montgomery's home, I called and spoke to Ron Rachow, AUSA in charge of the search. I asked him what the basis for the search was and if I could have a copy of the supporting affidavit(s). He said the affidavit(s) were under seal and that I could not have them. I said the law strongly favored my client's right to have the affidavit(s), particularly during the search, which was on-going and being conducted  in an overly broad unconstitutional manner and based on, in effect a proscribed general warrant. He said that the basis for the search was "classified information being in a place that it shouldn't be...."

-1-

1  " Between Monday, March 6 and Wednesday March 8, 2006 I have had multiple phone calls with

2  AUSA Pugliese, one of which included Michael West, the FBI agent in charge of the search. In those

3  calls, we repeatedly discussed the issue of "classified information" as being the basis for the

4  search; that approximately 10 compact discs  were the only materials marked "classified"; and that

5  these discs were the only material sought and the basis for the search.  Both Agent West and Mr.

6  Pugliese repeatedly stated that they were only looking for an "extremely small amount" of "classified

7  material".  Neither Mr. Pugliese or Agent West cited any other basis for the search."

8  "I told Mr. Pugliese in a subsequent call that the ten "classified" discs were last in the possession of

9  Warren Trepp,  that he had placed them in one of his safes,  that only Trepp had the combination

10  and that he should conduct a search of eTreppid premises and Trepp's home."

11

12

13  I declare under penalty of perjury under the laws of the United States and the State of Nevada that

14  the foregoing is true and correct.  Signed this 6th day of June, 2006 at Rancho Santa Fe, California.

15

16

17

18  Michael J. Flynn

19

20

21

22

23

24

25

26

27

28

-2-

**SEALED**


**EXHIBIT 7**


**FLYNN DECLARATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | | |
|---|---|---|
| In the Matter of the Search of: | ) | 3:06-CV-0263-LRH (VPC) |
| 12720 BUCKTHORNE LANE, | ) | 3:06-MJ-0023-VPC |
| RENO, NEVADA, | | |
| and | ) | |
| 888 MAESTRO DRIVE, RENO, | ) | **MINUTES OF THE COURT** |
| NEVADA, STORAGE UNITS | ) | |
| 136, 140, 141, 142, and 143. | ) | December 1, 2006 |
| | ) | |

PRESENT:   THE HONORABLE VALERIE P. COOKE, U.S. MAGISTRATE JUDGE

DEPUTY CLERK: _____ LISA MANN _____    REPORTER: NONE APPEARING

COUNSEL FOR PLAINTIFF(S): NONE APPEARING

COUNSEL FOR DEFENDANT(S): NONE APPEARING

**MINUTE ORDER IN CHAMBERS:**

On November 30, 2006, the Government submitted to the court under seal an *ex parte* motion for clarification of Order of November 28, 2006. Upon review of this motion and the Government's supplemental briefing in response to motion to unseal search warrant affidavit, submitted September 21, 2006, the court determines that there is no basis for the motion to be submitted to the court *ex parte*. The Government shall serve the motion for clarification on counsel for Dennis Montgomery, Brenda Montgomery, and the Montgomery Family Trust ("Montgomery") via facsimile, by noon today, December 1, 2006.

Given that objections to this court's order of November 28, 2006, are to be filed no later than December 12, 2006, the court will consider the government's motion on shortened time. If Montgomery wishes to submit a response to the Government motion, he shall do so no later than Tuesday, December 5, 2006. The court will then take the matter under submission.

IT IS SO ORDERED.

LANCE S. WILSON, CLERK

By: _____ /s/ _____
Deputy Clerk