UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF: )<br>)<br>THE RESIDENCE LOCATED AT 12720 )<br>BUCKTHORNE LANE, RENO, )<br>NEVADA, AND STORAGE UNITS 136, )<br>140, 141, 142, AND 143, DOUBLE R )<br>STORAGE, 888 MAESTRO DRIVE, )<br>RENO, NEVADA. )<br>)<br>_____ ) | 3:06-CV-0263-PMP-VPC<br>3:06-MJ-00023-VPC<br><br><br><br>ORDER |

On November 28, 2006, the Honorable Valerie P. Cooke, United States Magistrate Judge, entered an Order (#86) granting the Motion of Dennis Montgomery, Brenda Montgomery, and the Montgomery Family Trust ("Montgomery") to unseal search warrant affidavits and return seized property pursuant to Federal Rule of Criminal Procedure 41(g) (#21). Magistrate Judge Cooke's Order further denied Montgomery's Motion for Segregation and Sealing of all Attorney-Client and Trade Secret Material as moot because the Court ordered the return of all seized property.

On December 12, 2006, Respondent United States of America filed Objections to Magistrate Judge Cooke's Order (#99). On December 21, 2006, Dennis Montgomery filed an Opposition to the Government's Objections (#100). On February 21, 2007, this action was reassigned to the undersigned District Judge for further proceedings (#112).

///
///
///
///

## I. FACTUAL BACKGROUND

The FBI searched Dennis and Brenda Montgomery's home and leased storage space pursuant to search warrants executed on March 1, 2006, and March 3, 2006. In granting Montgomery's Motion to unseal the search warrant affidavits and return seized property, Magistrate Judge Cooke followed the line of authority that requires the Government to demonstrate a compelling government interest in keeping the affidavit under seal and that no less restrictive means are available to prevent disclosure. Following a three day evidentiary hearing and extensive pre- and post-hearing briefing, Magistrate Judge Cooke found the Government failed to meet its burden of establishing a compelling Government interest to prevent unsealing the search warrant affidavits and the return of property seized pursuant to Rule 41(g). Additionally, Magistrate Judge Cooke concluded the Government had made no showing whatsoever that probable cause existed to justify the issuance of the search warrants in this case based on a violation of 18 U.S.C. § 1832.

## II. AUTHORITY TO ISSUE THE ORDER

The Government argues that 28 U.S.C. § 636 does not authorize a magistrate judge to issue an order unsealing documents or returning seized property to putative property owners in the context of a pre-indictment Rule 41(g) motion. As a result, the Government argues Magistrate Judge Cooke's order should be treated as a finding and recommendation. In Response, Montgomery argues Magistrate Judge Cooke did not exceed her authority by issuing an "order."

Title 28, United States Code, § 636(b)(1)(A) outlines the authority of a magistrate judge in pertinent part as follows:

> . . . a judge may designate a magistrate judge to hear and determine any pretrial matter pending before the court, except a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a

> claim upon which relief can be granted, and to involuntarily dismiss an action. A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law.

28 U.S.C. § 636(b)(1)(A). Section 636(b)(1)(B) provides:

> . . . a judge may also designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court, of any motion excepted in subparagraph (A), of applications for postrial relief made by individuals convicted of criminal offenses and of prisoner petitions challenging conditions of confinement.

28 U.S.C. § 636(b)(1)(B). Therefore, if Magistrate Judge Cooke's Order derived its authority from section 636(b)(1)(A), the district court may reconsider the Order if it is clearly erroneous or contrary to law. If Magistrate Judge Cooke's Order was issued pursuant to section 636(b)(1)(B), the district court's review is de novo.

