GREGORY A. BROWER
United States Attorney
District of Nevada

GREG ADDINGTON
Assistant United States Attorney
Nevada Bar 6875
100 West Liberty, Suite 600
Reno, Nevada 89501
Telephone: (775) 784-5438
Facsimile: (775) 784-5181

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| IN RE:<br>SEARCH OF THE RESIDENCE<br>LOCATED AT 12720 BUCKTHORNE<br>LANE, RENO, NEVADA, etc. | 3:06-cv-0263-PMP-VPC |
| DENNIS MONTGOMERY, et al.,<br><br>        Plaintiffs,<br><br>vs.<br><br>ETREPPID TECHNOLOGIES, LLC, et al.,<br><br>        Defendants. | 3:06-CV-0056-PMP-VPC<br><br>UNITED STATES' POST-HEARING<br>BRIEF RE SEPTEMBER 5, 2008,<br>EVIDENTIARY HEARING |

Comes now the United States and, as directed by the court, submits the following post-hearing brief regarding the September 5, 2008, evidentiary hearing. The focus of the September 5 evidentiary hearing, requested by the Montgomery Parties, was the seizure of certain materials by the FBI from Mr. Montgomery's residence and storage unit facility, the subsequent return of such materials to Mr. Montgomery, and the FBI's custody and review of such materials during the intervening time period.

Montgomery Parties filed their motion (#527) for an evidentiary hearing on April 7, 2008. In that motion, Montgomery Parties requested an evidentiary hearing to enquire into three areas; specifically, (1) to identify the items seized by FBI on March 1 and 3, 2006, (2) to explain the

alleged "disparity" between the inventories of seized items and the inventories of returned items, and (3) to establish the chain of custody for items seized.  See Motion (#527), p.2, lines 2-7.  The factual basis for the motion included the argument by counsel as follows:

> Inexplicably, the search inventory and the return inventory, which should be mirror images of each other, do not match.  The reason may be innocent - such as an omission made in the heat of the search.  More ominously, the disparity may suggest that evidence was tampered with after the search, with materials deliberately planted to provide Trepp with evidence to support his civil claims against Montgomery.  Or it may be that materials were not properly maintained, allowing the seized evidence to be co-mingled with other evidence not seized from Montgomery pursuant to flawed warrants.

See Motion (#527), p. 3, lines 12-18.

In addition to the arguments and statements made by counsel for Montgomery Parties in the motion (#527), Dennis Montgomery filed a sworn declaration (#466-2) stating, among other things, the following:

1. A certain (but unspecified) "device" which Montgomery needs to restore his work to a readable format "was seized and never returned to [Montgomery] by the FBI. The FBI's mishandling of this data and in some cases destruction of the data make it difficult [for Montgomery] to gather information..." See #466-2, ¶ 8.

2. "...the FBI destroyed that organization [of Montgomery's work product] on February 28, 2006, and March 3, 2006, when they ravaged through the containers of [Montgomery's] work product..." See #466-2, ¶ 9.

3. "They [FBI] damaged, and in some cases destroyed [Montgomery's] property as they conducted their search and seizure..." See #466-2, ¶ 9.

4. "...the FBI has taken some of [Montgomery's] 'intellectual property' and to this day has never returned it. This can be shown by discrepancies between the FBI inventory seizure list and the FBI return lists." See #466-2, ¶ 10.

By minute order (#700) entered June 17, 2008, this court granted the Montgomery Parties' motion for evidentiary hearing.  See Order (#700), p.4.  By order (#760) entered July 17, 2008, the court scheduled the evidentiary hearing for September 5, 2008, described the limited focus of the hearing, and noted that the hearing would be conducted simultaneously in the so-called "civil action"  (3:06-cv-056) as well as in the so-called "search warrant proceeding" (3:06-cv-263).

Despite specific requests and multiple opportunities to do so, Montgomery Parties have never identified or explained what "disparities" exist between that which  was seized by FBI and that which was returned to Mr. Montgomery.  Likewise, Montgomery Parties have never identified which seized items were allegedly "destroyed" or "damaged" or "never returned."

Responsive to the non-specific allegations made by the Montgomery Parties, the United States presented the testimony of three witnesses: 1) FBI Special Agent Gerald DeVore, 2) FBI Special Agent Mark Thomas, and 3) FBI Supervisory Special Agent Michael West.  No other witnesses were called to testify.  Additionally, the United States submitted exhibits A-H, inclusive, which were admitted into evidence.   Although the September 5 hearing was conducted at Mr. Montgomery's request, he did not testify and he did not present testimony of any person to substantiate, clarify, or support his counsel's non-specific allegations or his own non-specific sworn statements described above.  Mr. Montgomery was not present at any time during the September 5 evidentiary hearing.

The testimony admitted at the hearing, together with the admitted exhibits, conclusively and unambiguously established the following:

1. All items and materials seized from Mr. Montgomery's residence (Buckthorn Lane residence) by the FBI were returned by FBI to Mr. Montgomery and/or his counsel on March 29 or April 6, 2007.  No such items or materials were retained by FBI.  Nothing seized from Mr. Montgomery's residence was damaged or destroyed while in FBI custody.  No materials or data

seized from Mr. Montgomery's residence were co-mingled or tainted with materials or data obtained from any other source while in FBI custody.  Other than federal law enforcement officers exercising legitimate law enforcement duties, no person had access to any materials or data seized from Mr. Montgomery's residence while such materials or data were in FBI custody.  No system or method of organization concerning any such seized materials or data was destroyed or altered by the FBI.