In ruling on Montgomery's motion, Magistrate Judge Cooke labeled her decision as an "Order" indicating the decision was made pursuant to section 636(b)(1)(A). In addition, her Order cited to LR IB 3-1 and stated, "any party wishing to object to this order shall . . . file and serve specific written objection to the ruling together with points and authorities in support thereof." LR IB 3-1 is essentially a local rule setting forth a magistrate judge's authority under 28 U.S.C. § 636(b)(1)(A). Therefore, Magistrate Judge Cooke's Order was issued pursuant to 28 U.S.C. § 636(b)(1)(A).

The Government cites In the Matter of Application and Affidavit for a Search Warrant v. Hughes, 923 F.2d 324 (4th Cir. 1991) and United States v. Urlacher, 136 F.R.D. 550 (W.D. N.Y. 1991) for the proposition that Magistrate Judge Cooke exceeded her authority. In Hughes, a newspaper requested the federal court unseal a search warrant affidavit. 923 F.2d at 325. A magistrate judge held a hearing on the matter and denied the motion. Id. The parties appealed to the district court. Id. After hearing argument, the district judge ruled that the affidavit should be released in its entirety. Id. In reviewing the

3

1 prior proceedings, the Fourth Circuit determined that the district court's decision would be
2 reviewed for an abuse of discretion.  However, in a footnote, the court addressed the
3 dissent's assertions that the discretion of the magistrate judge and not the district judge, was
4 at issue in the case.  Id. at 325 n.2

5 In Hughes, the overriding concern about unsealing the affidavit was the prejudice
6 that might result to the criminal defendant in that case.  The Hughes court opined, "[t]he
7 dissent's assertion that a reviewing court must ignore the judgment of a district court and
8 defer to the opinion of a magistrate who has no experience with voir dire in felony cases
9 involving pretrial publicity cannot stand as a matter of logic or law."  Id.  However, the
10 Hughes court did note that "[w]here a magistrate holds hearings and issues complete
11 findings and the district court only summarily reviews the ruling . . . evaluation of the
12 magistrate's actions may be appropriate."  Id.  In Hughes, "the magistrate's order provided
13 a legally inadequate record and the district court properly reconsidered the issue by holding
14 hearings and making findings."  Id.  The Hughes court noted that "[a] magistrate's power to
15 seal or unseal a document derives from the district court's power to take such actions and
16 the dissent points to no statute or court rule empowering magistrates to making final rulings
17 in such cases."  Id.

18 In Urlacher, a magistrate judge ordered the unsealing of the motion papers and
19 the docket entries relating to a motion for a subpoena duces tecum.  However, in a footnote,
20 the magistrate judge noted that the portion of the order directing unsealing was, in essence,
21 a report and recommendation for the reasons stated in Hughes.  136 F.R.D. at 559 n.5.  "A
22 stay thus ensures district court review before unsealing is accomplished.  Such review
23 would be meaningless if the unsealing recommended here was effected prior to the district
24 court review ensured here."  Id.

25 Although the cases cited by the Government arguably support the proposition that
26 Magistrate Judge Cooke's decision should be reviewed *de novo* as a report and

4

recommendation, the plain language of section 636 indicates otherwise.  Section 636(b)(1)(A) initially permits a magistrate judge to "hear any pretrial matter pending before the court."  Section 636(b)(1)(A) continues by not permitting a magistrate judge to decide the following motions:  motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action.  28 U.S.C. § 636(b)(1)(A).  Applying the statutory cannon of construction *expressio unius est exclusio alterius* indicates that magistrate judges are permitted to decide any pretrial matter not included within the list above.  Therefore, Magistrate Judge Cooke had the authority to issue her Order pursuant to 28 U.S.C. § 636(b)(1)(A) and this Court's review is limited to whether the Order is clearly erroneous or contrary to law.

Regardless, for the reasons set forth below, this Court would reach the same result under a *de novo* standard of review.

### III.  THE GOVERNMENT'S SPECIFIC OBJECTIONS

The Government objects to several specific findings made by  Magistrate Judge Cooke.