2.  All items and materials seized from Mr. Montgomery's storage unit facility, including storage unit #140, by the FBI were returned by FBI to Mr. Montgomery and/or his counsel on March 29, 2007.  No such items or materials were retained by FBI.  Nothing seized from Mr. Montgomery's storage unit facility was damaged or destroyed while in FBI custody.  No materials or data seized from Mr. Montgomery's storage unit facility were co-mingled or tainted with materials or data obtained from any other source while in FBI custody. Other than federal law enforcement officers exercising legitimate law enforcement duties, no person had access to any materials or data seized from Mr. Montgomery's storage unit facility while such materials or data were in FBI custody.  No system or method of organization concerning any such seized materials or data was destroyed or altered by the FBI.

3.  Montgomery Parties' exhibit 42, at page 2, reflects the apparent seizure of thirty-two 3.5" disks from Mr. Montgomery's storage unit facility. The FBI did not, in fact, seize thirty-two 3.5" disks from Mr. Montgomery's storage unit facility or from anywhere else.  This error in the inventory (exhibit 42) was corrected by FBI when it filed its return on the search warrant (government's exhibit B).  At the time of the search of Mr. Montgomery's storage unit facility, the supervising agent (FBI Supervisory Special Agent West) made the specific and conscious decision to not seize the thirty-two 3.5" disks because he had no investigative interest in any data which might be contained on such disks.  No evidence was presented to rebut or contradict Agent West's testimony regarding the 3.5" disks.  Mr. Montgomery has never contended that the FBI

seized the 3.5" disks reflected in exhibit 42 and has never contended that FBI failed to return such disks to him.

    4.   There is no evidentiary support for Mr. Montgomery's sworn statement that materials, devices, property, or data seized by FBI were "destroyed" or "damaged" or "never returned." Mr. Montgomery's sworn statement (#466-2) is false.

    5.   There is no evidentiary support for Mr. Montgomery's sworn statement that FBI destroyed the organization of Montgomery's work product. Mr. Montgomery's sworn statement (#466-2) is false.

    6.   There is no evidentiary support for Mr. Montgomery's sworn statement that FBI ravaged through the containers of Mr. Montgomery's work product. Mr. Montgomery's sworn statement (#466-2) is false.

    7.   There are no disparities, irregularities, or anomalies concerning the FBI's management or return of materials or data seized from Mr. Montgomery's residence.

    8.   There are no disparities, irregularities, or anomalies concerning the FBI's management or return of materials or data seized from Mr. Montgomery's storage unit facility.

It is the United States' view that the motion (#527) for evidentiary hearing and the Montgomery declaration (#466-2) were submitted for an illegitimate and fraudulent purpose; namely, to advance Montgomery Parties' improper litigation and discovery strategies in this civil proceeding by falsely alleging FBI malfeasance including collusion between the FBI and various eTreppid Parties. The evidentiary presentation has exposed the falsity of those allegations.

The United States has a keen interest in an evidentiary record in these proceedings which unambiguously confirms the legitimacy and integrity of FBI's practices and processes regarding the seizure of materials and data from Mr. Montgomery's residence and storage unit facility, the care of such materials and data while in FBI custody, and the return of such materials and data to Mr. Montgomery. It is the the United States' view that, at considerable expense of time and

resources, such an evidentiary record has been made in these proceedings and the United States urges this court to enter its findings and conclusions consistent with that evidentiary record. The United States defers to the court for consideration of any appropriate sanctions against the Montgomery Parties and/or their counsel on account of Mr. Montgomery's submission of a false declaration and related litigation abuses.

                Respectfully submitted,

                GREGORY A. BROWER
                United States Attorney

                 /s/ Greg Addington
                GREG ADDINGTON
                Assistant United States Attorney

CERTIFICATE OF SERVICE

I hereby certify that service of the foregoing UNITED STATES' POST-HEARING BRIEF RE SEPTEMBER 5, 2008, EVIDENTIARY HEARING was made through the Court's electronic notification system or, as appropriate, by sending same through first class mail from Reno, Nevada, to the addressees below on September 22, 2008.

Mark Gunderson, Esq.
5345 Kietzke Lane
Reno, NV 89511

Carlotta Wells, Esq.
Raphael Gomez, Esq.
U.S. Department of Justice
P.O. Box 883
Washington, DC 20044

Ellyn S. Garofalo, Esq.
1100 Glendon Avenue, 14th Floor
Los Angeles, CA 90024-3503

Bridget Robb Peck, Esq.
50 West Liberty Street, #410
Reno, NV 89501

J. Stephen Peek, Esq.
Jerry Snyder, Esq.
5441 Kietzke Lane, Second Floor
Reno, NV 89511

                                       /s/ Greg Addington
                                       GREG ADDINGTON