**A.  Page Three**

Page three of  Magistrate Judge Cooke's Order states that in the affidavit of February 28, 2006, in support of the search warrants, Special Agent ("SA") Michael West relied on three categories of eTreppid documents:  the Contribution Agreement, the amended and restated operating agreement of eTreppid, and ten patent assignments from Montgomery to eTreppid.  The Government argues that a review of the affidavit demonstrates that a majority of the affidavit speaks to software development efforts on the part of all software developers at eTreppid.

1    Although the Government is correct that a small portion of the affidavit relates to
2 the three documents discussed by Magistrate Judge Cooke, her finding is not clearly
3 erroneous.

**B.  Page Three, Line 10-13**

With respect to the Contribution Agreement, Magistrate Judge Cooke's Order states, "[t]he court drew the inference from this summary of the Contribution Agreement that Montgomery assigned *all* intellectual property and related property he owned to eTreppid because that is what the plain meaning of the excerpt of the Contribution Agreement states."  The Government points to language in SA West's affidavit that ends with the following language:  "relating to or used in connection with, or otherwise describing or consisting of any part of, the software compression technology."

The paragraph of SA West's affidavit relating to the Contribution Agreement reads as follows:

> MONTGOMERY signed a Contribution Agreement, dated September 28, 1998, in which MONTGOMERY effectively assigned all rights to his "Contributed Assets" to eTreppid in exchange for a fifty percent (50%) interest Management Interest in eTreppid.  The "Contributed Assets" means all of MONTGOMERY's know-how; trade secrets; patent rights, copyrights, trademarks, licenses and permits, registered or unregistered, pending or approved; software programs and all programming and Source Codes used in connection therewith or otherwise required to operate any component thereof; and all programming documentation, designs, materials and other information, all in whatever form and wherever located, relating to or used in connection with, or otherwise describing or consisting of any part of, the software compression technology.

(Aff. of Michael A. West (#1) at 2.)  It was not clearly erroneous for Magistrate Judge Cooke to infer that this Contribution Agreement assigned all intellectual property from Montgomery to eTreppid.  There is no indication in the affidavit that Montgomery owned any additional intellectual property that was not part of the Contribution Agreement.

**C.  Page Four, Lines 1-3**

The pertinent lines of Magistrate Judge Cooke's Order relevant to the

6

Government's objection are as follows: "The affidavit states that through these patent assignments, Montgomery assigned full and exclusive use of the technologies described in the patents to eTreppid. The next paragraph of the affidavit describes 'trade secrets,' which [Magistrate Judge Cooke] inferred were the patented technologies Montgomery assigned to eTreppid in 2000-2001: Software programs relating to data compression, pattern recognition, and change and anomaly detection." The Government argues that SA West's affidavit contains no indication that the trade secrets were covered by the ten patents described in the preceding paragraph of the affidavit.

> The relevant language in SA West's affidavit is as follows:
>
> MONTGOMERY filed ten Patent Assignment applications with the United States Patent and Trademark Office during the period of November 2000 to November 2001 for patents pertaining to various technologies developed by MONTGOMERY while an employee at eTreppid and on each patent MONTGOMERY assigned full and exclusive rights, title, and interest of these technologies to eTreppid.
>
> Trepp considers eTreppid's trade secrets to be various software programs relating to data compression, pattern recognition, change and anomaly detection, among other things, which derive independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by the public. eTreppid has earned in excess of ten million dollars in revenues since 1998 from various government and commercial contracts. Trepp anticipates that eTreppid's development efforts will result in other multi-million dollar contracts.

(Aff. of Michael A. West (#1) at 3.) SA West's affidavit indicates that Montgomery assigned patents relating to various technologies to eTreppid. In reviewing the affidavit, Magistrate Judge Cooke was attempting to determine whether there was probable cause to support the issuance of a search warrant. Specifically, the alleged criminal activity related to the theft of trade secrets and unlawfully retaining national defense information. Because the subject matter of the trade secrets was of primary importance to the affidavit, it was not clearly erroneous for Magistrate Judge Cooke to infer that the trade secrets were related to the assigned patents.

7

**D. Page Fourteen, Lines 15-18**

At page fourteen, lines fifteen through eighteen, Magistrate Judge Cooke's Order states, "[t]he Government has denied Montgomery is a target, and there has never been any indication that either Ms. Montgomery or the Montgomery Family Trust is a search warrant target.  Nine months have passed since the Government executed the search warrants, and it appears there are no current plans to prosecute any of the movants."  The Government objects to this portion of the Order stating that no evidence has been presented that would indicate whether law enforcement has terminated their investigation of Mr. Montgomery.  The Government further asserts that the investigation is ongoing.  According to the Government, "While the sworn statements/declarations of eTreppid employees provide evidence of criminal conduct on the part of Mr. Montgomery, it is apparent that the results of a forensic examination of the seized computer storage media would provide strong corroboration of their statements."

Magistrate Judge Cooke, in the relevant section of her Order, was discussing the issue of whether there was an adequate remedy at law.  This is one factor to be considered before the Court can reach the merits on a pre-indictment motion pursuant to Rule 41(g).  See United States v. Kama, 394 F.3d 1236, 1238 (9th Cir. 2005).  In light of the fact that almost one year had passed since the Government executed the search warrants, this Court does not find clearly erroneous the statement by Magistrate Judge Cooke that "it appears there are no current plans to prosecute any of the movants."

**E. Page Sixteen, Lines 20-24**

The relevant language to this objection is as follows:

> [t]urning to the evidence in the proceeding, the redactions involve direct and recent contacts Montgomery had with other individuals, and it is difficult to imagine that the Government is concerned about revealing identities of witnesses or protecting an ongoing investigation. In fact, Montgomery has already surmised that part of the redaction relates to seeking investors for the source code. Moreover, at the June 29, 2006, evidentiary hearings, SA West revealed the identity and

involvement of SA Haraldsen during his testimony.

The Government argues that Montgomery's suppositions about investigative techniques should not result in an order directing the Government to disclose information to support his beliefs. The Government further asserts that, with the exception of Magistrate Judge Cooke's Order, there was no disclosure of investigative techniques used by SA Haraldsen.

In the relevant section of the Order, Magistrate Judge Cooke was addressing the issue of whether the Government had demonstrated a compelling government interest in keeping the affidavit under seal. Upon addressing this issue and the relevant language above, Magistrate Judge Cooke found that the Government has not met its burden to establish a compelling government interest. Here, the Government has failed to show clear error in Magistrate Judge Cooke's reasoning. Even if new information would be revealed, the Government has not made any showing to this Court that would establish a compelling government interest.

**F.  Page Nineteen, Lines 22-26**

The Order reads:

> [h]ad this court been provided the entire contribution agreement, it would have concluded that whatever is on CD No. 1 - nothing more and nothing less - belonged to eTreppid. The court would have expected the Government to demonstrate there was probable cause to believe that CD No. 1 contained the disputed trade secrets. However, SA West testified that he does not know what CD 1 contains, and he never inquired as to how long Montgomery has been creating software technology.

The Government argues that this finding ignores the majority of the search warrant affidavit, which describes the efforts of eTreppid software developers. According to the Government, the affidavit clearly established that the search warrant was for evidence of source code that both Montgomery and other software developers worked on while at the eTreppid facility, and not certain technology contained on CD No. 1.

9

In discussing the business relationship between Montgomery and eTreppid, Magistrate Judge Cooke stated that SA West had a "fundamental misunderstanding of the operating agreement and the business relationship between Montgomery and eTreppid." This statement was based on SA West's testimony that he believed that eTreppid owned more than what was on CD No 1. because Montgomery had worked at eTreppid for eight years. Based on the record before the Court and the affidavit in support of the search warrant at issue, it is unclear exactly when the source code was developed, who developed it and who owns it. However, the affidavit in support of the search warrant does not "clearly establish" that the search was for a source code developed while Montgomery was employed at eTreppid. Magistrate Judge Cooke's findings in this regard are not clearly erroneous.

### G. Page twenty-two through twenty-three, Lines 11-8

In her Order, Magistrate Judge Cooke wrote, "[a]lthough SA West referred to the patent assignments to illustrate Montgomery's employment relationship with eTreppid, this is what the reference conveyed to this court: that since Montgomery had conveyed all of his technological know-how to eTreppid, the ten patents bore an integral relationship to the trade secrets that Montgomery allegedly stole." The Order continues, "[i]t is now evident that these patents had nothing to do with the trade secrets alleged to have been stolen." The Government argues that Magistrate Judge Cooke focused on "software technology contained on a certain CD that was not identified or referenced in the initial affidavit to the exclusion of the allegedly stolen eTreppid software that was explicitly identified in the search."

The affidavit does discuss the Contribution Agreement that began the business relationship between eTreppid and Montgomery. As a result, it was not clearly erroneous for Magistrate Judge Cooke to conclude that the software on CD No. 1 was at issue and that the patents bore a relationship to the trade secrets that Montgomery allegedly stole.

10

### H. Pages twenty-three through twenty-five

Pages twenty-three through twenty-five of Magistrate Judge Cooke's Order discuss the security clearance of Montgomery and eTreppid. Magistrate Judge Cooke concluded that "although SA Haraldsen and Venables represented to SA West that eTreppid possessed a facility clearance to store secret material, eTreppid did not have one." With respect to Montgomery, Magistrate Judge Cooke stated, "Although SA West's affidavit never specifically stated the level of Montgomery's security clearance, the inference was that it was tied to his work at eTreppid and that he lost it. However, SA West's testimony conflicts as to whether he knew what, if any, security clearance Montgomery possessed at the time of the search." According to the Government, "the affidavit established that SA West ascertained that eTreppid did have a facility clearance and that Montgomery no longer had a special access program, top secret clearance based on his interview with Special Agent Paul Haraldsen, Air Force Office of Special Investigations and Director of Policy for Special Access Programs, United States Air Force." Therefore, the Government disputes Magistrate Judge Cooke's finding that SA West displayed callous disregard for the constitutional rights of Montgomery because he did not obtain additional information. The Government asserts that Magistrate Judge Cooke's finding "begs the question of what additional investigation, beyond consulting with an AFOSI Special Agent and the USAF Director of Policy for Special Access Programs and obtaining DoD documents indicating that Montgomery's clearance has been suspended."

Magistrate Judge Cooke's Order states, "[a]fter examination of his affidavit, his testimony concerning his investigation, and the protocols the Department of Justice has implemented for these crimes, this Court can only conclude that SA West acted with callous disregard of Montgomery's fundamental Fourth Amendment rights." Therefore, it is clear that Magistrate Judge Cooke based her ruling on the totality of the circumstances surrounding the issuance of the search warrant. With respect to the security clearance

issues, the Government does not dispute Magistrate Judge Cooke's conclusions concerning whether or not Montgomery and eTreppid had security clearances. Even if this Court were to accept the Government's argument that SA West adequately investigated this portion of the case, Magistrate Judge Cooke's ultimate conclusion is not clearly erroneous in light of the other findings made in the Order.

### I. Page twenty-seven, lines 13-18

A portion of Magistrate Judge Cooke's Order reads, "[a]s a preliminary observation, the court notes that SA West never disclosed in his affidavit that Trepp and Montgomery were engaged in civil litigation concerning ownership of the trade secrets, which are intertwined with the allegation in the affidavit that Montgomery engaged in the criminal theft of trade secrets." The Government disputes this statement and points out that the affidavit references a TRO filed against Montgomery by eTreppid. The reference in the affidavit referred to by the Government states as follows:

> On or about February 26, 2006, at approximately 8:00 p.m. (Eastern Standard Time) SA Haraldsen, received an unsolicited call from MONTGOMERY in which MONTGOMERY expressed concerns about providing SA Haraldsen with information concerning anomoly detection and pattern recognition technical capabilities as doing so would violate the Temporary Restraining Order filed against him by eTreppid. MONTGOMERY suggested that the U.S. Government remove the Temporary Restraining Order if they were truly interested in these capabilities.

(Aff. of Michael A. West (#1) at 12.)

The fact that the affidavit makes reference to a temporary restraining order does not render Magistrate Judge Cooke's statement clearly erroneous. There is no explicit reference to the two related civil cases or the fact that the parties are disputing the ownership of the software code at issue. From the portion of the affidavit stated above, the exact nature of the dispute between Montgomery and eTreppid is unclear.

### J. Pages twenty-nine through thirty

The Government's final objection to the Order challenges Magistrate Judge

Cooke's findings concerning callous disregard of Montgomery's constitutional rights. First, the Government disputes Magistrate Judge Cooke's reliance on a Department of Justice manual that suggests disputes between two potential owners are better left to a civil forum. According to the Government, the Order ignores the evidence establishing that the software purportedly stolen from eTreppid premises was not subject to a legitimate ownership dispute. In addition, the Government asserts that "SA West personally interviewed SA Paul Haraldsen, Warren Trepp, Sloan Venables, and Patty Gray, along with obtaining sworn declarations of Venkata Kalluri and Barjinder Bal." The Government concludes, "In doing so, he focused on individuals knowledgeable regarding allegations of trade secrets, i.e., employees of the victim company, and corroborated this information by obtaining DoD documents and interviewing an AFOSI Special Agent and USAF Director of Policy for Special Access Programs."

The Court finds untenable the Government's argument that the software at issue is not subject to a legitimate ownership dispute which has manifested itself in related federal civil actions filed by both Montgomery and eTreppid currently pending before this Court. See Dennis Montgomery, et al. v. eTreppid Technologies, Inc., et al., 3:06-CV-0056-PMP (VPC) and eTreppid Technologies, Inc., et al., v. Dennis Montgomery, et al., 3:06-CV-0145-PMP (VPC). Magistrate Judge Cooke's reference to the Department of Justice manual in support of her finding that the ownership of material seized pursuant to search warrants is better left to the pending civil litigation cannot be characterized as clearly erroneous. This is particularly so in light of the numerous examples cited by Magistrate Judge Cooke wherein she was misled by unchallenged factual representations which upon closer examination were reveled to be inaccurate.

///
///
///

13

**IV.  THE RELATED CIVIL ACTIONS  3:06-CV-0056-PMP-(VPC) and 3:06-CV-0145-PMP-(VPC)**

In resolving the Governments objections to Magistrate Judge Cooke's Order for the return of seized property, this Court is mindful that the ownership of some of the items seized pursuant to the search warrants is heavily contested by Montgomery and eTreppid in two civil lawsuits currently pending before this Court.  See <u>Dennis Montgomery, et al. v. eTreppid Technologies, Inc., et al.</u>, 3:06-CV-0056-PMP (VPC) and <u>eTreppid Technologies, Inc., et al., v. Dennis Montgomery, et al</u>., 3:06-CV-0145-PMP (VPC).  As a result, both in this case and the related civil cases eTreppid has expressed its objection to the return of any property to Montgomery as which to eTreppid claims an ownership interest.  Indeed, eTreppid unsuccessfully attempted to intervene in this action by way of a motion for return of seized property (#88).

However, property which is the subject of the ownership dispute between Montgomery and eTreppid in the two related civil actions is the subject of a Preliminary Injunction entered February 8, 2006, by the Honorable Robert Perry, District Judge of the Second Judicial District Court, State of Nevada.  As a result, any items currently in the Government's possession which the Court's orders returned to Montgomery in this case, and which also are subject to the ownership dispute in the related civil cases, remain subject to the Preliminary Injunction, unless and until that Preliminary Injunction is modified by order of this Court.

Nevertheless, there is one additional issue which must be confronted by this Court before it enters an order unsealing the volumes of materials filed in this case over the past year.  On March 15, 2007, the Court conducted a status conference hearing in the related civil cases.  Those proceedings involve assertions of state secrets privileges on behalf of the United States and trade secrets on behalf of eTreppid.  It is unclear whether any of the filings made in this case concerning the return of seized property under Rule 41

(g), contain material which maybe subject to a valid claim of privilege by the parties in the related civil cases. This rather anomalous circumstance stems from the fact that all of the filings in this case have to date been filed under seal and thus were not in every instance available for review by each of the parties to the two related civil cases. As a result, as the Court advised the parties at the status conference conducted March 15, 2006, in the related civil cases, it is appropriate to permit counsel for the parties to the two related civil cases to review the sealed filings made in this case prior to giving effect to the order unsealing these proceedings.

It should be understood by the parties to the related civil actions that the permission granted by this Court to review the filings in this case prior to unsealing does not extend to an examination of the items of property seized pursuant to the search warrants at issue. Those items of property were in the possession of Montgomery prior to execution of the warrants and shall be returned to him. To the extent those items of property are otherwise implicated in the two related civil actions, they remain subject to the Preliminary Injunction entered in the related civil actions.

**V.  CONCLUSION**

IT IS THEREFORE ORDERED that the Objections filed on December 12, 2006, by Respondent United States of America (#99), to Magistrate Judge Cooke's Order (#86), are overruled and Magistrate Judge Cooke's Order is affirmed.

IT IS FURTHER ORDERED that within ten days of the date of this order, Respondent United States shall return to Dennis Montgomery all materials seized pursuant to the search warrants at issue in the case which were executed on March 1, 2006 and March 3, 2006. To the extent any of the property returned to Montgomery is the subject of dispute in the related civil cases, Dennis Montgomery, et al. v. eTreppid Technologies, Inc., et al., 3:06-CV-0056-PMP (VPC) and eTreppid Technologies, Inc., et al., v. Dennis Montgomery, et al., 3:06-CV-0145-PMP (VPC), said property remains subject to the

Preliminary Injunction issued in those related cases.

IT IS FURTHER ORDERED that all filings made in this action with the exception of the declaration of Dennis Montgomery (#115) filed on February 28, 2007, shall be unsealed unless for good cause shown the Court determines that assertion of state secrets, trade secrets, or other privilege is found to be meritorious and requires the continued sealing of a particular filing, declaration or exhibit in this case.  In this regard, counsel for the parties in the related civil actions shall have twenty-one days from the date of this order within which to review the sealed case file in this case **and** to file with the Court any objection to the unsealing of any portion thereof.  To assist in the review of the sealed search warrant case file, counsel for Montgomery, eTreppid, and the United States shall immediately contact Chief Deputy Clerk of Court, Cynthia Jensen, at (702) 464-5477, who will provide limited access to the sealed case file through the Court's electronic case filing system.

IT IS FURTHER ORDERED that the Government's Motion to Strike Pleadings filed by Michael James Flynn and preclude Pro Hac Vice of Michael James Flynn (#110), filed February 13, 2006, is DENIED as moot.

IT IS FURTHER ORDERED that eTreppid Technologies Motion for Reconsideration (#98), filed December 12, 2006 is DENIED.

IT IS FURTHER ORDERED that the Motion to Intervene ( #120), March 13, 2006, by proposed intervener Reno Newspapers Inc., is DENIED as moot.

DATED:  March 19, 2007.

_____
PHILIP M. PRO
United States District Judge